**Exhibit 1**



**Bank of America**

**Home Loans**

*Po Box: 5170*
*Simi Valley, CA  93065-5170*



AT1        4-772-70220-0000063-001-1-000-000-000-000
JULIO MAYEN & SARAH MAYEN
15335 CASTLE PEAK LN
JAMUL  CA 91935

**Date:**        February 26, 2013

**Account No.:** 

**Property Address:**
15335 Castle Peak Lane
Jamul,  CA 91935

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

This letter is to acknowledge receipt of your recent inquiry about your home loan. We are in the process of obtaining the documentation and information necessary to address your questions. We appreciate your patience while we research your request.

**THANK YOU**

If you have any additional questions while we research your request, please call us at 1-800-669-6607, Monday-Friday 7a.m. - 7p.m. Local Time.

This communication is from Bank of America, N.A., the servicer of your home loan.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.

Please write your account number on all correspondence.

# Exhibit 2



**Bank of America**
**Home Loans**

Customer Service Department, CA6-919-02-41
PO Box 5170
Simi Valley, CA 93062-5170

|  |  |
|---|---|
| **Notice Date:** | September 10, 2013 |
| **Loan No.:** | ▓▓▓▓▓▓ |

Julio & Sarah A Mayen
15335 Castle Peak Ln
Jamul, CA 91935

**Property Address:**
15335 Castle Peak Lane
Jamul, CA 91935

---

**IMPORTANT MESSAGE ABOUT YOUR COMMUNICATION REQUEST**

We received your request that we cease communication with you regarding your loan obligation. We have updated our records per your request.

**WHAT THIS MEANS**

Please be advised that while collections efforts have been suspended in accordance with your request, we reserve all legal and contractual rights, including enforcement of the mortgage lien in accordance with applicable law. Please also note that you will continue to receive informational correspondence such as monthly statements and required legal disclosures.

If at any time you want to resume communication and correspondence with us regarding your loan, please mail your written request to us at:

Customer Service Department, CA6-919-02-41
PO Box 5170
Simi Valley, CA 93062-5170

**QUESTIONS?**

If you have any questions, please call us at (800) 669-6607 between the hours of Monday-Friday 7a.m. - 7p.m. Local Time. We appreciate the opportunity to serve your home loan needs.

This communication is from Bank of America, N.A., the servicer of your home loan.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.

Please write your account number on all correspondence.

**Exhibit 3**



**Bank of America**

**Home Loans**

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170



AT1      -772-96421-0010985-006-1-000-000-000-000

JULIO & SARAH A MAYEN
16335 CASTLE PEAK LN
JAMUL          CA 91935

**Notice Date:** October 16, 2013

**Account No.:** ▮▮▮▮▮▮▮

**Property Address:**
16335 CASTLE PEAK LANE
JAMUL, CA 91935

---

**WHAT IS CHANGING**

In the coming months, you will begin receiving a monthly statement for your home loan account ending in 2584.

**WHY THIS CHANGE IS OCCURING**

The Consumer Financial Protection Bureau, established by Congress, will soon require mortgage servicers to provide customers with a monthly mortgage statement.  To ensure this requirement is met, Bank of America, N.A, will provide customers with a monthly mortgage statement.  For more information about the Consumer Financial Protection Bureau, please visit their website at consumerfinance.gov.

**WHAT YOU NEED TO DO**

No action is required on your part.  You will receive additional information in your first statement outlining important details about your new statement, including where to find relevant information about your account and how to contact us.

**QUESTIONS?**

If you have any questions, give us a call at (800) 669-6650.

**Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.  If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for information only and is not an attempt to collect the debt, a demand for payment, or an attempt to impose personal liability for that debt.**

## MODIFICACIONES QUE SE REALIZARÁN

En los próximos meses, usted comenzará a recibir un estado de cuenta mensual para su cuenta de préstamo para vivienda que termina en █████

## POR QUÉ SE PRODUCIRÁ ESTA MODIFICACIÓN

La Oficina para la Protección Financiera del Consumidor, establecida por el Congreso, próximamente les exigirá a los prestadores de servicio de hipotecas que les proporcionen a los clientes un estado de cuenta hipotecario mensual. Para garantizar el cumplimiento de este requisito, Bank of America, N.A. les proporcionará a los clientes un estado de cuenta hipotecario mensual. Para obtener más información sobre la Oficina para la Protección Financiera del Consumidor, por favor visite su sitio web ingresando en consumerfinance.gov.

## LO QUE USTED NECESITA HACER

No se requiere ninguna acción de su parte. Usted recibirá información adicional en su primer estado de cuenta que proporcionará detalles importantes sobre su nuevo estado de cuenta, como por ejemplo dónde encontrar información relevante sobre su cuenta y cómo comunicarse con nosotros.

## ¿ALGUNA PREGUNTA?

Si tiene alguna pregunta, llámenos al (800) 295-0025.

**Bank of America, N.A. está obligado por ley a informarle a usted que esta comunicación proviene de un cobrador de deudas. Si usted se encuentra actualmente en un procedimiento de quiebra o ha obtenido anteriormente una exoneración de esta deuda en virtud de las leyes de quiebra vigentes, esta notificación se proporciona únicamente para fines informativos y no constituye un intento de cobrar la deuda, una demanda de pago ni un intento de imponer responsabilidad personal por dicha deuda.**

**Exhibit 4**

**Bank of America** 

**Home Loans**



CA6-919-01-41
P. O. Box 941852
Simi Valley, CA 93094-1852

ıɪlıııl|ɪlıɪlıɪ|||ɪɪlıɪlɪɪlɪlɪlɪllɪɪlllɪɪllllɪɪɪlɪlɪlɪlɪlɪ

AT1      8-772-93843-0001231-001-1-000-000-000-000

JULIO & SARAH A MAYEN
15335 CASTLE PEAK LN
JAMUL          CA 91935

**Notice Date:**   September 10, 2013

**Account No.:**

**Property Address:**
15335 Castle Peak Lane
Jamul, CA  91935

Dear Julio & Sarah A Mayen,

My name is Matthew Rosnov and I am your new Customer Relationship Manager (CRM) at Bank of America, N.A., your home loan servicer.

I will continue the work you started with your previous Customer Relationship Manager with the same goal of pursuing every available option to assist you with your home loan.  The change in CRM does not indicate a change in status to your loan assistance request.

I will be calling you soon, but in the meantime, if you have questions, you can reach me at 1.800.669.6650 or 1.877.447.4002.  Please have your loan number available when you call.  Additionally, you can visit bankofamerica.com/homeloanhelp to learn about the home loan assistance process.

We know this is a difficult time, and we're here to help.

Sincerely,


Matthew Rosnov
Customer Relationship Manager
Bank of America, N.A.

Bank of America, N.A., the servicer of your home loan, is required by law to inform you that this communication is from a debt collector.

## IMPORTANT DISCLOSURES

 Bank of America, N.A., the servicer of your home loan, is required by law to inform you that this communication is from a debt collector.

If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for information only and is not an attempt to collect the debt, a demand for payment, or an attempt to impose personal liability for that debt. You are not obligated to discuss your home loan with us or enter into a loan modification or other loan-assistance program. You should consult with your bankruptcy attorney or other advisor about your legal rights and options.

**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1.877.430.5434. If you are calling from outside the U.S. please contact us at 1.817.685.6491.

## DIVULGACIONES IMPORTANTES

Bank of America, N.A., el administrador de su préstamo para vivienda está obligado por ley a informarle a usted que esta comunicación proviene de un cobrador de deudas.

Si usted se encuentra actualmente en un procedimiento de quiebra, o ha obtenido previamente una exoneración de esta deuda bajo la ley aplicable sobre quiebra, este no es un intento de recaudación, una demanda de pago o un intento de imponer una responsabilidad personal por esa deuda. Usted no está obligado(a) a hablar de su préstamo para vivienda con nosotros ni a participar en un programa de modificación de préstamos u otro programa de asistencia para préstamos. Usted debe consultar con su abogado especializado en quiebras u otro asesor acerca de sus opciones y derechos legales.

**PERSONAL MILITAR/ MIEMBROS DE LAS FUERZAS ARMADAS:** Si usted o su cónyuge es un miembro del servicio militar, por favor comuníquese con nosotros inmediatamente. La Ley federal de Ayuda Civil para Miembros de las Fuerzas Armadas y las leyes estatales comparables otorgan protecciones y beneficios significativos al personal del servicio militar que califique, incluyendo protecciones contra la ejecución hipotecaria así como también ayuda en la tasa de interés. Para obtener más información y determinar su calificación por favor llame sin costo a nuestro Equipo de Asistencia para el Servicio Militar al 1.877.430.5434. Si usted llama desde fuera de los Estados Unidos por favor comuníquese con nosotros al 1.817.685.6491.

**Exhibit 5**

**Bank of America**

**Home Loans**

400 National Way
Mail Code: CA6-919-02-22
Simi Valley, CA  93065

August 8, 2013

Julio Mayen
15335 Castle Peak Lane
Jamul, CA  91935

Re:     Customers: Julio and Sarah A. Mayen
        Property Address: 15335 Castle Peak Lane, Jamul, CA  91935
        Bank of America loan number ending in:▮▮▮

Dear Mr. Mayen:

We are in receipt of your correspondence dated August 5, 2013, which was received on August 6, 2013, by Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP ("Bank of America"), regarding the referenced loan.

Please be advised that the Owner of the Note for this loan pursuant to 15 U.S.C. §1641(f)(2) is as follows:

The Bank of New York Mellon fka the Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-07, Mortgage Pass-Through Certificates, Series 2005-07

101 Barclay Street, 4W
New York, NY  10286
telephone number: 1.888.999.0615

The additional concerns addressed in your correspondence require further detailed analysis. We will respond to your request after we have completed our investigation.

If you have any questions pertaining to this matter in the interim, please contact the assigned QWR Associate, Esther Gray, at 1.805.577.3167. For all other questions or concerns relating to the servicing of the loan, please contact the assigned Customer Relationship Manager with Bank of America, Eric Cieslak, at 1.800.669.6650.

Sincerely,

*Esther Gray*

Esther Gray
Litigation Specialist II
Qualified Written Request (QWR) Services

*Bank of America, N.A., is required by law to inform you that this communication is from a debt collector.*

Revised 4/1/13
ACK02 (2)

**Exhibit 6**

InstitutionHistory Case 3:13-cv-02080-MMA-BGS    Document 19-4    Filed 02/05/14   Page 14 of 106    www.ffiec.gov/nicpubweb/nicweb/InstitutionHistory.aspx?par...

14 of 106



FFIEC home  |  Federal Reserve Board home

Accessibility  |  Disclaimer  |  Privacy Policy

## National Information Center

A repository of financial data and institution characteristics
collected by the Federal Reserve System

| NIC Home | Institution Search | USBA Search | Top 50 HCs |
|---|---|---|---|
| BHCPR Peer Reports | FAQ | | |

**Institution History for**  BAC HOME LOANS SERVICING, LP (3035311)

3 institution history record(s) found.

< Previous  Page 1 Next >

| Event Date | Historical Event |
|---|---|
| 2001-05-18 | COUNTRYWIDE HOME LOANS SERVICING LP located at PLANO, TX was established as a Domestic Entity Other. |
| 2009-04-27 | COUNTRYWIDE HOME LOANS SERVICING LP was renamed to BAC HOME LOANS SERVICING, LP. |
| 2011-07-01 | BAC HOME LOANS SERVICING, LP was acquired by BANK OF AMERICA, NATIONAL ASSOCIATION. |

Page 1 of 1

NIC Home  |  FAQ  |  Help  |  Contact Us

**Exhibit 7**

Full-Text Search  Filing Company

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 15

CERTIFICATION AND NOTICE OF TERMINATION OF REGISTRATION UNDER SECTION 12(g) OF
THE SECURITIES EXCHANGE ACT OF 1934 OR SUSPENSION OF DUTY TO FILE REPORTS
UNDER SECTIONS 13 AND 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.

Commission File Number 333-109248-50
--------------

CWMBS, Inc.
---------------------------------------------------------------
(Exact name of registrant as specified in its charter)

4500 Park Granada
Calabasas, California 91302 (818) 225-3000
---------------------------------------------------------------
(Address, including zip code, and telephone number, including
area code, of registrant's principal executive offices)

CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-7,
Mortgage Pass-Through Certificates, Series 2005-7
---------------------------------------------------------------
(Title of each class of securities covered by this Form)

None
---------------------------------------------------------------
(Titles of all other classes of securities for which a duty to
file reports under section 13(a) or 15(d) remains)

Please place an X in the box(es) to designate the appropriate rule
provision(s) relied upon to terminate or suspend the duty to file reports:

Rule 12g-4(a)(1)(i)   [ ]      Rule 12h-3(b)(1)(ii) [ ]

Rule 12g-4(a)(1)(ii)  [ ]      Rule 12h-3(b)(2)(i)   [ ]

Rule 12g-4(a)(2)(i)   [ ]      Rule 12h-3(b)(2)(ii) [ ]

Rule 12g-4(a)(2)(ii)  [ ]      Rule 15d-6            [X]

Rule 12h-3(b)(1)(i)   [ ]

Approximate number of holders of record as of the certification or notice
date:  6

Pursuant to the requirements of the Securities Exchange Act of 1934,
CWMBS, Inc. has caused this certification/notice to be signed on its behalf by
the undersigned duly authorized person.

DATE:  January 20, 2006                BY:  /s/ Darren Bigby
                                            --------------------
                                            Darren Bigby
                                            Vice President

**Exhibit 8**

```
<DOCUMENT>
<TYPE>424B5
<SEQUENCE>1
<FILENAME>v04620e424b5.txt
<DESCRIPTION>PROSPECTUS SUPPLEMENT - REG. NO. 333-109248
<TEXT>
<PAGE>
```

AS FILED PURSUANT TO RULE 424(b)(5)
UNDER THE SECURITIES ACT OF 1933
REGISTRATION NO. 333-109248

PROSPECTUS SUPPLEMENT

(TO PROSPECTUS DATED AUGUST 24, 2004)

$1,265,061,100
(APPROXIMATE)

CWMBS, INC.
DEPOSITOR

[COUNTRYWIDE HOME LOANS LOGO]
SELLER

COUNTRYWIDE HOME LOANS SERVICING LP
MASTER SERVICER

CHL MORTGAGE PASS-THROUGH TRUST 2005-7
ISSUER

DISTRIBUTIONS PAYABLE MONTHLY, BEGINNING FEBRUARY 25, 2005

------------------------

The following classes of certificates are being offered pursuant to this prospectus supplement and the accompanying prospectus:

```
<Table>
<Caption>
```

| | INITIAL CLASS CERTIFICATE BALANCE | PASS-THROUGH RATE | | INITIAL CLASS CERTIFICATE BALANCE | PASS-THROUGH RATE |
|---|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> | <C> |
| Class 1-A-1 | $ 410,596,000 | Variable | Class 3-X | N/A | Variable |
| Class 1-A-2 | $ 30,677,000 | Variable | Class A-R | $ 100 | Variable |
| Class 1-X | N/A | Variable | Class I-M-1 | $ 10,855,000 | Variable |

**Exhibit 9**

# CWMBS Inc · 8-K · For 1/30/05 · EX-99.1

**Filed On 4/13/05, 10:44am ET · Accession Number 905148-5-2444 · SEC File 333-100418**

Help... *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for
Text: | (anywhere), "(&)" (near).                    in          Show          and

| As Of Issuer | Filer Agent | Filing | For/On/As | Docs:Size |
|---|---|---|---|---|
| 4/13/05   CWMBS Inc Sidley Austin LLP/FA | | 8-K:8,9 | 1/30/05 | 2:582K |

## Current Report — Form 8-K
### Filing Table of Contents

| Document/Exhibit | Description Size | Pages |
|---|---|---|
| 1: 8-K | Cwmbs, Series 2005-7 13K | 5 |
| 2: EX-99.1 | Pooling and Servicing Agreement 790K | 226 |

## EX-99.1 — Pooling and Servicing Agreement
### Exhibit Table of Contents

| **Page** | *(sequential)* | | *(alphabetic)* | Top |
|---|---|---|---|---|
| 1 | 1st Page  -  Filing Submission | | • Alternative Formats (Word, et al.) | |
| 2 | Pooling and Servicing Agreement | | • Agreement | |
| 24 | Agreement | | • Applicable Credit Support Percentage | |
| " | Applicable Credit Support Percentage | | • Assignment Agreement | |
| 25 | Assignment Agreement | | • Benefit Plan Opinion | |
| " | Benefit Plan Opinion | | • Certificate | |
| 26 | Certificate | | • Certificate Balance | |
| " | Certificate Balance | | • Code | |
| 28 | Code | | • Confirmation | |
| 29 | Confirmation | | | |
| 30 | Countrywide | | | |

| | |
|---|---|
| "  Countrywide Servicing | •  Countrywide |
| 31  Definitive Certificates | •  Countrywide Servicing |
| "  Delay Delivery Certification | •  Definitive Certificates |
| "  Deleted Mortgage Loan | •  Delay Delivery Certification |
| "  Denomination | •  Deleted Mortgage Loan |
| "  Depositor | •  Denomination |
| 32  Distribution Date | •  Depositor |
| "  Eligible Repurchase Month | •  Distribution Date |
| "  Escrow Account | •  Effective Date |
| "  Event of Default | •  Eligible Repurchase Month |
| 33  Final Certification | •  Escrow Account |
| 34  Initial Certification | •  Event of Default |
| "  Latest Possible Maturity Date | •  Final Certification |
| 35  Lost Mortgage Note | •  Initial Certificate Balance of this Certificate |
| 36  Master REMIC | •  Initial Certification |
| "  Master Servicer | •  Initial Notional Amount of this Certificate |
| "  Middle Tier REMIC | •  Latest Possible Maturity Date |
| 37  Mortgage Loan Schedule | •  Lost Mortgage Note |
| 38  Mortgage Loans | •  Master REMIC |
| 41  Ownership Interest | •  Master Servicer |
| "  Park Granada | •  Middle Tier REMIC |
| 43  Permitted Transferee | •  Mortgage Loans |
| 44  Person | •  Mortgage Loan Schedule |
| 45  Principal Amount | •  Ownership Interest |
| 47  Rating Agency | •  Park Granada |
| 48  Reference Bank | •  Permitted Transferee |
| "  Remic | •  Person |
| "  Request for Release | •  Pooling and Servicing Agreement |
| 49  Restricted Classes | •  Principal Amount |
| "  Seller | •  Rating Agency |
| 50  Senior Principal Distribution Amount | •  Reference Bank |
| 51  Startup Day | •  Remic |
| 52  Subordinated Portion | •  Request for Release |
| 53  Substitution Adjustment Amount | •  Restricted Classes |
| "  Tax Matters Person | •  Section 10.01. Amendment |
| 54  Transfer | •  Section 10.02. Recordation of Agreement; Counterparts |
| "  Transfer Payment | •  Section 10.03. Governing Law |
| "  Transfer Payment Made | •  Section 10.04. Intention of Parties |
| "  Transfer Payment Received | •  Section 10.05. Notices |
| "  Trustee | •  Section 10.06. Severability of Provisions |
| 55  Undercollateralized Group | •  Section 10.07. Assignment |
| 56  Section 2.01. Conveyance of Mortgage Loans | •  Section 10.08. Limitation on Rights of Certificateholders |
| 60  Section 2.02. Acceptance by Trustee of the Mortgage Loans | •  Section 10.09. Inspection and Audit Rights |
| 62  Section 2.03. Representations, | |

|    | Warranties and Covenants of the Sellers and Master Servicer |
| 64 | Section 2.04. Representations and Warranties of the Depositor as to the Mortgage Loans |
| " | Section 2.05. Delivery of Opinion of Counsel in Connection with Substitutions |
| 65 | Section 2.06. Execution and Delivery of Certificates |
| " | Section 2.07. REMIC Matters |
| " | Section 2.08. Covenants of the Master Servicer |
| 67 | Section 3.01. Master Servicer to Service Mortgage Loans |
| 68 | Section 3.02. Subservicing; Enforcement of the Obligations of Subservicers |
| " | Section 3.03. Rights of the Depositor and the Trustee in Respect of the Master Servicer |
| 69 | Section 3.04. Trustee to Act as Master Servicer |
| " | Section 3.05. Collection of Mortgage Loan Payments; Certificate Account; Distribution Account; Carryover Reserve Fund; Corridor Contract Reserve Fund |
| 73 | Section 3.06. Collection of Taxes, Assessments and Similar Items; Escrow Accounts |
| " | Section 3.07. Access to Certain Documentation and Information Regarding the Mortgage Loans |
| 74 | Section 3.08. Permitted Withdrawals from the Certificate Account, the Distribution Account, the Carryover Shortfall Reserve Fund and Corridor Contract Reserve Fund |
| 76 | Section 3.09. Maintenance of Hazard Insurance; Maintenance of Primary Insurance Policies |
| 77 | Section 3.10. Enforcement of Due-on-Sale Clauses; Assumption Agreements |
| 79 | Section 3.11. Realization Upon Defaulted Mortgage Loans; Repurchase |

- Section 10.10. Certificates Nonassessable and Fully Paid
- Section 10.11. [Reserved]
- Section 10.12. Protection of Assets
- Section 2.01. Conveyance of Mortgage Loans
- Section 2.02. Acceptance by Trustee of the Mortgage Loans
- Section 2.03. Representations, Warranties and Covenants of the Sellers and Master Servicer
- Section 2.04. Representations and Warranties of the Depositor as to the Mortgage Loans
- Section 2.05. Delivery of Opinion of Counsel in Connection with Substitutions
- Section 2.06. Execution and Delivery of Certificates
- Section 2.07. REMIC Matters
- Section 2.08. Covenants of the Master Servicer
- Section 3.01. Master Servicer to Service Mortgage Loans
- Section 3.02. Subservicing; Enforcement of the Obligations of Subservicers
- Section 3.03. Rights of the Depositor and the Trustee in Respect of the Master Servicer
- Section 3.04. Trustee to Act as Master Servicer
- Section 3.05. Collection of Mortgage Loan Payments; Certificate Account; Distribution Account; Carryover Reserve Fund; Corridor Contract Reserve Fund
- Section 3.06. Collection of Taxes, Assessments and Similar Items; Escrow Accounts
- Section 3.07. Access to Certain Documentation and Information Regarding the Mortgage Loans
- Section 3.08. Permitted Withdrawals from the Certificate Account, the Distribution Account, the Carryover Shortfall Reserve Fund and Corridor Contract Reserve Fund
- Section 3.09. Maintenance of Hazard Insurance; Maintenance of Primary

of Certain Mortgage Loans

82  Section 3.12. Trustee to Cooperate;
    Release of Mortgage Files
83  Section 3.13. Documents, Records and
    Funds in Possession of Master Servicer
    to be Held for the Trustee
"   Section 3.14. Servicing Compensation
84  Section 3.15. Access to Certain
    Documentation
"   Section 3.16. Annual Statement as to
    Compliance
"   Section 3.17. Annual Independent
    Public Accountants' Servicing
    Statement; Financial Statements
85  Section 3.18. Errors and Omissions
    Insurance; Fidelity Bonds
"   Section 3.19. Notification of
    Adjustments
86  Section 3.20. Corridor Contracts
87  Section 4.01. Advances
88  Section 4.02. Priorities of Distribution
94  Section 4.03. Allocation of Net
    Deferred Interest
95  Section 4.04. Allocation of Realized
    Losses
96  Section 4.05. Cross-Collateralization;
    Adjustments to Available Funds
97  Section 4.06. Monthly Statements to
    Certificateholders
99  Section 4.07. [Reserved]
"   Section 4.08. Determination of Pass-
    Through Rates for LIBOR Certificates
101 Section 4.09. Distributions from the
    Corridor Contract Reserve Fund
102 Section 5.01. The Certificates
"   Section 5.02. Certificate Register;
    Registration of Transfer and Exchange
    of Certificates
107 Section 5.03. Mutilated, Destroyed,
    Lost or Stolen Certificates
"   Section 5.04. Persons Deemed Owners
"   Section 5.05. Access to List of
    Certificateholders' Names and
    Addresses
108 Section 5.06. Maintenance of Office or
    Agency

Insurance Policies
• Section 3.10. Enforcement of Due-on-Sale
  Clauses; Assumption Agreements
• Section 3.11. Realization Upon Defaulted
  Mortgage Loans; Repurchase of Certain
  Mortgage Loans
• Section 3.12. Trustee to Cooperate;
  Release of Mortgage Files
• Section 3.13. Documents, Records and
  Funds in Possession of Master Servicer to
  be Held for the Trustee
• Section 3.14. Servicing Compensation
• Section 3.15. Access to Certain
  Documentation
• Section 3.16. Annual Statement as to
  Compliance
• Section 3.17. Annual Independent Public
  Accountants' Servicing Statement;
  Financial Statements
• Section 3.18. Errors and Omissions
  Insurance; Fidelity Bonds
• Section 3.19. Notification of Adjustments
• Section 3.20. Corridor Contracts
• Section 4.01. Advances
• Section 4.02. Priorities of Distribution
• Section 4.03. Allocation of Net Deferred
  Interest
• Section 4.04. Allocation of Realized
  Losses
• Section 4.05. Cross-Collateralization;
  Adjustments to Available Funds
• Section 4.06. Monthly Statements to
  Certificateholders
• Section 4.07. [Reserved]
• Section 4.08. Determination of Pass-
  Through Rates for LIBOR Certificates
• Section 4.09. Distributions from the
  Corridor Contract Reserve Fund
• Section 5.01. The Certificates
• Section 5.02. Certificate Register;
  Registration of Transfer and Exchange of
  Certificates
• Section 5.03. Mutilated, Destroyed, Lost or
  Stolen Certificates
• Section 5.04. Persons Deemed Owners
• Section 5.05. Access to List of

109 Section 6.01. Respective Liabilities of the Depositor and the Master Servicer
 " Section 6.02. Merger or Consolidation of the Depositor or the Master Servicer
 " Section 6.03. Limitation on Liability of the Depositor, the Sellers, the Master Servicer and Others
110 Section 6.04. Limitation on Resignation of Master Servicer
111 Section 7.01. Events of Default
112 Section 7.02. Trustee to Act; Appointment of Successor
114 Section 7.03. Notification to Certificateholders
115 Section 8.01. Duties of Trustee
116 Section 8.02. Certain Matters Affecting the Trustee
117 Section 8.03. Trustee Not Liable for Certificates or Mortgage Loans
 " Section 8.04. Trustee May Own Certificates
 " Section 8.05. Trustee's Fees and Expenses
118 Section 8.06. Eligibility Requirements for Trustee
 " Section 8.07. Resignation and Removal of Trustee
119 Section 8.08. Successor Trustee
 " Section 8.09. Merger or Consolidation of Trustee
120 Section 8.10. Appointment of Co-Trustee or Separate Trustee
121 Section 8.11. Tax Matters
123 Section 9.01. Termination upon Liquidation or Purchase of all Mortgage Loans
125 Section 9.02. Final Distribution on the Certificates
126 Section 9.03. Additional Termination Requirements
127 Section 10.01. Amendment
128 Section 10.02. Recordation of Agreement; Counterparts
129 Section 10.03. Governing Law
 " Section 10.04. Intention of Parties
 " Section 10.05. Notices

• Certificateholders' Names and Addresses
• Section 5.06. Maintenance of Office or Agency
• Section 6.01. Respective Liabilities of the Depositor and the Master Servicer
• Section 6.02. Merger or Consolidation of the Depositor or the Master Servicer
• Section 6.03. Limitation on Liability of the Depositor, the Sellers, the Master Servicer and Others
• Section 6.04. Limitation on Resignation of Master Servicer
• Section 7.01. Events of Default
• Section 7.02. Trustee to Act; Appointment of Successor
• Section 7.03. Notification to Certificateholders
• Section 8.01. Duties of Trustee
• Section 8.02. Certain Matters Affecting the Trustee
• Section 8.03. Trustee Not Liable for Certificates or Mortgage Loans
• Section 8.04. Trustee May Own Certificates
• Section 8.05. Trustee's Fees and Expenses
• Section 8.06. Eligibility Requirements for Trustee
• Section 8.07. Resignation and Removal of Trustee
• Section 8.08. Successor Trustee
• Section 8.09. Merger or Consolidation of Trustee
• Section 8.10. Appointment of Co-Trustee or Separate Trustee
• Section 8.11. Tax Matters
• Section 9.01. Termination upon Liquidation or Purchase of all Mortgage Loans
• Section 9.02. Final Distribution on the Certificates
• Section 9.03. Additional Termination Requirements
• Seller
• Senior Principal Distribution Amount
• Startup Day
• Subordinated Portion

130 Section 10.06. Severability of
      Provisions
131 Section 10.07. Assignment
 "   Section 10.08. Limitation on Rights of
      Certificateholders
 "   Section 10.09. Inspection and Audit
      Rights
132 Section 10.10. Certificates
      Nonassessable and Fully Paid
 "   Section 10.11. [Reserved]
 "   Section 10.12. Protection of Assets
153 Initial Certificate Balance of this
      Certificate
168 Initial Notional Amount of this
      Certificate
184 Transfer Affidavit
213 Effective Date

- Substitution Adjustment Amount
- Tax Matters Person
- Transfer
- Transfer Affidavit
- Transfer Payment
- Transfer Payment Made
- Transfer Payment Received
- Trustee
- Undercollateralized Group

| EX-99.1 | 1st Page of 226 | TOC | ↑Top | Previous | Next | ↓Bottom | Just 1st |
|---|---|---|---|---|---|---|---|

EXHIBIT 99.1
------------

6

| EX-99.1 | 2nd Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 2nd |
|---|---|---|---|---|---|---|---|

EXECUTION COPY

========================

CWMBS, INC.,
Depositor
COUNTRYWIDE HOME LOANS, INC.,
Seller
PARK GRANADA LLC,
Seller
COUNTRYWIDE HOME LOANS SERVICING LP,
Master Servicer
and
THE BANK OF NEW YORK,
Trustee

------------------------------------

POOLING AND SERVICING AGREEMENT
Dated as of January 1, 2005

------------------------------------

CHL MORTGAGE PASS-THROUGH TRUST 2005-7

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-7

========================

***Table of Contents***

***Page***

----

**ARTICLE I DEFINITIONS**

**ARTICLE II CONVEYANCE OF MORTGAGE LOANS; REPRESENTATIONS AND WARRANTIES**

SECTION 2.01.      Conveyance of Mortgage Loans.........................................................50

SECTION 2.02.      Acceptance by Trustee of the Mortgage Loans.......................................54

SECTION 2.03.      Representations, Warranties and Covenants of the Sellers and Master Servicer...........................................................................56

SECTION 2.04.      Representations and Warranties of the Depositor as to the Mortgage Loans.........58

SECTION 2.05.      Delivery of Opinion of Counsel in Connection with Substitutions..................58

SECTION 2.06.      Execution and Delivery of Certificates....................................59

SECTION 2.07.      REMIC Matters......................................................................59

SECTION 2.08.      Covenants of the Master Servicer..........................................59

**ARTICLE III ADMINISTRATION AND SERVICING OF MORTGAGE LOANS**

SECTION 3.01.      Master Servicer to Service Mortgage Loans.......................................61

SECTION 3.02.      Subservicing; Enforcement of the Obligations of Subservicers....................62

SECTION 3.03.      Rights of the Depositor and the Trustee in Respect of the Master Servicer........62

SECTION 3.04.      Trustee to Act as Master Servicer.................................................63

SECTION 3.05.      Collection of Mortgage Loan Payments; Certificate Account; Distribution Account; Carryover Reserve Fund; Corridor Contract Reserve Fund..................63

SECTION 3.06.      Collection of Taxes, Assessments and Similar Items; Escrow Accounts..............67

SECTION 3.07.      Access to Certain Documentation and Information Regarding the Mortgage Loans.......................................................................67

SECTION 3.08.      Permitted Withdrawals from the Certificate Account, the Distribution Account, the Carryover Shortfall Reserve Fund and Corridor Contract Reserve Fund.................................................................68

SECTION 3.09.      Maintenance of Hazard Insurance; Maintenance of Primary Insurance Policies..........................................................................70

SECTION 3.10.      Enforcement of Due-on-Sale Clauses; Assumption Agreements........................71

SECTION 3.11.      Realization Upon Defaulted Mortgage Loans; Repurchase of Certain Mortgage Loans.............................................................................73

SECTION 3.12.      Trustee to Cooperate; Release of Mortgage Files....................................76

i

SECTION 3.13.          Documents, Records and Funds in Possession of Master Servicer to be Held for the Trustee..............................................................77
          SECTION 3.14.          Servicing Compensation.................................................................77
          SECTION 3.15.          Access to Certain Documentation........................................................78
          SECTION 3.16.          Annual Statement as to Compliance.......................................................78
SECTION 3.17.          Annual Independent Public Accountants' Servicing Statement; Financial Statements..............................................................78
          SECTION 3.18.          Errors and Omissions Insurance; Fidelity Bonds...................................79
          SECTION 3.19.          Notification of Adjustments.............................................................79
          SECTION 3.20.          Corridor Contracts..............................................................80

                    ARTICLE IV DISTRIBUTIONS AND ADVANCES BY THE MASTER SERVICER

                              SECTION 4.01. Advances...................................................................81
          SECTION 4.02.          Priorities of Distribution............................................................82
          SECTION 4.03.          Allocation of Net Deferred Interest......................................................88
          SECTION 4.04.          Allocation of Realized Losses............................................................89
SECTION 4.05.          Cross-Collateralization; Adjustments to Available Funds.........................90
          SECTION 4.06.          Monthly Statements to Certificateholders................................................91
                              SECTION 4.07. [Reserved]..................................................................93
          SECTION 4.08.          Determination of Pass-Through Rates for LIBOR Certificates...................93
          SECTION 4.09.          Distributions from the Corridor Contract Reserve Fund.........................95

                              ARTICLE V THE CERTIFICATES

                    SECTION 5.01.          The Certificates...............................................................96
SECTION 5.02.          Certificate Register; Registration of Transfer and Exchange of Certificates..................................................................96
          SECTION 5.03.          Mutilated, Destroyed, Lost or Stolen Certificates............................101
          SECTION 5.04.          Persons Deemed Owners.................................................................101
          SECTION 5.05.          Access to List of Certificateholders' Names and Addresses..................101
          SECTION 5.06.          Maintenance of Office or Agency..........................................................102

                    ARTICLE VI THE DEPOSITOR AND THE MASTER SERVICER

          SECTION 6.01.          Respective Liabilities of the Depositor and the Master Servicer................103
          SECTION 6.02.          Merger or Consolidation of the Depositor or the Master Servicer................103
SECTION 6.03.          Limitation on Liability of the Depositor, the Sellers, the Master Servicer and Others..............................................................103

SECTION 6.04.          Limitation on Resignation of Master
Servicer.....................................104

**ARTICLE VII DEFAULT**

SECTION 7.01.          Events of
Default...........................................................105
SECTION 7.02.          Trustee to Act; Appointment of
Successor.....................................106
SECTION 7.03.          Notification to
Certificateholders...........................................108

ii

**ARTICLE VIII CONCERNING THE TRUSTEE**

SECTION 8.01.          Duties of
Trustee...........................................................109
SECTION 8.02.          Certain Matters Affecting the
Trustee.......................................110
SECTION 8.03.     Trustee Not Liable for Certificates or Mortgage
Loans....................111
SECTION 8.04.          Trustee May Own
Certificates.....................................................111
SECTION 8.05.          Trustee's Fees and
Expenses....................................................111
SECTION 8.06.          Eligibility Requirements for
Trustee.......................................112
SECTION 8.07.          Resignation and Removal of
Trustee........................................112
SECTION 8.08.          Successor
Trustee...........................................................113
SECTION 8.09.          Merger or Consolidation of
Trustee........................................113
SECTION 8.10.     Appointment of Co-Trustee or Separate
Trustee..................114
SECTION 8.11.          Tax
Matters...........................................................115

**ARTICLE IX TERMINATION**

SECTION 9.01.          Termination upon Liquidation or Purchase of all Mortgage
Loans.................117
SECTION 9.02.          Final Distribution on the
Certificates.....................................119
SECTION 9.03.          Additional Termination
Requirements.........................................120

**ARTICLE X MISCELLANEOUS PROVISIONS**

SECTION 10.01.
Amendment........................................................121
SECTION 10.02.          Recordation of Agreement;
Counterparts....................................122
SECTION 10.03.          Governing
Law.............................................................123
SECTION 10.04.          Intention of
Parties.........................................................123
SECTION 10.05.
Notices..........................................................123
SECTION 10.06.          Severability of
Provisions...................................124
SECTION 10.07.
Assignment.......................................................125
SECTION 10.08.          Limitation on Rights of
Certificateholders...................................125
SECTION 10.09.          Inspection and Audit
Rights..........................................................125
SECTION 10.10.     Certificates Nonassessable and Fully
Paid.....................................126

SECTION 10.11.
[Reserved]...........................................................126
            SECTION 10.12.      Protection of
Assets...............................................................126

iii

| EX-99.1 | 6th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 6th |
|---------|-----------------|-----|-----|----------|------|---------|----------|

[Enlarge/Download
Table]

**SCHEDULES**

Schedule I:      Mortgage Loan Schedule.................................................S-
                                                          I-1
Schedule II-A:   Representations and Warranties of Countrywide................................S-II-
                                                          A-1
Schedule II-B:   Representations and Warranties of Park Granada...............................S-II-
                                                          B-1
        Schedule III-A   Representations and Warranties of Countrywide as to all
        of the Mortgage Loans.......................................................S-III-
                                                          A-1
        Schedule III-B   Representations and Warranties of Countrywide as to the
        Countrywide Mortgage Loans......................................................S-III-
                                                          B-1
        Schedule III-C   Representations and Warranties of Park Granada as to the
        Park Granada Mortgage Loans......................................................S-III-
                                                          C-1
Schedule IV:     Representations and Warranties of the Master Servicer..........................S-
                                                          IV-1
Schedule V:      Principal Balance Schedules (if applicable).......................................S-
                                                          V-1
Schedule VI:     Form of Monthly Master Servicer Report.......................................S-
                                                          VI-1

**EXHIBITS**

Exhibit A:       Form of Senior Certificate (other than Notional Amount
Certificates)...............................................................A-1
            Exhibit B:      Form of Subordinated
        Certificate...................................................B-1
            Exhibit C:      Form of Class A-R
        Certificate...................................................C-1
            Exhibit D:      Form of Notional Amount
        Certificate...................................................D-1
            Exhibit E:      Form of Reverse of
        Certificates.................................................E-1
            Exhibit F:      Form of Initial Certification of
        Trustee.......................................................F-1
        Exhibit G:      Form of Delay Delivery Certification of
        Trustee.......................................................G-1
            Exhibit H:      Form of Final Certification of
        Trustee.......................................................H-1
            Exhibit I:      Form of Transfer
        Affidavit...................................................I-1
            Exhibit J-1:    Form of Transferor Certificate
        (Residual)...................................................J-1
            Exhibit J-2:    Form of Transferor Certificate
        (Private)...................................................J-2
            Exhibit K:      Form of Investment Letter [Non-Rule
        144A]...................................................K-1
            Exhibit L:      Form of Rule 144A
        Letter.......................................................L-1
            Exhibit M:      Form of Request for Release (for
        Trustee)...................................................M-1
        Exhibit N:      Form of Request for Release of Documents (Mortgage Loan)
                        Paid in Full, Repurchased and
        Replaced)...................................................N-1

Exhibit O:

[Reserved]...............................................................O-1

Exhibit P:

[Reserved]...............................................................P-1

Exhibit Q:      Standard & Poor's LEVELS(R) Version 5.6 Glossary Revised, Appendix
E...................Q-1

Exhibit R:      Form of Corridor

Contract.............................................................R-1

Exhibit S:      Form of Assignment

Agreement............................................................S-1

iv

| EX-99.1 | 7th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 7th |
|---------|-----------------|-----|-----|----------|------|---------|----------|

THIS POOLING AND SERVICING AGREEMENT, dated as of January 1, 2005,
among CWMBS, INC., a Delaware corporation, as depositor (the "Depositor"),
COUNTRYWIDE HOME LOANS, INC. ("Countrywide"), a New York corporation, as a
seller (a "Seller"), PARK GRANADA LLC ("Park Granada"), a Delaware limited
liability company, as a seller (a "Seller"), COUNTRYWIDE HOME LOANS SERVICING
LP, a Texas limited partnership, as master servicer (the "Master Servicer"),
and THE BANK OF NEW YORK, a banking corporation organized under the laws of
the State of New York, as trustee (the "Trustee").

### WITNESSETH THAT

In consideration of the mutual agreements contained in this
Agreement, the parties to this Agreement agree as follows:

### PRELIMINARY STATEMENT

The Depositor is the owner of the Trust Fund that is hereby conveyed
to the Trustee in return for the Certificates. For federal income tax
purposes, the Trust Fund (other than the Carryover Shortfall Reserve Fund,
the
Corridor Contracts and the Corridor Contract Reserve Fund) will consist of
four real estate mortgage investment conduits (each a "REMIC" or, in the
alternative, the "Lower Tier REMIC A," the "Lower Tier REMIC B," the "Middle
Tier REMIC" and the "Master REMIC," respectively). Each Certificate, other
than the Class A-R Certificate, will represent ownership of one or more
regular interests in the Master REMIC for purposes of the REMIC Provisions.
The Class A-R Certificate represents ownership of the sole class of residual
interest in the Lower Tier REMIC A, Lower Tier REMIC B, the Middle Tier REMIC
and the Master REMIC. The Master REMIC will hold as assets the several
classes
of uncertificated Middle Tier REMIC Interests (other than the Class MT-A-R
Interest). The Middle Tier REMIC will hold as assets the several classes of
uncertificated Lower Tier REMIC B Interests (other than the Class LTB-A-R
Interest). The Lower Tier REMIC B will hold as assets the several classes of
uncertificated Lower Tier REMIC A Interests (other than the Class LTA-A-R
Interest). The Lower Tier REMIC A will hold as assets all property of the
Trust Fund (other than the Carryover Shortfall Reserve Fund, the Corridor
Contracts and the Corridor Contract Reserve Fund). Each Middle Tier REMIC
Interest (other than the Class MT-A-R Interest) is hereby designated as a
regular interest in the Middle Tier REMIC. Each Lower Tier REMIC A Interest
(other than the Class LTA-A-R Interest) is hereby designated as a regular
interest in the Lower Tier REMIC A and Each Lower Tier REMIC B Interest
(other

than the Class LTB-A-R Interest) is hereby designated as a regular interest in
the Lower Tier REMIC B. The latest possible maturity date of all REMIC regular
interests created in this Agreement shall be the Latest Possible Maturity Date.

The foregoing REMIC structure is intended to cause all of the cash
from the Mortgage Loans to flow through to the Master REMIC as cash flow on a
REMIC regular interest, without creating any shortfall-actual or potential
(other than for credit losses) to any REMIC regular interest. It is not
intended that the Class A-R Certificates be entitled to any cash flow pursuant
to this Agreement except as provided in Section 4.02(a)(1)(iv)(y) hereunder,
(that is, its entitlement to $100 plus interest thereon).

| EX-99.1 | 8th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 8th |

The following table set forth characteristics of the Interests in the
Lower Tier REMIC A.

| The Lower Tier REMIC A | Initial Principal Balance | Interest Rate Group Interests | Corresponding Aggregate |
|---|---|---|---|
| LTA-I........ | (1) | (2) | I |
| LTA-II....... | (1) | (2) | II |
| LTA-A-R..... | (3) | (3) | N/A |

---------------

(1)     This Class of Lower Tier REMIC A Interest will have an intial
Principal Balance equal to the initial principal balance of the
mortgages in the Corresponding Loan Group.
(2)     This Class of Lower Tier REMIC A Interest will have an Interest Rate
equal to the weighted average of the Adjusted Net Mortgage Rates of
the Mortgage Loans in the Corresponding Aggregate Group.
(3)     The Class LTA-AR Interest is the sole class of residual interest in
the Lower Tier REMIC A. It has no principal balance and pays no
principal or interest.

On each Distribution Date, the Available Funds for each Aggregate
Loan Group will be distributed with respect to the corresponding Aggregate
Loan Group's corresponding LTA Interests in the following manner:

(1) Interest. Interest will be distributed with respect to the

corresponding LTA Interest at the rate, or according to the formula,
described
above;

(2) Principal. All principal amounts with respect to Aggregate Loan
Group I will be distributed to the LTA-I Interest and all principal amounts
with respect to Aggregate Loan Group II will be distributed to the LTA-II
Interest .

2

| EX-99.1 | 9th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 9th |

The following table specifies the Class designation, interest rate,
and principal amount for each Class of Lower Tier REMIC B Interest:

[Enlarge/Download
Table]

| Lower Tier REMIC B Interests | Initial Balance | Pass-Through Aggregate Rate | Corresponding Loan Group | Corresponding Group |
|---|---|---|---|---|
| LTB-1..................... | (1) | (2) | 1 | I |
| LTB-A-2 ................... | (3) | (2) | 2 | II |
| LTB-B-2 ................... | (3) | (2) | 2 | II |
| LTB-C-2 ................... | (3) | (2) | 2 | II |
| LTB-A-3 ................... | (3) | (2) | 3 | II |
| LTB-B-3 ................... | (3) | (2) | 3 | II |
| LTB-C-3 ................... | (3) | (2) | 3 | II |
| LTB-A-R................... | (4) | (4) | N/A | N/A |

(1)     This Class of Lower Tier REMIC B Interest will have an intial
Principal Balance equal to the initial principal balance of the
mortgages in the Corresponding Loan Group.

(2)     A Rate equal to the weighted average of the Adjusted Net Mortgage
Rates of the Mortgage Loans of the Corresponding Loan Group.

(3)     With respect to these Interests, each Lower Tier REMIC B Interest
having an "A" designation (each, an "LTB-A Interest") will have a
principal balance initially equal to 0.9% of the Subordinate Portion
("SP") of its Corresponding Loan Group. Each Lower Tier REMIC B
Interest having a "B" designation (each, an "LTB-B Interest") will

have a principal balance initially equal to 0.1% of the SP of its
Corresponding Loan Group. The initial principal balance of each Lower
Tier REMIC B Interest having an "C" designation (each, an "LTB-C
Interest") will equal the excess of its Corresponding Loan Group over
the initial aggregate principal balances of the LTB-A and LTB-B
Interests corresponding to such Loan Group.

(4)    This Lower Tier REMIC B Interest is the sole class of residual
interest in Lower Tier REMIC B. It has no principal balance and
pays no principal or interest.

On each Distribution Date, the Available Funds for Aggregate Loan
Group I will be distributed with respect to the corresponding Aggregate Group
I Interests in the following manner:

(1) Interest. Interest will be distributed with respect to the LTB-1
Interest at the rate, or according to the formula, described above;

3

| EX-99.1 | 10th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 10th |

(2) Principal. All principal amounts with respect to Loan Group 1
will be distributed to the LTB-1 Interest.

On each Distribution Date, the Available Funds for Aggregate Loan
Group II will be distributed with respect to the corresponding Aggregate
Group
II Interests in the following manner:

(1) Interest. Interest will be distributed with respect to each
Aggregate Group II Interest at the rate, or according to the formulas,
described above;

(2) Principal, if no Cross-Over Situation Exists. If no Cross-Over
Situation exists with respect to any Class of Aggregate Group II Interests,
Principal Amounts arising with respect to each of Loan Group 2 and Loan Group
3 will be allocated: first to cause the Loan Group's corresponding LTB-A and
LTB-B Interests to equal 0.9% of the SP and 0.1% of the Corresponding Loan
Group, and then to the corresponding LTB-C Interest.

(3) Principal if a Cross-Over Situation Exists. If a Cross-Over
Situation exists with respect to the Class A and Class B Aggregate Group II
Interests of a Loan Group, then:

(a) If the Calculation Rate in respect of the outstanding Class A and
Class B Interests of a Loan Group is less than the Subordinate
Pass-Through Rate for Aggregate Loan Group II, then Principal
Relocation Payments will be made proportionately to the outstanding
Class A Interests prior to any other principal distributions from the
Loan Group.

(b) If the Calculation Rate in respect of the outstanding Class A and
Class B Interests of a Loan Group is greater than the Subordinate
Pass-Through Rate for Aggregate Loan Group II, then Principal
Relocation Payments will be made to the outstanding Class B Interests

prior to any other principal distributions from the Loan Group.

In each case, Principal Relocation Payments will be made so as to cause the Calculation Rate in respect of the outstanding Class A and Class B Interests to equal the Subordinate Pass-Through Rate for Aggregate Loan Group II. With respect to each Corresponding Loan Group, if (and to the extent that) the sum of (a) the principal payments comprising the Principal Amount received during the Due Period and (b) the Realized Losses, are insufficient to make the necessary reductions of principal on the Class A and Class B Interests, then interest will be added to the Loan Group's Class C Interest..

(c) The outstanding aggregate Class A and Class B Interests for all Corresponding Loan Groups in Aggregate Loan Group II will not be reduced below 1% of the excess of (i) the aggregate outstanding Stated Principal Balances of the Mortgage Loans in Aggregate Loan Group II as of the end of any Due Period over (ii) the aggregate Class Certificate Balance of the Group II Senior Certificates as of the related Distribution Date (after taking into account distributions of principal on such Distribution Date).

If (and to the extent that) the limitation in paragraph (c) prevents the distribution of principal to the corresponding Class A and Class B Interests of a Loan Group, and if the Loan Group's Class E Interest has already been reduced to zero, then the excess principal from that Loan Group will be paid to the Class E Interests of the other corresponding Loan Groups in Aggregate Loan

4

Group II, the aggregate Class A and Class B Interests of which are less than 1% of the Subordinated Portion of such Loan Groups. If the Loan Group Corresponding to the Class E Interest that receives such payment has a Weighted Average Adjusted Net Mortgage Rate below the Weighted Average Adjusted Net Mortgage Rate of the Loan Group making the payment, then the payment will be treated by the Lower Tier REMIC B as a Realized Loss. Conversely, if a Loan Group corresponding to the Class E Interest that receives such payment has a Weighted Average Adjusted Net Mortgage Rate above the Weighted Average Adjusted Net Mortgage Rate of the Loan Group making the payment, then the payment will be treated by the Lower Tier REMIC B as a reimbursement for prior Realized Losses.

The following table set forth characteristics of the Interests in the Middle Tier REMIC (the *"Middle Tier REMIC Interests"*):

The following table specifies the Class designation, interest rate, and principal amount for each Class of Middle Tier REMIC Interests:

[Enlarge/Download Table]

--------------------------------------------------------------------------
------------

| Middle Tier REMIC Interest | Initial Principal Balance | Interest Rate | Corresponding Master REMIC Certificate |
|---|---|---|---|
| MT-1-A-1 | $410,596,000.00 | (1) | Class 1-A-1, Class 1-X (2) |
| MT-1-A-2 | $30,677,000.00 | (1) | Class 1-A-2, Class 1-X (2) |
| MT-2-A-1 | (3) | (4) | Class 2-A-1 |
| MT-2-A-2 | (3) | (4) | Class 2-A-2 |
| MT-2-X-Accrual | (3) | (4) | N/A |
| MT-3-A-1 | (5) | (6) | Class 3-A-1 |
| MT-3-A-2 | (5) | (6) | Class 3-A-2 |
| MT-3-A-3 | $15,479,000.00 | (6) | Class 3-A-3 |
| MT-3-X-Accrual | (5) | (6) | N/A |
| MT-$100 | $100.00 | (1) | Class A-R |
| MT-I-M-1 | $10,855,000.00 | (1) | Class I-M-1, Class 1-X (2) |
| MT-I-B-1 | $6,843,000.00 | (1) | Class I-B-1, Class 1-X (2) |
| MT-I-B-2 | $4,956,000.00 | (1) | Class I-B-2, Class 1-X (2) |
| MT-I-B-3 | $3,775,000.00 | (1) | Class I-B-3 |
| MT-I-B-4 | $2,360,000.00 | (1) | Class I-B-4 |
| MT-I-B-5 | $1,888,326.00 | (1) | Class I-B-5 |
| MT-II-M-1 | (7) | (8) | Class II-M-1 |
| MT-II-B-1 | (7) | (8) | Class II-B-1 |

| | | | |
|---|---|---|---|
| MT-II-B-2 | (7) | (8) | Class II-B- |
| | 2 | | |
| MT-II-B-3 | $11,492,000.00 | (8) | Class II-B- |
| | 3 | | |
| MT-II-B-4 | $4,925,000.00 | (8) | Class II-B- |
| | 4 | | |

5

| EX-99.1 | 12th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 12th |
|---|---|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| MT-II-B-5 | $3,283,587.00 | (8) | Class II-B- |
| | 5 | | |
| MT-M-X-Accrual | (6) | (8) | N/A |
| **MT-A-R** | **(9)** | **(9)** | **N/A** |

(1)     The interest rate with respect to any Distribution Date (and the related Interest Accrual Period) for this Middle Tier REMIC Interest is a per annum rate equal to the Weighted Average Adjusted Net Mortgage Rate of Loan Group 1 (the *"Group 1 Net Rate Cap"*).

(2)     For each Distribution Date, the Class 1-X Certificates are entitled to a portion of the interest payable on this Class of Middle Tier REMIC Interest. Specifically, for each Distribution Date, the Class 1-X Certificates are entitled to the interest payable on this Class of Middle Tier REMIC Interest at a per annum rate equal to the excess of the Group 1 Net Rate Cap over the rate of interest payable on the corresponding Master REMIC Certificate (other than the Class 1-X Certificate).

(3)     This Middle Tier REMIC Interest has a principal balance that is initially equal to 50% of its Corresponding Certificate Class issued by the Master REMIC. Principal payments, both scheduled and prepaid, Realized Losses, Subsequent Recoveries and interest accruing on the MT-2-X-Accrual Interest will be allocated to this class to maintain its size relative to its Corresponding Certificate Class (that is, 50%) with any excess payments of principal, Realized Losses and Subsequent Recoveries being allocated to the MT-2-X-Accrual Interest in such manner as to cause the principal balance of the MT-2-X Accrual Interest to have a principal balance equal to the principal balance of the Class MT-2-A-1 and Class MT-1-A-2 Interests (the *"MT-2-A Interests"* and together with the MT-1-X Accrual Interest, the *"MT-2 Interests"*) plus (b) 100% of the net deferred interest allocated to the Class 2-X Certificates.

(4)     The interest rate with respect to any Distribution Date (and the related Interest Accrual Period) for this Middle Tier REMIC Interest is a per annum rate equal to the Weighted Average Adjusted Net Mortgage Rate of Loan Group 2 (the *"Group 2 Net Rate Cap"*).

(5)     This Middle Tier REMIC Interest has a principal balance that is initially equal to 50% of its Corresponding Certificate Class issued by the Master REMIC. Principal payments, both scheduled and prepaid, Realized Losses, Subsequent Recoveries and interest accruing on the MT-3-X-Accrual Interest will be allocated to this class to maintain its size relative to its Corresponding Certificate Class (that is, 50%) with any excess payments of principal, Realized Losses and Subsequent Recoveries being allocated to the MT-3-X-Accrual Interest in such manner as to cause the principal balance of the MT-3-X Accrual Interest to have a principal balance equal to the principal balance of the Class MT-3-A-1 and Class MT-3-A-2 Interests (the *"MT-3-A Interests"* and together with the MT-3-X Accrual Interest, the *"MT-3 Interests"*) plus (b) 100% of the net deferred interest allocated to the Class 3-X Certificates.

(6)     The interest rate with respect to any Distribution Date (and the related Interest Accrual Period) for this Middle Tier REMIC Interest is a per annum rate equal to the Weighted Average Adjusted Net Mortgage Rate of Loan Group 3 (the *"Group 3 Net Rate Cap"*).

6

(7)     This Middle Tier REMIC Interest has a principal balance that is initially equal to 50% of its Corresponding Certificate Class issued by the Master REMIC. Principal payments, both scheduled and prepaid, Realized Losses, Subsequent Recoveries and interest accruing on the MT-M-X-Accrual Interest will be allocated to this class to maintain its size relative to its Corresponding Certificate Class (that is, 50%) with any excess payments of principal, Realized Losses and Subsequent Recoveries being allocated to the MT-M-X-Accrual Interest in such manner as to cause the principal balance of the MT-M-X Accrual Interest to have a principal balance equal to the principal balance of the Class MT-II-M-1, MT-II-B-1 and Class MT-II-B-2 Interests (the *"MT-II Interests"* and together with the MT-M-X Accrual Interest, the *"MT-II-X Interests"*) plus (b) 100% of the net deferred interest allocated to the Class II-X Certificates.

(8)     The interest rate with respect to any Distribution Date (and the related Interest Accrual Period) for this Middle Tier REMIC Interest is a per annum rate equal to the Subordinate Pass-Through Rate for Aggregate Loan Group II.

(9)     The MT-A-R is the sole Class of residual interest in the Middle Tier REMIC.  It pays no interest or principal.

On each Distribution Date, the Available Funds payable with respect

to the Lower Tier REMIC B Interest (other than the Class LTB-A-R Interest) shall be distributed with respect to the Middle Tier REMIC Interests in the following manner:

(1) Interest is to be distributed with respect to each Middle Tier REMIC Interest at the rate, or according to the formulas, described above; and

(2) Principal is to be distributed with respect to each Middle Tier REMIC Interest in the manner described above.

On each Distribution Date, Realized Losses (and increases in Principal Balances attributable to Subsequent Recoveries) shall be allocated among the Middle Tier REMIC Interests in the manner described above..

The following table sets forth characteristics of the Certificates, together with minimum denominations and integral multiples in excess thereof in which such Classes shall be issued (except that one Certificate of each Class of Certificates may be issuable in a different amount and, in addition, one Residual Certificate representing the Tax Matters Person Certificate may be issued in a different amount for each class of REMIC Interest):

7

| EX-99.1 | 14th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 14th |

[Enlarge/Download Table]

| Class Designation | Certificate Balance | Integral Initial Class Multiples in Excess of Minimum | Pass-Through Rate (per annum) (1) | Minimum Denomination | in |
|---|---|---|---|---|---|
| Class 1-A-1 | $410,596,000.00 $1,000.00 | | (2) | $25,000.00 | |
| Class 1-A-2 | $30,677,000.00 $1,000.00 | | (2) | $25,000.00 | |
| Class 1-X | (3) $1,000.00(21) | | (4) | $25,000.00(21) | |
| Class A-R | $100.00 (6) | | (5) | (6) | |
| Class 2-A-1 | $382,964,000.00 $1,000.00 | | (7) | $25,000.00 | |
| Class 2-A-2 | $164,127,000.00 $1,000.00 | | (7) | $25,000.00 | |

| | | | |
|---|---|---|---|
| Class 2-X | (8) | (9) | $25,000.00(18) |
| | $1,000.00(21) | | |
| Class 3-A-1 | $25,000,000.00 | (10) | $25,000.00 |
| | $1,000.00 | | |
| Class 3-A-2 | $170,060,000.00 | (11) | $25,000.00 |
| | $1,000.00 | | |
| Class 3-A-3 | $15,479,000.00 | (12) | $25,000.00 |
| | $1,000.00 | | |
| Class 3-X | (13) | (14) | $25,000.00(21) |
| | $1,000.00(21) | | |
| Class I-M-1 | $10,855,000.00 | (15) | $25,000.00 |
| | $1,000.00 | | |
| Class I-B-1 | $6,843,000.00 | (15) | $25,000.00 |
| | $1,000.00 | | |
| Class I-B-2 | $4,956,000.00 | (15) | $25,000.00 |
| | $1,000.00 | | |
| Class I-B-3 | $3,775,000.00 | (16) | $100,000.00 |
| | $1,000.00 | | |
| Class I-B-4 | $2,360,000.00 | (16) | $100,000.00 |
| | $1,000.00 | | |
| Class I-B-5 | $1,888,326.00 | (16) | $100,000.00 |
| | $1,000.00 | | |
| Class II-X | (17) | (18) | $25,000.00(18) |
| | $1,000.00(18) | | |
| Class II-M-1 | $18,058,000.00 | (19) | $25,000.00 |
| | $1,000.00 | | |
| Class II-B-1 | $14,365,000.00 | (19) | $25,000.00 |
| | $1,000.00 | | |
| Class II-B-2 | $11,081,000.00 | (19) | $25,000.00 |
| | $1,000.00 | | |
| Class II-B-3 | $11,492,000.00 | (20) | $100,000.00 |
| | $1,000.00 | | |
| Class II-B-4 | $4,925,000.00 | (20) | $100,000.00 |
| | $1,000.00 | | |
| Class II-B-5 | $3,283,587.00 | (20) | $100,000.00 |
| | $1,000.00 | | |

------------------------------------------

(1)     For income tax purposes, the entitlement of any Certificate to any Corridor Contract payment and Carryover Shortfall Amount shall be treated as described in Section 8.11. hereof.

(2)     The Pass-Through Rates for the Class 1-A-1 and Class 1-A-2 Certificates for the Interest Accrual Period related to each Distribution Date will be the least of (x) LIBOR plus the applicable Pass-Through Margin, (y) the related Net WAC Cap and (z) the related Maximum Rate. The Pass-Through Rates for the Class 1-A-1 and Class 1-A-2

8

| EX-99.1 | 15th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 15th |

Certificates for the Interest Accrual Period related to the first Distribution Date are 2.82% and 2.95%, respectively.

(3)     The Class 1-X Certificates will be Notional Amount Certificates, will have no Class Certificate Balance and will bear interest on its Notional Amount (initially, $463,927,000.00).

(4)     The Pass-Through Rate for the Class 1-X Certificates for the Interest Accrual Period related to each Distribution Date will be a per annum rate equal to the excess, if any, of (i) the Weighted Average Adjusted Net Mortgage Rate of the Group 1 Mortgage Loans over (ii) the weighted average of the Pass-Through Rates of the Class 1-A-1, Class 1-A-2, Class I-M-1, Class I-B-1 and I-B-2 Certificates for that interest accrual period (which in the case of the first Interest Accrual Period will be calculated assuming an Interest Accrual Period that begins on the Closing Date. The Pass-Through Rate for the Class 1-X Certificates for the Interest Accrual Period related to the first Distribution Date is 1.10403% per annum.

(5)     The Pass-Through Rate for the Class A-R Certificate for each Interest Accrual Period for any Distribution Date will be a per annum rate equal to the Weighted Average Adjusted Net Mortgage Rate of the Group 1 Mortgage Loans. The Pass-Through Rate for the Class A-R Certificates for the Interest Accrual Period related to the first Distribution Date is 3.86397% per annum.

(6)     The Class A-R Certificate will be issued as two separate certificates, one with an initial Certificate Balance of $99.99 and the Tax Matters

Person Certificate with an initial Certificate Balance of $0.01.

(7)    The Pass-Through Rates for the Class 2-A-1 and Class 2-A-2 Certificates for the Interest Accrual Period related to each Distribution Date will be the least of (x) LIBOR plus the applicable Pass-Through Margin, (y) the related Net WAC Cap and (z) the related Maximum Margin. The Pass-Through Rates for the Class 2-A-1 and Class 2-A-2 Certificates for the Interest Accrual Period related to the first Distribution Date are 2.86% and 2.91%, respectively.

(8)    The Class 2-X Certificates initially will have no Class Certificate Balance and will bear interest on the Component Notional Amount of the Class 2-X IO Component (initially $547,091,000.00).

(9)    Interest will accrue with respect to the Class 2-X Certificates for each Interest Accrual Period related to each Distribution Date in an amount equal to the sum of the interest accrued on the Class 2-X IO Component (based upon the Component Notional Amount) and the Class 2-X P Component (based upon the Component Principal Balance) at its respective Pass-Through Rate for that Distribution Date. For income tax purposes, the Class 2-X Certificates are entitled to, for each Interest Accrual Period, the *"Class 2-X Distributable Amount,"* which is a specified portion of the interest on the MT-2 Interests equal to the excess of the Loan Group 2 Net Rate Cap over the product of two and the

9

| EX-99.1 | 16th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 16th |
|---------|------------------|-----|-----|----------|------|---------|-----------|

weighted average interest rate of the MT-2 Interests with each Interest (other than the Class 2-X-Accrual Interest) subject to a cap equal to the Pass-Through Rate of the corresponding Certificate Class and the 2-X-Accrual Interest subject to a cap of 0.00%. The Pass-Through Rate of the Class 2-X Certificates shall be a rate sufficient to entitle the Class 2-X Certificate to all interest accrued on the MT-2 Interests less the interest accrued on the Class 2-A Certificates. The Class 2-X Distributable Amount for any Distribution Date is payable from current interest on the Group 2 Mortgage Loans.

(10)    The Pass-Through Rate for the Class 3-A-1 Certificates for (x) the interest accrual period for the February 2005 Distribution Date will be

a per annum rate equal to the Weighted Average Adjusted Net Mortgage
Rate of the group 3 mortgage loans and (y) each interest accrual
period
for any Distribution Date thereafter will be a per annum rate equal
to
the Weighted Average Adjusted Net Mortgage Rate of the Group 3
Mortgage
Loans over 0.468%. The Pass-Through Rate for the Class 3-A-1
Certificates for the interest accrual period related to the initial
Distribution Date is expected to be approximately 1.40668% per
annum..

(11)    The Pass-Through Rate for the Class 3-A-2 Certificates for (x) the
interest accrual period for the February 2005 Distribution Date will
be
a per annum rate equal to the Weighted Average Adjusted Net Mortgage
Rate of the group 3 mortgage loans and (y) each interest accrual
period
for any Distribution Date thereafter will be a per annum rate equal
to
the Weighted Average Adjusted Net Mortgage Rate of the Group 3
Mortgage
Loans over 0.903%. The Pass-Through Rate for the Class 3-A-2
Certificates for the interest accrual period related to the initial
Distribution Date is expected to be approximately 1.40668% per annum.

(12)    The Pass-Through Rate for the Class 3-A-3 Certificates for the
interest
accrual period related to each Distribution Date will be a per annum
rate equal to the Weighted Average Adjusted Net Mortgage Rate of the
Group 3 Mortgage Loans. The Pass-Through rate for the Class 3-A-3
Certificates for the interest accrual period related to the initial
Distribution Date is expected to be approximately 1.40668% per annum.

(13)    The Class 3-X Certificates initially will have no Class Certificate
Balance and will bear interest on the Component Notional Amount of
the
Class 3-X IO Component (initially $195,060,000.00).

(14)    Interest will accrue with respect to the Class 3-X Certificates for
each Interest Accrual Period related to each Distribution Date in an
amount equal to the sum of the interest accrued on the Class 3-X IO
Component (based upon the Component Notional Amount) and the Class 3-
X
P Component (based upon the Component Principal Balance) at its
respective Pass-Through Rate for that Distribution Date. For income
tax
purposes, the Class 3-X Certificates are entitled to, for each
Interest
Accrual Period, the *"Class 3-X Distributable Amount,"* which is a
specified portion of the interest on the MT-3 Interests equal to the
excess of the Loan Group 3 Net Rate Cap over the product of two and
the
weighted average interest rate of the MT-3 Interests with each
Interest
(other than the Class 3-X-Accrual Interest) subject to a cap equal to
the Pass-Through Rate of the corresponding Certificate Class and the

3-X-Accrual Interest subject to a cap of 0.00%.

10

The Pass-Through Rate of the Class 3-X Certificates shall be a rate sufficient to entitle the Class 3-X Certificate to all interest accrued on the MT-3 Interests less the interest accrued on the Class 3-A-1 and Class 3-A-2 Certificates. The Class 3-X Distributable Amount for any Distribution Date is payable from current interest on the Group 3 Mortgage Loans.

(15)     The Pass-Through Rates for the Class I-M-1, Class I-B-1 and Class I-B-2 Certificates for the Interest Accrual Period related to each Distribution Date will be the least of (x) LIBOR plus the applicable Pass-Through Margin, (y) the related Net WAC Cap and (z) the related Maximum Rate. The Pass-Through Rates for the Class I-M-1, Class I-B-1 and Class I-B-2 Certificates for the Interest Accrual Period related to the first Distribution Date are 3.05%, 3.40% and 4.05% per annum, respectively.

(16)     The Pass-Through Rate for the Class I-B-3, Class I-B-4 and Class I-B-5 Certificates for each Interest Accrual Period for any Distribution Date will be a per annum rate equal to the Weighted Average Adjusted Net Mortgage Rate of the group 1 mortgage loans. The Pass-Through Rate for each of these Classes of Certificates for the Interest Accrual Period for the first Distribution Date is 3.86397% per annum.

(17)     The II-X Certificates initially will have no Class Certificate Balance and will bear interest on the Component Notional Amount of the Class II-X IO Component (initially $43,504,000.00).

(18)     Interest will accrue with respect to the Class II-X Certificates for each Interest Accrual Period related to each Distribution Date in an amount equal to the sum of the interest accrued on the Class II-X IO Component (based upon the Component Notional Amount) and the Class II-X P Component (based upon the Component Principal Balance) at its respective Pass-Through Rate for that Distribution Date. For income tax purposes, the Class II-X Certificates are entitled to, for each Interest Accrual Period, the *"Class II-X Distributable Amount,"* which is a specified portion of the interest on the MT-II-X Interests equal to the excess of the Adjusted Subordinate Net Rate Cap over the product of two and the weighted average interest rate of the MT-II-X Interests with each Interest (other than the Class M-II-X-Accrual Interest) subject to a cap equal to the Pass-Through Rate of the corresponding Certificate Class and the M-II-X-Accrual Interest subject to a cap of 0.00%. The Pass-Through Rate of the Class M-II-X Certificates shall be a rate sufficient to entitle the Class M-II-X Certificate to all interest accrued on the MT-II-X Interests less the interest accrued on the Class II-M-1 and Class II-B-1 and Class II-B-

2

Certificates. The Class II-X Distributable Amount for any
Distribution
Date is payable from current interest on the Mortgage Loans in Group
2
and Group 3.

(19)    The Pass-Through Rates for the Class II-M-1, Class II-B-1 and Class
II-B-2 Certificates for the Interest Accrual Period related to each
Distribution Date will be the least of (x) LIBOR plus the applicable
Pass-Through Margin, (y) the related Net WAC Cap and (z) the related
Maximum Rate. The Pass-Through Rates for the Class I-M-1, Class I-B-1
and Class I-B-2 Certificates for the Interest Accrual Period related
to the first Distribution Date are 3.15%, 3.55% and 4.35%,
respectively.

11

| EX-99.1 | 18th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 18th |
|---|---|---|---|---|---|---|---|

(20)    The Pass-Through Rate for the Class II-B-3, Class II-B-4 and Class
II-B-5 Certificates for each Interest Accrual Period for any
Distribution Date will be a per annum rate equal to the Aggregate
Group II Weighted Average Rate. The Pass-Through Rate for each of
these Classes of Certificates for the Interest Accrual Period for the
first Distribution Date is 1.18962% per annum.

(21)    Denomination is based on Notional Amount.

12

| EX-99.1 | 19th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 19th |
|---|---|---|---|---|---|---|---|

Set forth below are designations of Classes or Components of
Certificates and other defined terms to the categories used in this
Agreement:

Accretion Directed
Certificates........................    None.

Accretion Directed Components.......    None.

Accrual Certificates...............    None.

Accrual Components.................    None.

Book-Entry Certificates.............    All Classes of Certificates other
than
the Physical Certificates.

COFI Certificates..................    None.

Combined Certificates..............    None.

Component Certificates.............    Class 2-X, Class 3-X and Class II-X
Certificates.

Components........................ The Class 2-X Certificates are comprised of the Class 2-X IO Component and the Class 2-X P Component.  The Class 3-X Certificates are comprised of the Class 3-X IO Component and the Class 3-X P Component.  The Class II-X Certificates are comprised of the Class II-X IO Component and the Class II-X P Component.  Each Component will have the Initial Component Principal Balance or Component Notional Amount, as applicable, and Pass-Through Rate set forth below:

[Download Table]

| Designation | Pass-Through Rate | Initial Component Principal Balance | Initial Component Notional Amount |
| --- | --- | --- | --- |
| Class 2-X IO Component | (1) | N/A | $547,091,000 |
| Class 2-X P Component | (2) | $0 | N/A |
| Class 3-X IO Component | (3) | N/A | $195,060,000 |
| Class 3-X P Component | (4) | $0 | N/A |
| Class II-X IO Component | (5) | N/A | $43,504,000 |
| Class II-X P Component | (6) | $0 | N/A |

--------------------

(1) For the Interest Accrual Period related to each Distribution Date, a per annum rate equal to the excess, if any, of (i) the Weighted Average Adjusted Net Mortgage Rate of the Mortgage Loans in Loan Group 2 over (ii) the weighted average of the Pass-Through Rates of the Class 2-A-1 and Class 2-A-2 Certificates

(as adjusted to reflect the accrual
of interest on the basis of a
360-day year consisting of twelve
30-day months) for their
corresponding Interest Accrual
Period (which in the

13

| EX-99.1 | 20th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 20th |

case of the first Interest Accrual
Period will be calculated assuming an
Interest Accrual Period that begins on
the Closing Date). The Pass-Through
Rate for the Class 2-X IO Component
for the Interest Accrual Period
related
to the first Distribution Date is
0.00000% per annum.

(2) For the Interest Accrual Period
related to each Distribution Date, a
per annum rate equal to the Weighted
Average Adjusted Net Mortgage Rate
of the Mortgage Loans in Loan Group
2. The Pass-Through Rate for the
Class 2-X P Component for the
Interest Accrual Period related to
the first Distribution Date is
1.10609% per annum.

(3) The Pass-Through Rate for the
Class 3-X IO Component for the
Interest Accrual Period related to
the first Distribution Date is 0%
per annum. The Pass-Through Rate for
the Class 3-X IO Component for the
Interest Accrual Period for any
Distribution Date thereafter will be
a per annum rate equal to the
weighted average of 0.468% and
0.903%, weighted on the basis of the
Class Certificate Balances of the
Class 3-A-1 and Class 3-A-2
Certificates, respectively,
immediately prior to such
Distribution Date.

(4) For the Interest Accrual Period
related to each Distribution Date, a
per annum rate equal to the Weighted
Average Adjusted Net Mortgage Rate
of the Mortgage Loans in Loan Group
3. The Pass-Through Rate for the
Class 3-X P Component for the

Interest Accrual Period related to the first Distribution Date is 1.18962% per annum.

(5) For the Interest Accrual Period related to each Distribution Date, a per annum rate equal to the excess, if any, of (i) the Aggregate Group II Weighted Average Rate over (ii) the weighted average of the Pass-Through Rates of the Class II-M-1, Class II-B-1 and Class II-B-2 Certificates (as adjusted to reflect the accrual of interest on the basis of a 360-day year consisting of twelve 30-day months) for their corresponding Interest Accrual Period (which in the case of the first Interest Accrual Period will be calculated assuming an Interest Accrual Period that begins on the Closing Date). The Pass-Through Rate for the Class II-X IO Component for the Interest Accrual Period related to the first Distribution Date is 0.00000% per annum.

(6) For the Interest Accrual Period related to each Distribution Date, a per annum rate equal to the Aggregate Group II Weighted Average Rate (as adjusted to reflect the accrual of interest on the basis of a 360-day year consisting of twelve 30-day months).

Delay Certificates.................    All interest-bearing Classes of Certificates other than the Non-Delay Certificates, if any.

ERISA-Restricted Certificates.......................    The Residual Certificates and Private Certificates; any Certificate of a Class that does not or no longer satisfies the applicable rating requirement under the Underwriter's Exemption.

Group 1 Senior Certificates........    Class 1-A-1, Class 1-A-2, Class 1-X and Class A-R Certificates.

14

Group 1 Certificates................    Group 1 Senior Certificates and the Subordinated Portion related to Loan Group 1.

Group 2 Senior Certificates.........    Class 2-A-1, Class 2-A-2 and Class 2-X Certificates.

Group 2 Certificates................    Group 2 Senior Certificates and the Subordinated Portion related to Loan Group 2.

Group 3 Senior Certificates.........    Class 3-A-1, Class 3-A-2, Class 3-A-3 and Class 3-X Certificates.

Group 3 Certificates................    Group 3 Senior Certificates and the Subordinated Portion related to Loan Group 3.

Group I Senior Certificates.........    Group 1 Senior Certificates.

Group I Subordinated Certificates...........    Class I-M-1, Class I-B-1, Class I-B-2, Class I-B-3, Class I-B-4 and Class I-B-5 Certificates.

Group I Certificates................    Group I Senior Certificates and Group I Subordinated Certificates.

Group II Senior Certificates.................    Group 2 Senior Certificates and Group 3 Senior Certificates.

Group II Subordinated Certificates...........    Class II-X, Class II-M-1, Class II-B-1, Class II-B-2, Class II-B-3, Class II-B-4 and Class II-B-5 Certificates.

Group II Certificates...............    Group II Senior Certificates and Group II Subordinated Certificates.

LIBOR Certificates..................    Class 1-A-1, Class 1-A-2, Class I-M-1, Class I-B-1, Class 2-A-1, Class 2-A-2, Class II-M-1, Class II-B-1, Class II-M-2 and Class II-B-2 Certificates.

Non-Delay Certificates..............    LIBOR Certificates.

Notional Amount Certificates.......................    Class 1-X, Class 2-X, Class 3-X and Class II-X Certificates.

Notional Amount Components..........................    Class 2-X IO, Class 3-X IO and Class

II-X IO Components.

15

| EX-99.1 | 22nd Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 22nd |

Offered Certificates................    All Classes of Certificates other than
                                        the Private Certificates.

Physical Certificates..............    Private Certificates and the Residual
                                        Certificates.

            Planned Principal Classes..........    None.

                        Planned Principal
                Components..........................    None.

                        Principal and Interest
        Components..........................    Class 2-X P, Class 3-X P and Class
                                        II-X P Components.

            Principal Only Certificates........    None.

Private Certificates...............    Class I-B-3, Class I-B-4, Class I-B-5,
                                        Class II-B-3, Class II-B-4 and Class
                                        II-B-5 Certificates.

            Rating Agencies.....................    S&P and Moody's.

    Regular Certificates...............    All Classes of Certificates, other
                                        than the Residual Certificates.

        Residual Certificates..............    Class A-R Certificates.

Senior Certificate Group...........    Group 1 Senior Certificates, Group 2
                                        Senior Certificates and Group 3
                                        Senior Certificates, as applicable.

Senior Certificates...............    Class 1-A-1, Class 1-A-2, Class 1-X,
                                        Class 2-A-1, Class 2-A-2, Class 2-X,
                                        Class 3-A-1, Class 3-A-2, Class 3-A-3,
                                        Class 3-X and Class A-R Certificates.

Subordinated Certificates ..........    Class I-M-1, Class I-B-1, Class I-B-2,
                                        Class I-B-3, Class I-B-4, Class I-B-5,
                                        Class II-X, Class II-M-1, Class II-B-1,
                                        Class II-B-2, Class II-B-3, Class
                                        II-B-4 and Class II-B-5 Certificates.

            Targeted Principal Classes.........    None.

        Underwriter........................    Banc of America Securities LLC.

With respect to any of the foregoing designations as to which the
corresponding reference is *"None,"* all defined terms and provisions in this
Agreement relating solely to such designations shall be of no force or
effect,
and any calculations in this Agreement incorporating references to such
designations shall be interpreted without reference to such designations and
amounts. Defined terms and provisions in this Agreement relating to
statistical rating agencies not designated above as Rating Agencies shall be
of no force or effect.

16

| EX-99.1 | 23rd Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 23rd |

### ARTICLE I
### DEFINITIONS

Whenever used in this Agreement, the following words and phrases, unless the
context otherwise requires, shall have the following meanings:

Accretion Directed Certificates: As specified in the Preliminary
Statement.

Accretion Direction Rule: Not applicable.

Accrual Amount: Not applicable.

Accrual Certificates: As specified in the Preliminary Statement.

Accrual Components: As specified in the Preliminary Statement.

Accrual Termination Date: Not applicable.

Adjusted Mortgage Rate: As to each Mortgage Loan, and at any time,
the per annum rate equal to the Mortgage Rate less the Master Servicing Fee
Rate.

Adjusted Net Mortgage Rate: As to each Mortgage Loan, and at any
time, the per annum rate equal to the Mortgage Rate less the Expense Fee
Rate.

Adjustment Date: A date specified in each Mortgage Note as a date on
which the Mortgage Rate on the related Mortgage Loan will be adjusted.

Adjusted Rate Cap: Not applicable.

Advance: As to a Loan Group, the payment required to be made by the
Master Servicer with respect to any Distribution Date pursuant to Section
4.01, the amount of any such payment being equal to the aggregate of payments
of principal and interest (net of the Master Servicing Fee) on the Mortgage
Loans in such Loan Group that were due on the related Due Date and not
received by the Master Servicer as of the close of business on the related
Determination Date, together with an amount equivalent to interest on each
Mortgage Loan as to which the related Mortgaged Property is an REO Property,
net of any net income in the case of such REO Property, less the aggregate

amount of any such delinquent payments that the Master Servicer has determined
would constitute a Nonrecoverable Advance, if advanced.

Aggregate Group II Weighted Average Rate: For each Interest Accrual Period related to each Distribution Date, a per annum rate equal to the sum of the following for each of Loan Group 2 and Loan Group 3: the product of (x) the Weighted Average Adjusted Net Mortgage Rate of the Mortgage Loans in the related Loan Group and (y) a fraction, the numerator of which is the related Subordinated Portion immediately prior to that Distribution Date and the denominator of which is the aggregate Class Certificate Balance of the Group II Subordinated Certificates, in each case immediately prior to that Distribution Date.

17

Aggregate Loan Group: Aggregate Loan Group I or Aggregate Loan Group II, as the context requires.

Aggregate Loan Group I: Loan Group 1.

Aggregate Loan Group II: Collectively, Loan Group 2 and Loan Group 3.

Aggregate Subordinated Percentage: As to any Distribution Date and either Aggregate Loan Group, the fraction, expressed as a percentage, the numerator of which is equal to the aggregate Class Certificate Balance of the related Subordinated Certificates immediately prior to such Distribution Date and the denominator of which is the aggregate Stated Principal Balance of all the Mortgage Loans in such Aggregate Loan Group as of the Due Date in the month preceding the month of such Distribution Date (after giving effect to Principal Prepayments received in the Prepayment Period related to that prior Due Date).

**Agreement:** This Pooling and Servicing Agreement and all amendments or supplements to this Pooling and Servicing Agreement.

Allocable Share: As to any Distribution Date, any Loan Group and any Class of Certificates, the ratio that the amount calculated with respect to such Distribution Date (A) with respect to either of the Group I Certificates or Group II Senior Certificates, pursuant to clause (i) of the definition of Class Optimal Interest Distribution Amount (without giving effect to any reduction of such amount pursuant to Section 4.02(d)) and (B) with respect to the Group II Subordinated Certificates, pursuant to the definition of Assumed Interest Amount for such Class or after a Senior Termination Date, with respect to the Group II Senior Certificates pursuant to clause (i) of the definition of Class Optimal Interest Distribution Amount (without giving effect to any reduction of such amount pursuant to Section 4.02(d)) bears to the aggregate amount calculated with respect to such Distribution Date for each such related Class of Certificates pursuant to clause (i) of the definition of Class Optimal Interest Distribution Amount (without giving effect to any reduction of such amounts pursuant to Section 4.02(d)) or the definition of Assumed Interest Amount for such Loan Group and Class, as applicable.

Amount Held for Future Distribution: As to any Distribution Date and
Mortgage Loans in a Loan Group, the aggregate amount held in the Certificate
Account at the close of business on the related Determination Date on account
of (i) Principal Prepayments received after the related Prepayment Period and
Liquidation Proceeds and Subsequent Recoveries received in the month of such
Distribution Date relating to Mortgage Loans in that Loan Group and (ii) all
Scheduled Payments due after the related Due Date relating to Mortgage Loans
in that Loan Group.

**Applicable Credit Support Percentage:** As defined in Section 4.02(e).

Appraised Value: With respect to a Mortgage Loan other than a
Refinancing Mortgage Loan, the lesser of (a) the value of the Mortgaged
Property based upon the appraisal made at the time of the origination of such
Mortgage Loan and (b) the sales price of the Mortgaged Property at the time
of
the origination of such Mortgage Loan. With respect to a Refinancing Mortgage
Loan other than a Streamlined Documentation Mortgage Loan, the value of the
Mortgaged Property based upon the appraisal made-at the time of the
origination of such Refinancing Mortgage Loan. With respect to a Streamlined
Documentation Mortgage Loan, (a) if the loan-to-

18

| **EX-99.1** | **25th Page of 226** | TOC | 1st | Previous | Next | ↓Bottom | Just 25th |

value ratio with respect to the Original Mortgage Loan at the time of the
origination thereof was 80% or less and the loan amount of the new mortgage
loan is $650,000 or less, the value of the Mortgaged Property based upon the
appraisal made at the time of the origination of the Original Mortgage Loan
and (b) if the loan-to-value ratio with respect to the Original Mortgage Loan
at the time of the origination thereof was greater than 80% or the loan
amount
of the new mortgage loan being originated is greater than $650,000, the value
of the Mortgaged Property based upon the appraisal (which may be a drive-by
appraisal) made at the time of the origination of such Streamlined
Documentation Mortgage Loan.

**Assignment Agreement:** With respect to each Corridor Contract, the
agreement, dated as of the Closing Date, among Banc of America Securities
LLC,
The Bank of New York and Bank of America, N.A., a form of which is attached
hereto as Exhibit S.

Assumed Interest Amount: With respect to any Distribution Date, any
Class of Group II Subordinated Certificates and the related Loan Group, one
month's interest accrued during the related Interest Accrual Period at the
Pass-Through Rate for such Class on the related Subordinated Portion
immediately prior to that Distribution Date.

Available Funds: As to any Distribution Date and each Loan Group, the
sum of (a) the aggregate amount held in the Certificate Account at the close
of business on the related Determination Date in respect of the related
Mortgage Loans pursuant to Section 3.05(b) net of the related Amount Held for
Future Distribution and net of amounts permitted to be withdrawn from the

Certificate Account pursuant to clauses (i) - (viii), inclusive, of Section 3.08(a) in respect of the Mortgage Loans in that Loan Group and amounts permitted to be withdrawn from the Distribution Account pursuant to clauses (i) - (iii), inclusive, of Section 3.08(b) in respect of the Mortgage Loans in that Loan Group, (b) the amount of the related Advance, (c) in connection with Defective Mortgage Loans in such Loan Group, as applicable, the aggregate of the Purchase Prices and Substitution Adjustment Amounts deposited on the related Distribution Account Deposit Date, and (d) the Transfer Payment Received plus interest thereon as provided in Section 4.05 for such Loan Group less the Transfer Payment Made plus interest thereon as provided in Section 4.05 for such Loan Group; provided, however, that with respect to any Loan Group in Aggregate Loan Group II, on a Senior Termination Date, Available Funds with respect to the Loan Group relating to the remaining Senior Certificate Group shall include the Available Funds from the other Loan Group in Aggregate Loan Group II after all distributions are made on the Group II Senior Certificates of the other Senior Certificate Group, and on any Distribution Date thereafter, Available Funds shall be calculated based on all the Mortgage Loans in Aggregate Loan Group II, as opposed to the Mortgage Loans in the related Loan Group.

Bankruptcy Code: Title 11 of the United States Code, as amended.

**Benefit Plan Opinion**: As defined in Section 5.02(b).

Book-Entry Certificates: As specified in the Preliminary Statement.

Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the City of New York, New York, or the States of California or Texas or

19

| EX-99.1 | 26th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 26th |

the city in which the Corporate Trust Office of the Trustee is located are authorized or obligated by law or executive order to be closed.

Calculation Rate: For each Distribution Date, in the case of the Class A and Class B Lower Tier REMIC Interests, the product of (i) 10 and (ii) the weighted average rate of the outstanding Class A and Class B Interests, treating each Class A Interest as capped at zero or reduced by a fixed percentage of 100% of the interest accruing on such Class.

Carryover Shortfall Amount: For any Class of LIBOR Certificates and any Distribution Date, the sum of (a) the excess, if any, of (i) the amount of interest such Class of Certificates would have been entitled to receive on such Distribution Date had the applicable Pass-Through Rate not been subject to the related Net WAC Cap up to the related Maximum Rate, over (ii) the amount of interest such Class of Certificates received on such Distribution Date based on the related Net WAC Cap (in each case, prior to the reduction

for Net Deferred Interest and Net Interest Shortfalls) and (b) with respect to any Class of LIBOR Certificates the unpaid portion of any such excess from prior Distribution Dates (and interest accrued thereon at the then applicable Pass-Through Rate on such Class of Certificates, without giving effect to the related Net WAC Cap up to the related Maximum Rate).

Carryover Shortfall Reserve Fund: The separate fund created and initially maintained by the Trustee pursuant to Section 3.05(g) in the name of the Trustee for the benefit of the Holders of the LIBOR Certificates and the Class X Certificates and designated *"The Bank of New York in trust for registered holders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-7, Mortgage Pass-Through Certificates, Series 2005-7."* Funds in the Carryover Shortfall Reserve Fund shall be held in trust for the Holders of the LIBOR Certificates and the Class 1-X, Class 2-X and Class II-X Certificates for the uses and purposes set forth in this Agreement.

**Certificate**: Any one of the Certificates executed by the Trustee in substantially the forms attached this Agreement as exhibits.

Certificate Account: The separate Eligible Account or Accounts created and maintained by the Master Servicer pursuant to Section 3.05 with a depository institution in the name of the Master Servicer for the benefit of the Trustee on behalf of Certificateholders and designated *"Countrywide Home Loans Servicing LP in trust for the registered holders of CHL Mortgage Pass-Through Trust 2005-7, Mortgage Pass-Through Certificates Series 2005-7."*

**Certificate Balance**: With respect to any Certificate (other than the Notional Amount Certificates or Components) at any date, the maximum dollar amount of principal to which the Holder thereof is then entitled under this Agreement, such amount being equal to the Denomination of that Certificate (A) plus any increase in the Certificate Balance of such Certificate pursuant to Section 4.02 due to the receipt of Subsequent Recoveries, (B) minus the sum of (i) all distributions of principal previously made with respect to that Certificate and (ii) all Realized Losses allocated to that Certificate and, in the case of any Subordinated Certificates, all other reductions in Certificate Balance previously allocated to that Certificate pursuant to Section 4.04 without duplication, and (C) increased by the amount of Net Deferred Interest for the related Loan Group allocated to the applicable Class pursuant to Section 4.03.

20

Certificate Group: The Group 1 Certificates, Group 2 Certificates and Group 3 Certificates as the context requires.

Certificate Owner: With respect to a Book-Entry Certificate, the Person who is the beneficial owner of such Book-Entry Certificate. For the

purposes of this Agreement, in order for a Certificate Owner to enforce any
of
its rights under this Agreement, it shall first have to provide evidence of
its beneficial ownership interest in a Certificate that is reasonably
satisfactory to the Trustee, the Depositor, and/or the Master Servicer, as
applicable.

Certificate Register: The register maintained pursuant to Section
5.02.

Certificateholder or Holder: The person in whose name a Certificate
is registered in the Certificate Register, except that, solely for the
purpose
of giving any consent pursuant to this Agreement, any Certificate registered
in the name of the Depositor or any affiliate of the Depositor shall be
deemed
not to be Outstanding and the Percentage Interest evidenced thereby shall not
be taken into account in determining whether the requisite amount of
Percentage Interests necessary to effect such consent has been obtained;
provided, however, that if any such Person (including the Depositor) owns
100%
of the Percentage Interests evidenced by a Class of Certificates, such
Certificates shall be deemed to be Outstanding for purposes of any provision
of this Agreement (other than the second sentence of Section 10.01) that
requires the consent of the Holders of Certificates of a particular Class as
a
condition to the taking of any action under this Agreement. The Trustee is
entitled to rely conclusively on a certification of the Depositor or any
affiliate of the Depositor in determining which Certificates are registered
in
the name of an affiliate of the Depositor.

Class: All Certificates bearing the same class designation as set
forth in the Preliminary Statement.

Class Certificate Balance: With respect to any Class and as to any
date of determination, the aggregate of the Certificate Balances of all
Certificates of such Class as of such date.

Class Interest Shortfall: As to any Distribution Date and Class, the
amount by which the amount described in clause (i) of the definition of Class
Optimal Interest Distribution Amount for such Class exceeds the amount of
interest actually distributed on such Class on such Distribution Date
pursuant
to such clause (i).

Class LTI-A-R Interest: The sole class of *"residual interest"* in the
Lower Tier REMIC I.

Class LTII-A-R Interest: The sole class of *"residual interest"* in the
Lower Tier REMIC II.

Class MT-A-R Interest: The sole class of *"residual interest"* in the
Middle Tier REMIC.

Class Optimal Interest Distribution Amount: With respect to any
Distribution Date and interest-bearing Class or Component, the sum of (i) one

month's interest accrued during the related Interest Accrual Period at the
Pass-Through Rate for such Class or Component on the related Class
Certificate
Balance, Component Principal Balance, Notional Amount or Component Notional
Amount, as applicable, immediately prior to such Distribution Date, subject

21

| EX-99.1 | 28th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 28th |

to reduction as provided in Section 4.02(d) and (ii) any Class Unpaid
Interest
Amounts for such Class or Component (other than any Carryover Shortfall
Amounts), reduced by any Net Deferred Interest for the related Distribution
Date added to their respective Class Certificate Balances or Component
Principal Balances, as applicable, as described in Section 4.03.

Class Subordination Percentage: With respect to any Distribution Date
and each Class of Group I Subordinated Certificates, the quotient (expressed
as a percentage) of (a) the Class Certificate Balance of such Class of Group
I
Subordinated Certificates immediately prior to such Distribution Date,
divided
by (b) the aggregate of the Class Certificate Balances of all Classes of
Group
I Certificates (other than the related Notional Amount Certificates)
immediately prior to such Distribution Date. With respect to any Distribution
Date and each Class of Group II Subordinated Certificates, the quotient
(expressed as a percentage) of (a) the Class Certificate Balance of such
Class
of Group II Subordinated Certificates immediately prior to such Distribution
Date, divided by (b) the aggregate of the Class Certificate Balances of all
Classes of Group II Certificates (other than the related Notional Amount
Certificates) immediately prior to such Distribution Date.

Class Unpaid Interest Amounts: As to any Distribution Date and Class
of interest-bearing Certificates or any interest-bearing Component, the
amount
by which the aggregate Class Interest Shortfalls for such Class or Component
on prior Distribution Dates exceeds the amount distributed on such Class or
Component on prior Distribution Dates pursuant to clause (ii) of the
definition of Class Optimal Interest Distribution Amount.

Closing Date: January 27, 2005.

Code: The Internal Revenue Code of 1986, including any successor or
amendatory provisions.

COFI: The Monthly Weighted Average Cost of Funds Index for the
Eleventh District Savings Institutions published by the Federal Home Loan
Bank
of San Francisco.

COFI Certificates: As specified in the Preliminary Statement.

Compensating Interest: As to any Distribution Date and Loan Group, an

amount equal to one-half of the Master Servicing Fee for the related Loan Group for the related Due Period.

Component: As specified in the Preliminary Statement.

Component Balance: Not applicable.

Component Certificates: As specified in the Preliminary Statement.

Component Notional Amount: With respect to any Distribution Date and (i) the Class 2-X IO Component, the aggregate Class Certificate Balance of the Class 2-A-1 and Class 2-A-2 Certificates immediately prior to such Distribution Date, (ii) the Class 3-X IO Component, the aggregate Class Certificate Balance of the Class 3-A-1, Class 3-A-2 and Class 3-A-3 Certificates immediately prior to such Distribution Date, and (iii) the Class II-X IO Component, the

22

| **EX-99.1** | **29th Page of 226** | TOC | 1st | Previous | Next | ↓Bottom | Just 29th |

aggregate Class Certificate Balance of the Class II-M-1, Class II-B-1 and Class II-B-2 Certificates immediately prior to such Distribution Date.

Component Principal Balance: As of any Distribution Date, the Class 2-X P, Class 3-X P and Class II-X P Component will each have a Component Principal Balance equal to (i) the aggregate Net Deferred Interest allocated to such Component prior to that Distribution Date pursuant to Section 4.03 minus (ii) all amounts actually distributed as principal of such Component and all Realized Losses applied in reduction of principal of such Component on all prior Distribution Dates plus (iii) any increase in the Component Principal Balance of such Component pursuant to Section 4.02 due to the receipt of Subsequent Recoveries. As of the Closing Date, the Component Principal Balance of each of the Class 2-X P, Class 3-X P and Class II-X P Components will equal $0.

**Confirmation:** With respect to the Class 2-A-1 Certificates, the Confirmation (reference #4175282/4175288) dated Janaury 19, 2005, evidencing a transaction between the Corridor Contract Counterparty and Bank of America LLC, or its relevant affiliate. With respect to the Class 2-A-2 Certificates, the Confirmation (reference #4175281/4175289) dated January 19, 2005, evidencing a transaction between the Corridor Contract Counterparty and Bank of America, LLC, or its relevant affiliate. With respect to the Class II-M-1 Certificates, the Confirmation (reference #4175283/4175285) dated January 19, 2005, evidencing a transaction between the Corridor Contract Counterparty and Bank of America, LLC, or its relevant affiliate. With respect to the Class II-B-1 Certificates, the Confirmation (reference #4175284/4175287) dated January 19, 2005, evidencing a transaction between the Corridor Contract Counterparty and Bank of America, LLC, or its relevant affiliate. With respect

to the Class II-B-2 Certificates, the Confirmation (reference
#4175280/4175286) dated January 19, 2005, evidencing a transaction between
the
Corridor Contract Counterparty and Bank of America LLC, or its relevant
affiliate.

Coop Shares: Shares issued by a Cooperative Corporation.

Cooperative Corporation: The entity that holds title (fee or an
acceptable leasehold estate) to the real property and improvements
constituting the Cooperative Property and which governs the Cooperative
Property, which Cooperative Corporation must qualify as a Cooperative Housing
Corporation under Section 216 of the Code.

Cooperative Loan: Any Mortgage Loan secured by Coop Shares and a
Proprietary Lease.

Cooperative Property: The real property and improvements owned by the
Cooperative Corporation, including the allocation of individual dwelling
units
to the holders of the Coop Shares of the Cooperative Corporation.

Cooperative Unit: A single family dwelling located in a Cooperative
Property.

Corporate Trust Office: The designated office of the Trustee in the
State of New York at which at any particular time its corporate trust
business
with respect to this Agreement shall be administered, which office at the
date
of the execution of this Agreement is located at 101 Barclay Street, 8W, New
York, New York 10286 (Attn: Mortgage-Backed Securities Group, CWMBS, Inc.
Series 2005-7, facsimile no. (212) 815-3986, and which is the address to
which
notices to and correspondence with the Trustee should be directed.

23

Corridor Contracts: With respect to the Class 2-A-1, Class 2-A-2,
Class II-M-1, Class II-B-1 and Class II-B-2 Certificates, the transactions
evidenced by the related Confirmation (as assigned to the Trustee pursuant to
the Assignment Agreement), a form of which is attached hereto as Exhibit R.

Corridor Contract Counterparty: Bank of America, N.A. and its
successors.

Corridor Contract Scheduled Termination Date: December 23, 2014.

Countrywide: Countrywide Home Loans, Inc., a New York corporation and
its successors and assigns, in its capacity as the seller of the Countrywide
Mortgage Loans to the Depositor.

Countrywide Mortgage Loans: The Mortgage Loans identified as such on
the Mortgage Loan Schedule for which Countrywide is the applicable Seller.

**Countrywide Servicing:** Countrywide Home Loans Servicing LP, a Texas limited partnership and its successors and assigns.

Cross-Over Situation: For any Distribution Date and for each applicable Loan Group (after taking into account principal distributions on such Distribution Date) a situation in which the Class A and Class B Interests corresponding to the Loan Group are in the aggregate less than 1% of the Subordinate Portion of the Loan Group to which they correspond..

Cut-off Date: As to any Mortgage Loan, the later of the date of origination of that Mortgage Loan and January 1, 2005.

Cut-off Date Pool Principal Balance: $1,292,785,013.60.

Cut-off Date Principal Balance: As to any Mortgage Loan, the Stated Principal Balance thereof as of the close of business on the Cut-off Date.

Debt Service Reduction: With respect to any Mortgage Loan, a reduction by a court of competent jurisdiction in a proceeding under the Bankruptcy Code in the Scheduled Payment for such Mortgage Loan that became final and non-appealable, except such a reduction resulting from a Deficient Valuation or any reduction that results in a permanent forgiveness of principal.

Defective Mortgage Loan: Any Mortgage Loan that is required to be repurchased pursuant to Section 2.02 or 2.03.

Deferred Interest: With respect to any Mortgage Loan and Due Date, the amount of interest accrued on such Mortgage Loan at the applicable Mortgage Rate that is greater than the Scheduled Payment due on such Mortgage Loan on that related Due Date and that is added to the principal balance of such Mortgage Loan in accordance with the terms of the related Mortgage Note.

Deficient Valuation: With respect to any Mortgage Loan, a valuation by a court of competent jurisdiction of the Mortgaged Property in an amount less than the then-outstanding indebtedness under the Mortgage Loan, or any reduction in the amount of principal to be paid in

24

| EX-99.1 | 31st Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 31st |

connection with any Scheduled Payment that results in a permanent forgiveness of principal, which valuation or reduction results from an order of such court which is final and non-appealable in a proceeding under the Bankruptcy Code.

**Definitive Certificates:** Any Certificate evidenced by a Physical Certificate and any Certificate issued in lieu of a Book-Entry Certificate pursuant to Section 5.02(e).

Delay Certificates: As specified in the Preliminary Statement.

**Delay Delivery Certification:** As defined in Section 2.02(a).

Delay Delivery Mortgage Loans: The Mortgage Loans for which all or a portion of a related Mortgage File is not delivered to Trustee on the Closing Date. With respect to up to 50% of the Mortgage Loans in each Loan Group, the Depositor may deliver all or a portion of each related Mortgage File to the Trustee not later than thirty days after the Closing Date. To the extent that Countrywide Servicing shall be in possession of any Mortgage Files with respect to any Delay Delivery Mortgage Loan, until delivery of such Mortgage File to the Trustee as provided in Section 2.01, Countrywide Servicing shall hold such files as Master Servicer hereunder, as agent and in trust for the Trustee.

**Deleted Mortgage Loan:** As defined in Section 2.03(c).

**Denomination:** With respect to each Certificate, the amount set forth on the face of that Certificate as the *"Initial Certificate Balance of this Certificate"* or the *"Initial Notional Amount of this Certificate"* or, if neither of the foregoing, the Percentage Interest appearing on the face of that Certificate.

**Depositor:** CWMBS, Inc., a Delaware corporation, or its successor in interest.

Depository: The initial Depository shall be The Depository Trust Company, the nominee of which is CEDE & Co., as the registered Holder of the Book-Entry Certificates. The Depository shall at all times be a *"clearing corporation"* as defined in Section 8-102(a)(5) of the Uniform Commercial Code of the State of New York.

Depository Participant: A broker, dealer, bank or other financial institution or other Person for whom from time to time a Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Determination Date: As to any Distribution Date, the 22nd day of each month or, if such 22nd day is not a Business Day, the preceding Business Day; provided, however, that if such 22nd day or such Business Day, whichever is applicable, is less than two Business Days prior to the related Distribution Date, the Determination Date shall be the first Business Day that is two Business Days preceding such Distribution Date.

Distribution Account: The separate Eligible Account created and maintained by the Trustee pursuant to Section 3.05(d) in the name of the Trustee for the benefit of the Certificateholders and designated *"The Bank of New York in trust for registered holders of CHL Mortgage Pass-Through Trust 2005-7 Mortgage Pass-Through Certificates, Series 2005-7."*

25

Funds in the Distribution Account shall be held in trust for the Certificateholders for the uses and purposes set forth in this Agreement.

Distribution Account Deposit Date: As to any Distribution Date, 12:30 p.m. Pacific time on the Business Day immediately preceding such Distribution Date.

**Distribution Date:** The 25th day of each month or, if such 25th day is not a Business Day, the next Business Day, commencing in February 2005.

Due Date: With respect to a Mortgage Loan, the date on which Scheduled Payments are due on that Mortgage Loan. With respect to any Distribution Date, the first day of the calendar month in which that Distribution Date occurs.

Due Period: With respect to a Mortgage Loan, the period beginning on the second day of the calendar month preceding the month in which such Distribution Date occurs and ending on the first day of the calendar month in which such Distribution Date occurs.

Eligible Account: Any of (i) an account or accounts maintained with a federal or state chartered depository institution or trust company the short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the debt obligations of such holding company) have the highest short-term ratings of Moody's or Fitch and one of the two highest short-term ratings of S&P, if S&P is a Rating Agency at the time any amounts are held on deposit therein, or (ii) an account or accounts in a depository institution or trust company in which such accounts are insured by the FDIC (to the limits established by the FDIC) and the uninsured deposits in which accounts are otherwise secured such that, as evidenced by an Opinion of Counsel delivered to the Trustee and to each Rating Agency, the Certificateholders have a claim with respect to the funds in such account or a perfected first priority security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution or trust company in which such account is maintained, or (iii) a trust account or accounts maintained with (a) the trust department of a federal or state chartered depository institution or (b) a trust company, acting in its fiduciary capacity or (iv) any other account acceptable to each Rating Agency. Eligible Accounts may bear interest, and may include, if otherwise qualified under this definition, accounts maintained with the Trustee.

**Eligible Repurchase Month:** As defined in Section 3.11.

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

ERISA-Qualifying Underwriting: A best efforts or firm commitment underwriting or private placement that meets the requirements of an Underwriter's Exemption.

ERISA-Restricted Certificate: As specified in the Preliminary Statement.

**Escrow Account:** The Eligible Account or Accounts established and maintained pursuant to Section 3.06(a).

**Event of Default:** As defined in Section 7.01.

Excess Proceeds: With respect to any Liquidated Mortgage Loan, the amount, if any, by which the sum of any Liquidation Proceeds received with respect to such Mortgage Loan during the calendar month in which such Mortgage Loan became a Liquidated Mortgage Loan plus any Subsequent Recoveries received with respect to such Mortgage Loan, net of any amounts previously reimbursed to the Master Servicer as Nonrecoverable Advance(s) with respect to such Mortgage Loan pursuant to Section 3.08(a)(iii), exceeds (i) the unpaid principal balance of such Liquidated Mortgage Loan as of the Due Date in the month in which such Mortgage Loan became a Liquidated Mortgage Loan plus (ii) accrued interest at the Mortgage Rate from the Due Date as to which interest was last paid or advanced (and not reimbursed) to Certificateholders up to the Due Date applicable to the Distribution Date immediately following the calendar month during which such liquidation occurred.

Expense Fee: As to each Mortgage Loan and any Distribution Date, the product of the Expense Fee Rate and its Stated Principal Balance as of that Distribution Date.

Expense Fee Rate: As to each Mortgage Loan and any date of determination, the sum of (a) the related Master Servicing Fee Rate and (b) the Trustee Fee Rate.

FDIC: The Federal Deposit Insurance Corporation, or any successor thereto.

FHLMC: The Federal Home Loan Mortgage Corporation, a corporate instrumentality of the United States created and existing under Title III of the Emergency Home Finance Act of 1970, as amended, or any successor to the Federal Home Loan Mortgage Corporation.

**Final Certification**: As defined in Section 2.02(a).

FIRREA: The Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

Fitch: Fitch, Inc., or any successor thereto. If Fitch is designated as a Rating Agency in the Preliminary Statement, for purposes of Section 10.05(b) the address for notices to Fitch shall be Fitch, Inc., One State Street Plaza, New York, New York 10004, Attention: Residential Mortgage Surveillance Group, or such other address as Fitch may hereafter furnish to the Depositor and the Master Servicer.

FNMA: The Federal National Mortgage Association, a federally chartered and privately owned corporation organized and existing under the Federal National Mortgage Association Charter Act, or any successor to the Federal National Mortgage Association.

Gross Margin: With respect to each Mortgage Loan, the fixed

percentage set forth in the related Mortgage Note that is added to the
Mortgage Index on each Adjustment Date in accordance with the terms of the
related Mortgage Note used to determine the Mortgage Rate for such Mortgage
Loan.

Group 1 Senior Certificates: As specified in the Preliminary
Statement.

Group 2 Senior Certificates: As specified in the Preliminary
Statement.

Group 3 Senior Certificates: As specified in the Preliminary
Statement.

27

Group I Certificates: As specified in the Preliminary Statement.

Group I Senior Certificates: As specified in the Preliminary
Statement.

Group I Subordinated Certificates: As specified in the Preliminary
Statement.

Group II Certificates: As specified in the Preliminary Statement.

Group II Senior Certificates: As specified in the Preliminary
Statement.

Group II Subordinated Certificates: As specified in the Preliminary
Statement.

Indirect Participant: A broker, dealer, bank or other financial
institution or other Person that clears through or maintains a custodial
relationship with a Depository Participant

**Initial Certification**: As defined in Section 2.02(a).

Initial Component Principal Balance: As specified in the Preliminary
Statement.

Insurance Policy: With respect to any Mortgage Loan included in the
Trust Fund, any insurance policy, including all riders and endorsements
thereto in effect, including any replacement policy or policies for any
Insurance Policies.

Insurance Proceeds: Proceeds paid by an insurer pursuant to any
Insurance Policy, in each case other than any amount included in such
Insurance Proceeds in respect of Insured Expenses.

Insured Expenses: Expenses covered by an Insurance Policy or any
other insurance policy with respect to the Mortgage Loans.

Interest Accrual Period: With respect to each Class of Delay

Certificates, its corresponding Lower Tier/Middle Tier REMIC Regular Interest and any Distribution Date, the calendar month prior to the month of such Distribution Date. With respect to any Class of Non-Delay Certificates, its corresponding Lower Tier/Middle Tier REMIC Regular Interest and any Distribution Date, the period commencing on the 25th day of the month prior to the month of such Distribution Date (other than the first Distribution Date, for which it is the Closing Date) and ending on the 24th day of the month in which that Distribution Date occurs.

**Latest Possible Maturity Date:** The Distribution Date following the third anniversary of the scheduled maturity date of the Mortgage Loan having the latest scheduled maturity date as of the Cut-off Date.

Lender PMI Mortgage Loan: Certain Mortgage Loans as to which the lender (rather than the Mortgagor) acquires the Primary Insurance Policy and charges the related Mortgagor an interest premium.

LIBOR: The London interbank offered rate for one-month United States dollar deposits calculated in the manner described in Section 4.08.

28

| EX-99.1 | 35th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 35th |
|---------|------------------|-----|-----|----------|------|---------|-----------|

LIBOR Certificates: As specified in the Preliminary Statement.

Liquidated Mortgage Loan: With respect to any Distribution Date, a defaulted Mortgage Loan (including any REO Property) that was liquidated in the calendar month preceding the month of such Distribution Date and as to which the Master Servicer has determined (in accordance with this Agreement) that it has received all amounts it expects to receive in connection with the liquidation of such Mortgage Loan, including the final disposition of an REO Property.

Liquidation Proceeds: Amounts, including Insurance Proceeds, received in connection with the partial or complete liquidation of defaulted Mortgage Loans, whether through trustee's sale, foreclosure sale or otherwise or amounts received in connection with any condemnation or partial release of a Mortgaged Property and any other proceeds received in connection with an REO Property, less the sum of related unreimbursed Master Servicing Fees, Servicing Advances and Advances.

Loan Group: Any of Loan Group 1, Loan Group 2 and Loan Group 3, as applicable.

Loan Group 1: All Mortgage Loans identified as Loan Group 1 Mortgage Loans on the Mortgage Loan Schedule.

Loan Group 2: All Mortgage Loans identified as Loan Group 2 Mortgage Loans on the Mortgage Loan Schedule.

Loan Group 3: All Mortgage Loans identified as Loan Group 3 Mortgage Loans on the Mortgage Loan Schedule.

Loan Group Principal Balance: As to any Distribution Date and Loan

Group, the aggregate Stated Principal Balance of the Mortgage Loans in that
Loan Group outstanding on the Due Date in the month preceding the month of
the
Distribution Date (after giving effect to Principal Prepayments received in
the Prepayment Period related to such Due Date).

Loan-to-Value Ratio: With respect to any Mortgage Loan and as to any
date of determination, the fraction (expressed as a percentage) the numerator
of which is the principal balance of the related Mortgage Loan at that date
of
determination and the denominator of which is the Appraised Value of the
related Mortgaged Property.

**Lost Mortgage Note:** Any Mortgage Note the original of which was
permanently lost or destroyed and has not been replaced.

Lower Tier REMIC: As described in the Preliminary Statement.

Lower Tier REMIC Regular Interest: As described in the Preliminary
Statement.

Maintenance: With respect to any Cooperative Unit, the rent paid by
the Mortgagor to the Cooperative Corporation pursuant to the Proprietary
Lease.

29

| EX-99.1 | 36th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 36th |

Majority in Interest: As to any Class of Regular Certificates, the
Holders of Certificates of such Class evidencing, in the aggregate, at least
51% of the Percentage Interests evidenced by all Certificates of such Class.

**Master REMIC:** As described in the Preliminary Statement.

**Master Servicer:** Countrywide Servicing LP in its capacity as master
servicer hereunder.

Master Servicer Advance Date: As to any Distribution Date, 12:30 p.m.
Pacific time on the Business Day immediately preceding such Distribution
Date.

Master Servicing Fee: As to each Mortgage Loan and any Distribution
Date, an amount payable out of each full payment of interest received on such
Mortgage Loan and equal to one-twelfth of the Master Servicing Fee Rate
multiplied by the Stated Principal Balance of such Mortgage Loan as of the
Due
Date in the month of such Distribution Date (prior to giving effect to any
Scheduled Payments due on such Mortgage Loan on such Due Date), subject to
reduction as provided in Section 3.14.

Master Servicing Fee Rate: With respect to each Mortgage Loan and Due
Date, 0.375% per annum.

Maximum Mortgage Rate: With respect to each Mortgage Loan, the

percentage set forth in the related Mortgage Note as the maximum Mortgage
Rate
thereunder.

Maximum Negative Amortization: With respect to each Mortgage Loan,
the percentage set forth in the related Mortgage Note as the percentage of
the
original principal balance of Mortgage Note, that if exceeded due to Deferred
Interest, will result in a recalculation of the Scheduled Payment so that the
then unpaid principal balance of the Mortgage Note will be fully amortized
over the Mortgage Loan's remaining term to maturity.

Maximum Rate: With respect to the Class 1-A-1, Class 1-A-2, Class
I-M-1 and Class I-B-1 Certificates, 11.50%. With respect to the Class 2-A-1,
Class 2-A-2, Class II-M-1, Class II-B-1 and Class II-B-2 Certificates,
10.50%.

MERS: Mortgage Electronic Registration Systems, Inc., a corporation
organized and existing under the laws of the State of Delaware, or any
successor to Mortgage Electronic Registration Systems, Inc.

MERS Mortgage Loan: Any Mortgage Loan registered with MERS on the
MERS(R) System.

MERS(R) System: The system of recording transfers of mortgages
electronically maintained by MERS.

**Middle Tier REMIC:** As described in the Preliminary Statement.

Middle Tier REMIC Regular Interest: As described in the Preliminary
Statement.

30

| EX-99.1 | 37th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 37th |

MIN: The mortgage identification number for any MERS Mortgage Loan.

Minimum Mortgage Rate: With respect to each Mortgage Loan, the
greater of (a) the Gross Margin set forth in the related Mortgage Note and
(b)
the percentage set forth in the related Mortgage Note as the minimum Mortgage
Rate thereunder.

MOM Loan: Any Mortgage Loan as to which MERS is acting as mortgagee,
solely as nominee for the originator of such Mortgage Loan and its successors
and assigns.

Monthly Statement: The statement delivered to the Certificateholders
pursuant to Section 4.06.

Moody's: Moody's Investors Service, Inc., or any successor thereto.
If Moody's is designated as a Rating Agency in the Preliminary Statement, for
purposes of Section 10.05(b) the address for notices to Moody's shall be
Moody's Investors Service, Inc., 99 Church Street, New York, New York 10007,
Attention: Residential Pass-Through Monitoring, or such other address as

Moody's may hereafter furnish to the Depositor or the Master Servicer.

Mortgage: The mortgage, deed of trust or other instrument creating a first lien on an estate in fee simple or leasehold interest in real property securing a Mortgage Note.

Mortgage File: The mortgage documents listed in Section 2.01 pertaining to a particular Mortgage Loan and any additional documents delivered to the Trustee to be added to the Mortgage File pursuant to this Agreement.

Mortgage Index: As to each Mortgage Loan, the index from time to time in effect for adjustment of the Mortgage Rate as set forth as such on the related Mortgage Note.

**Mortgage Loan Schedule:** The list of Mortgage Loans (as from time to time amended by the Master Servicer to reflect the addition of Substitute Mortgage Loans and the deletion of Deleted Mortgage Loans pursuant to the provisions of this Agreement) transferred to the Trustee as part of the Trust Fund and from time to time subject to this Agreement, attached to this Agreement as Schedule I, setting forth the following information with respect to each Mortgage Loan by Loan Group:

(i) the loan number;

(ii) the Mortgagor's name and the street address of the Mortgaged Property, including the ZIP code;

(iii) the maturity date;

(iv) the original principal balance;

(v) the Cut-off Date Principal Balance;

(vi) the first payment date of the Mortgage Loan;

31

| EX-99.1 | 38th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 38th |
|---------|------------------|-----|-----|----------|------|---------|-----------|

(vii) the Scheduled Payment in effect as of the Cut-off Date;

(viii) the Loan-to-Value Ratio at origination;

(ix) a code indicating whether the residential dwelling at the time of origination was represented to be owner-occupied;

(x) a code indicating whether the residential dwelling is either (a) a detached or attached single family dwelling, (b) a dwelling in a de minimis PUD, (c) a condominium unit or PUD (other than a de minimis PUD), (d) a two- to four-unit residential property or (e) a Cooperative Unit;

(xi) the Mortgage Rate in effect as of the Cut-off Date;

(xii) the Master Servicing Fee Rate both before and after the

initial Adjustment Date for each Mortgage Loan;

(xiii) a code indicating whether the Mortgage Loan is a Lender PMI Mortgage Loan and, in the case of any Lender PMI Mortgage Loan, a percentage representing the amount of the related interest premium charged to the borrower;

(xiv) the purpose for the Mortgage Loan;

(xv) the type of documentation program pursuant to which the Mortgage Loan was originated;

(xvi) a code indicating whether the Mortgage Loan is a Countrywide Mortgage Loan or a Park Granada Mortgage Loan;

(xvii) the direct servicer of such Mortgage Loan as of the Cut-off Date;

(xviii) a code indicating whether the Mortgage Loan is a MERS Mortgage Loan; and

(xix) with respect to each Mortgage Loan, the Gross Margin, the Mortgage Index, the Maximum Mortgage Rate, the Minimum Mortgage Rate, the Periodic Rate Cap, the first Adjustment Date, the Payment Adjustment Date and Maximum Negative Amortization for such Mortgage Loan.

Such schedule shall also set forth the total of the amounts described under (iv) and (v) above for all of the Mortgage Loans and for each Loan Group.

**Mortgage Loans:** Such of the mortgage loans as from time to time are transferred and assigned to the Trustee pursuant to the provisions of this Agreement and that are held as a part of the Trust Fund (including any REO Property), the mortgage loans so held being identified in the Mortgage Loan Schedule, notwithstanding foreclosure or other acquisition of title of the related Mortgaged Property.

32

Mortgage Note: The original executed note or other evidence of indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan.

Mortgage Rate: The annual rate of interest borne by a Mortgage Note from time to time, net of any interest premium charged by the mortgagee to obtain or maintain any Primary Insurance Policy.

Mortgaged Property: The underlying property securing a Mortgage Loan, which, with respect to a Cooperative Loan, is the related Coop Shares and Proprietary Lease.

Mortgagor: The obligor(s) on a Mortgage Note.

National Cost of Funds Index: The National Monthly Median Cost of Funds Ratio to SAIF-Insured Institutions published by the Office of Thrift Supervision.

Net Deferred Interest: With respect to each Loan Group and Distribution Date, an amount equal to the excess, if any, of the Deferred Interest that accrued on the Mortgage Loans in that Loan Group for the related
Due Period over the Principal Prepayment Amount for those Mortgage Loans received during the related Prepayment Period.

Net Prepayment Interest Shortfalls: As to any Distribution Date and Loan Group in an Aggregate Loan Group, the amount by which the aggregate of Prepayment Interest Shortfalls for such Loan Group exceeds an amount equal to the sum of (a) the Compensating Interest for such Loan Group for such Distribution Date and (b) the excess, if any, of the Compensating Interest with respect to the Mortgage Loans of each other Loan Group in the same Aggregate Loan Group for such Distribution Date over the Prepayment Interest Shortfalls experienced by the Mortgage Loans in such other Loan Groups.

Net Prepayments: As to any Distribution Date and Loan Group, the amount equal to the excess, if any, of the (i) Principal Prepayment Amount for
that Loan Group over (ii) the aggregate amount of Deferred Interest accrued on
the Mortgage Loans in that Loan Group from the preceding Due Date to the Due Date related to that Distribution Date.

Net WAC Cap: As to any Class of LIBOR Certificates, other than the LIBOR Certificates in the Group II Subordinated Certificates, the Weighted Average Adjusted Net Mortgage Rate of the Mortgage Loans in the related Loan Group, adjusted for the related Interest Accrual Period. As to any Class of LIBOR Certificates in the Group II Subordinated Certificates, the Aggregate Group II Weighted Average Rate.

Non-Delay Certificates: As specified in the Preliminary Statement.

Nonrecoverable Advance: Any portion of an Advance previously made or proposed to be made by the Master Servicer that, in the good faith judgment of
the Master Servicer, will not be ultimately recoverable by the Master Servicer
from the related Mortgagor, related Liquidation Proceeds or otherwise.

33

Notice of Final Distribution: The notice to be provided pursuant to Section 9.02 to the effect that final distribution on any of the Certificates shall be made only upon presentation and surrender thereof.

Notional Amount: With respect to the Class 1-X Certificates and any Distribution Date, an amount equal to the aggregate Class Certificate Balance of the Class 1-A-1, Class 1-A-2, Class I-M-1 and Class I-B-1 Certificates immediately prior to such Distribution Date.

Notional Amount Certificates: As specified in the Preliminary
Statement.

Offered Certificates: As specified in the Preliminary Statement.

Officer's Certificate: A certificate (i) in the case of the
Depositor, signed by the Chairman of the Board, the Vice Chairman of the
Board, the President, a Managing Director, a Vice President (however
denominated), an Assistant Vice President, the Treasurer, the Secretary, or
one of the Assistant Treasurers or Assistant Secretaries of the Depositor,
(ii) in the case of the Master Servicer, signed by the President, an
Executive
Vice President, a Vice President, an Assistant Vice President, the Treasurer,
or one of the Assistant Treasurers or Assistant Secretaries of Countrywide
GP,
Inc., its general partner or (iii) if provided for in this Agreement, signed
by a Servicing Officer, as the case may be, and delivered to the Depositor
and
the Trustee, as the case may be, as required by this Agreement.

Opinion of Counsel: A written opinion of counsel, who may be counsel
for the Depositor, any Sellers or the Master Servicer, including in-house
counsel, reasonably acceptable to the Trustee; provided, however, that with
respect to the interpretation or application of the REMIC Provisions, such
counsel must (i) in fact be independent of the Depositor, any Sellers and the
Master Servicer, (ii) not have any direct financial interest in the
Depositor,
any Sellers or the Master Servicer or in any affiliate of either, and (iii)
not be connected with the Depositor, any Sellers or the Master Servicer as an
officer, employee, promoter, underwriter, trustee, partner, director or
person
performing similar functions.

Optional Termination: As to Aggregate Loan Group I or Aggregate Loan
Group II, the termination of the related portion of the Trust Fund created
under this Agreement in connection with the purchase of the related Mortgage
Loans pursuant to Section 9.01.

Optional Termination Date: As to Aggregate Loan Group I or Aggregate
Loan Group II, the Distribution Date on which the aggregate Stated Principal
Balance of the Mortgage Loans in that Aggregate Loan Group is less than or
equal to 10% of the aggregate Stated Principal Balance of the Mortgage Loans
in that Aggregate Loan Group as of the Cut-off Date.

Original Applicable Credit Support Percentage: With respect to each
of the following Classes of Subordinated Certificates, the corresponding
percentage described below, as of the Closing Date:

Group I Subordinated Certificates
---------------------------------

| Class I-M-1 | 6.50% |
| Class I-B-1 | 4.20% |
| Class I-B-2 | 2.75% |

34

```
Class I-B-3.........................     1.70%
Class I-B-4.........................     0.90%
Class I-B-5.........................     0.40%

        Group II Subordinated Certificates
        ----------------------------------

Class II-M-1........................     7.70%
Class II-B-1........................     5.50%
Class II-B-2........................     3.75%
Class II-B-3........................     2.40%
Class II-B-4........................     1.00%
Class II-B-5........................     0.40%
```

Original Mortgage Loan: The mortgage loan refinanced in connection with the origination of a Refinancing Mortgage Loan.

Original Subordinate Principal Balance: For the Group I Certificates, the aggregate of the Class Certificate Balances of the Group I Subordinated Certificates as of the Closing Date. For the Group II Certificates, the aggregate of the Class Certificate Balances of the Group II Subordinated Certificates as of the Closing Date.

OTS: The Office of Thrift Supervision.

Outstanding: With respect to the Certificates as of any date of determination, all Certificates theretofore executed and authenticated under this Agreement except:

(i) Certificates theretofore canceled by the Trustee or delivered to the Trustee for cancellation; and

(ii) Certificates in exchange for which or in lieu of which other Certificates have been executed and delivered by the Trustee pursuant to this Agreement.

Outstanding Mortgage Loan: As of any Due Date, a Mortgage Loan with a Stated Principal Balance greater than zero, which was not the subject of a Principal Prepayment in Full prior to such Due Date or during the related Prepayment Period and which did not become a Liquidated Mortgage Loan prior to such Due Date.

Overcollateralized Group: As defined in Section 4.05.

Ownership Interest: As to any Residual Certificate, any ownership interest in such Certificate including any interest in such Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial.

Park Granada: Park Granada LLC, a Delaware limited liability company, and its successors and assigns, in its capacity as the seller of the Park Granada Mortgage Loans to the Depositor.

Park Granada Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule for which Park Granada is the applicable Seller.

Pass-Through Margin: With respect to any Distribution Date and each Class of LIBOR Certificates, the per annum rate indicated in the following table:

| Class | Pass-Through Margin (1) | Pass-Through Margin (2) |
| --- | --- | --- |
| Class 1-A-1............ | 0.270% | 0.540% |
| Class 1-A-2............ | 0.400% | 0.800% |
| Class I-M-1............ | 0.500% | 0.750% |
| Class I-B-1............ | 0.850% | 1.275% |
| Class I-B-2............ | 1.500% | 2.250% |
| Class 2-A-1............ | 0.310% | 0.620% |
| Class 2-A-2............ | 0.360% | 0.720% |
| Class II-M-1........... | 0.600% | 0.900% |
| Class II-B-1........... | 1.000% | 1.500% |
| Class II-B-2........... | 1.800% | 2.700% |

--------------------------

(1)    For the Interest Accrual Period related to any Distribution Date occurring on or prior to the applicable Optional Termination Date.

(2)    For each other Interest Accrual Period.

Pass-Through Rate: For any interest-bearing Class of Certificates or Component, the per annum rate set forth or calculated in the manner described in the Preliminary Statement.

Payment Adjustment Date: For each Mortgage Loan, the date specified in the related Mortgage Note as the annual date on which the Mortgage Rate on the related Scheduled Payment will be adjusted.

Percentage Interest: As to any Certificate, the percentage interest evidenced thereby in distributions required to be made on the related Class, such percentage interest being set forth on the face thereof or equal to the percentage obtained by dividing the Denomination of such Certificate by the aggregate of the Denominations of all Certificates of the same Class.

Periodic Rate Cap: With respect to each Group 1 Mortgage Loan and any Adjustment Date therefor, the fixed percentage set forth in the related Mortgage Note, which is the maximum amount by which the Mortgage Rate for such Mortgage Loan may increase or decrease (without regard to the Maximum Mortgage Rate or the Minimum Mortgage Rate) on such Adjustment Date from the Mortgage Rate in effect immediately prior to such Adjustment Date.

Permitted Investments: At any time, any one or more of the following
obligations and securities:

(i) obligations of the United States or any agency thereof,
provided such obligations are backed by the full faith and
credit of the United States;

(ii) general obligations of or obligations guaranteed by any
state of the United States or the District of Columbia
receiving the highest long-term debt rating of

36

each Rating Agency, or such lower rating as will not result in
the downgrading or withdrawal of the ratings then assigned to
the Certificates by each Rating Agency;

(iii) commercial or finance company paper which is then
receiving the highest commercial or finance company paper
rating of each Rating Agency, or such lower rating as will not
result in the downgrading or withdrawal of the ratings then
assigned to the Certificates by each Rating Agency;

(iv) certificates of deposit, demand or time deposits, or
bankers' acceptances issued by any depository institution or
trust company incorporated under the laws of the United States
or of any state thereof and subject to supervision and
examination by federal and/or state banking authorities,
provided that the commercial paper and/or long term unsecured
debt obligations of such depository institution or trust
company (or in the case of the principal depository
institution in a holding company system, the commercial paper
or long-term unsecured debt obligations of such holding
company, but only if Moody's is not a Rating Agency) are then
rated one of the two highest long-term and the highest
short-term ratings of each Rating Agency for such securities,
or such lower ratings as will not result in the downgrading or
withdrawal of the rating then assigned to the Certificates by
either Rating Agency;

(v) repurchase obligations with respect to any security
described in clauses (i) and (ii) above, in either case
entered into with a depository institution or trust company
(acting as principal) described in clause (iv) above;

(vi) units of a taxable money-market portfolio having the
highest rating assigned by each Rating Agency (except if Fitch
is a Rating Agency and has not rated the portfolio, the
highest rating assigned by Moody's) and restricted to
obligations issued or guaranteed by the United States of
America or entities whose obligations are backed by the full
faith and credit of the United States of America and
repurchase agreements collateralized by such obligations; and

(vii) such other relatively risk free investments bearing
interest or sold at a discount acceptable to each Rating
Agency as will not result in the downgrading or withdrawal of
the rating then assigned to the Certificates by either Rating
Agency, as evidenced by a signed writing delivered by each
Rating Agency

provided, that no such instrument shall be a Permitted Investment if such
instrument evidences the right to receive interest only payments with respect
to
the obligations underlying such instrument.

**Permitted Transferee:** Any person other than (i) the United States,
any State or political subdivision thereof, or any agency or instrumentality
of any of the foregoing, (ii) a foreign government, International
Organization
or any agency or instrumentality of either of the foregoing, (iii) an
organization (except certain farmers' cooperatives described in Section 521
of
the Code) which is exempt from tax imposed by Chapter 1 of the Code
(including
the tax imposed by Section 511 of the Code on unrelated business taxable
income) on any excess

37

| EX-99.1 | 44th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 44th |

inclusions (as defined in Section 860E(c)(1) of the Code) with respect to any
Residual Certificate, (iv) rural electric and telephone cooperatives
described
in Section 1381(a)(2)(C) of the Code, (v) an *"electing large partnership"* as
defined in Section 775 of the Code, (vi) a Person that is not a citizen or
resident of the United States, a corporation, partnership, or other entity
created or organized in or under the laws of the United States, any state
thereof or the District of Columbia, or an estate or trust whose income from
sources without the United States is includible in gross income for United
States federal income tax purposes regardless of its connection with the
conduct of a trade or business within the United States or a trust if a court
within the United States is able to exercise primary supervision over the
administration of the trust and one or more United States persons have the
authority to control all substantial decisions of the trust unless such
Person
has furnished the transferor and the Trustee with a duly completed Internal
Revenue Service Form W-8ECI or any applicable successor form, and (vii) any
other Person so designated by the Depositor based upon an Opinion of Counsel
that the Transfer of an Ownership Interest in a Residual Certificate to such
Person may cause any REMIC created under this Agreement to fail to qualify as
a REMIC at any time that the Certificates are outstanding. The terms *"United
States," "State"* and *"International Organization"* shall have the meanings set
forth in Section 7701 of the Code or successor provisions. A corporation will
not be treated as an instrumentality of the United States or of any State or
political subdivision thereof for these purposes if all of its activities are
subject to tax and, with the exception of the Federal Home Loan Mortgage
Corporation, a majority of its board of directors is not selected by such

government unit.

**Person:** Any individual, corporation, partnership, joint venture, association, limited liability company, joint-stock company, trust, unincorporated organization or government, or any agency or political subdivision thereof.

Physical Certificate: As specified in the Preliminary Statement.

Planned Balance: With respect to any Planned Principal Class or Component and any Distribution Date appearing in Schedule V, the amount appearing opposite such Distribution Date for such Class or Component.

Planned Principal Classes: As specified in the Preliminary Statement.

Planned Principal Components: As specified in the Preliminary Statement.

Pool Stated Principal Balance: As to any Distribution Date and an Aggregate Loan Group, the aggregate of the Stated Principal Balances of the Mortgage Loans in such Aggregate Loan Group that were Outstanding Mortgage Loans on the Due Date in the month preceding the month of such Distribution Date and, as to any other date of determination, the aggregate of the Stated Principal Balances of the Outstanding Mortgage Loans in such Aggregate Loan Group as of such date.

Prepayment Interest Excess: As to any Principal Prepayment received by the Master Servicer from the first day through the fifteenth day of any calendar month (other than the calendar month in which the Cut-off Date occurs), all amounts paid by the related Mortgagor in

38

| **EX-99.1** | **45th Page of 226** | TOC | 1st | Previous | Next | ↓Bottom | Just 45th |

respect of interest on such Principal Prepayment. All Prepayment Interest Excess shall be paid to the Master Servicer as additional master servicing compensation.

Prepayment Interest Shortfall: As to any Distribution Date, any Mortgage Loan and any Principal Prepayment received on or after the sixteenth day of the month preceding the month of such Distribution Date (or, in the case of the first Distribution Date, on or after January 1, 2005) and on or before the last day of the month preceding the month of such Distribution Date, the amount, if any, by which one month's interest at the related Mortgage Rate, net of the related Master Servicing Fee Rate, on such Principal Prepayment exceeds the amount of interest paid in connection with such Principal Prepayment.

Prepayment Period: As to any Distribution Date and the related Due Date, the period from the 16th day of the calendar month immediately preceding the month in which the Distribution Date occurs (or, in the case of the first Distribution Date, from January 1, 2005) through the 15th day of the calendar month in which the Distribution Date occurs.

Primary Insurance Policy: Each policy of primary mortgage guaranty insurance or any replacement policy therefor with respect to any Mortgage Loan.

Prime Rate: The prime commercial lending rate of The Bank of New York, as publicly announced to be in effect from time to time. The Prime Rate shall be adjusted automatically, without notice, on the effective date of any change in such prime commercial lending rate. The Prime Rate is not necessarily The Bank of New York's lowest rate of interest.

**Principal Amount:** As to any Distribution Date and any Loan Group, the sum of (a) the principal portion of each Scheduled Payment (without giving effect to any reductions thereof caused by any Debt Service Reductions or Deficient Valuations) due on each Mortgage Loan (other than a Liquidated Mortgage Loan) in the related Loan Group on the related Due Date to the extent received or advanced, (b) the principal portion of the Purchase Price of each Mortgage Loan in the related Loan Group that was repurchased by the applicable Seller or purchased by the Master Servicer pursuant to this Agreement as of such Distribution Date, (c) the Substitution Adjustment Amount in connection with any Deleted Mortgage Loan in such Loan Group received with respect to such Distribution Date, (d) any Insurance Proceeds or net Liquidation Proceeds allocable to recoveries of principal of Mortgage Loans in the related Loan Group that are not yet Liquidated Mortgage Loans received during the calendar month preceding the month of such Distribution Date, (e) with respect to each Mortgage Loan in a Loan Group that became a Liquidated Mortgage Loan during the calendar month preceding the month of such Distribution Date, the amount of the net Liquidation Proceeds allocable to principal received during the calendar month preceding the month of such Distribution Date with respect to such Mortgage Loan, (f) all Principal Prepayments for such Loan Group received during the related Prepayment Period and (g) any Transfer Payments Received for such Loan Group, minus any Transfer Payments Made for such Loan Group and Distribution Date in accordance with Section 4.05.

Principal Payment Amount: As to any Distribution Date and any Loan Group, the sum of the amounts described in clauses (a) through (e) of the definition of "*Principal Amount*" for such Distribution Date and Loan Group.

39

| EX-99.1 | 46th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 46th |

Principal Prepayment: Any payment of principal by a Mortgagor on a Mortgage Loan that is received in advance of its scheduled Due Date and is not accompanied by an amount representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment. Partial Principal Prepayments shall be applied by the Master Servicer in accordance with the terms of the related Mortgage Note.

Principal Prepayment Amount: As to any Distribution Date and any Loan Group, an amount equal to the sum of the amounts described in clauses (f) and

(g) of the definition of *"Principal Amount"* for such Distribution Date and Loan
Group.

Principal Prepayment in Full: Any Principal Prepayment made by a
Mortgagor of the entire principal balance of a Mortgage Loan.

Principal Relocation Payment: A payment from any Lower Tier REMIC
Regular Interests other than those of their Corresponding Loan Group as
provided in the Preliminary Statement. Principal Relocation Payments shall be
made of principal allocations comprising the Principal Amount from a Loan
Group and shall also consist of a proportionate allocation of Realized Losses
from the Mortgage Loans of a Loan Group.

Private Certificate: As specified in the Preliminary Statement.

Pro Rata Share: As to any Distribution Date, the Subordinated
Principal Distribution Amount for an Aggregate Loan Group and any related
Class of Subordinated Certificates, the portion of the related Subordinated
Principal Distribution Amount allocable to such Class, equal to the product
of
the related Subordinated Principal Distribution Amount on such Distribution
Date and a fraction, the numerator of which is the related Class Certificate
Balance thereof and the denominator of which is the aggregate of the Class
Certificate Balances of the Group I Subordinated Certificates or Group II
Subordinated Certificates, as applicable.

Pro Rata Subordinated Percentage: As to any Distribution Date and
Loan Group, 100% minus the related Senior Percentage for such Distribution
Date.

Proprietary Lease: With respect to any Cooperative Unit, a lease or
occupancy agreement between a Cooperative Corporation and a holder of related
Coop Shares.

Prospectus: The prospectus dated August 24, 2004 generally relating
to mortgage-pass through certificates to be sold by the Depositor.

Prospectus Supplement: The prospectus supplement dated January 25,
2005 relating to the Offered Certificates.

PUD: Planned Unit Development.

Purchase Price: With respect to any Mortgage Loan required to be
purchased by a Seller pursuant to Section 2.02 or 2.03 of this Agreement or
purchased at the option of the Master Servicer pursuant to Section 3.11, an
amount equal to the sum of (i) 100% of the unpaid principal balance of the
Mortgage Loan on the date of such purchase, (ii) accrued interest thereon at
the applicable Mortgage Rate (or at the applicable Adjusted Mortgage Rate if
(x) the purchaser

40

is the Master Servicer or (y) if the purchaser is Countrywide and Countrywide

is an affiliate of the Master Servicer) from the date through which interest was last paid by the Mortgagor to the Due Date in the month in which the Purchase Price is to be distributed to Certificateholders and (iii) costs and damages incurred by the Trust Fund in connection with a repurchase pursuant to
Section 2.03 of this Agreement that arises out of a violation of any predatory
or abusive lending law with respect to the related Mortgage Loan.

Qualified Insurer: A mortgage guaranty insurance company duly qualified as such under the laws of the state of its principal place of business and each state having jurisdiction over such insurer in connection with the insurance policy issued by such insurer, duly authorized and licensed
in such states to transact a mortgage guaranty insurance business in such states and to write the insurance provided by the insurance policy issued by it, approved as a FNMA-approved mortgage insurer and having a claims paying ability rating of at least *"AA"* or equivalent rating by a nationally recognized statistical rating organization. Any replacement insurer with respect to a Mortgage Loan must have at least as high a claims paying ability rating as the insurer it replaces had on the Closing Date.

Rate Cap: Not applicable.

**Rating Agency**: Each of the Rating Agencies specified in the Preliminary Statement. If any such organization or a successor is no longer in
existence, *"Rating Agency"* shall be such nationally recognized statistical rating organization, or other comparable Person, as is designated by the Depositor, notice of which designation shall be given to the Trustee. References in this Agreement to a given rating category of a Rating Agency shall mean such rating category without giving effect to any modifiers.

Realized Loss: With respect to each Liquidated Mortgage Loan, an amount (not less than zero or more than the Stated Principal Balance of the Mortgage Loan) as of the date of such liquidation, equal to (i) the Stated Principal Balance of the Liquidated Mortgage Loan as of the date of such liquidation, plus (ii) interest at the Adjusted Net Mortgage Rate from the Due
Date as to which interest was last paid or advanced (and not reimbursed) to Certificateholders up to the Due Date in the month in which Liquidation Proceeds are required to be distributed on the Stated Principal Balance of such Liquidated Mortgage Loan from time to time, minus (iii) the Liquidation Proceeds, if any, received during the month in which such liquidation occurred, to the extent applied as recoveries of interest at the Adjusted Net Mortgage Rate and to principal of the Liquidated Mortgage Loan. With respect to each Mortgage Loan that has become the subject of a Deficient Valuation, if
the principal amount due under the related Mortgage Note has been reduced, the
difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the
Mortgage Loan as reduced by the Deficient Valuation. With respect to each Mortgage Loan that has become the subject of a Debt Service Reduction and any Distribution Date, the amount, if any, by which the principal portion of the related Scheduled Payment has been reduced.

To the extent the Master Servicer receives Subsequent Recoveries with respect to any Mortgage Loan, the amount of Realized Losses with respect to that Mortgage Loan will be reduced by the amount of those Subsequent Recoveries.

41

| EX-99.1 | 48th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 48th |

Recognition Agreement: With respect to any Cooperative Loan, an agreement between the Cooperative Corporation and the originator of such Mortgage Loan which establishes the rights of such originator in the Cooperative Property.

Record Date: With respect to any Distribution Date, (i) in the case of the LIBOR Certificates represented by Book-Entry Certificates, the Business Day immediately preceding such Distribution Date and (ii) in the case of LIBOR Certificates represented by Definitive Certificates and in the case of all other Certificates, the close of business on the last Business Day of the month preceding the month in which such Distribution Date occurs.

**Reference Bank:** As defined in Section 4.07.

Refinancing Mortgage Loan: Any Mortgage Loan originated in connection with the refinancing of an existing mortgage loan.

Regular Certificates: As specified in the Preliminary Statement.

Relief Act: The Servicemembers' Civil Relief Act or similar state laws.

Relief Act Reductions: With respect to any Distribution Date and any Mortgage Loan as to which there has been a reduction in the amount of interest collectible thereon for the most recently ended calendar month as a result of the application of the Relief Act, the amount, if any, by which (i) interest collectible on such Mortgage Loan for the most recently ended calendar month is less than (ii) interest accrued thereon for such month pursuant to the Mortgage Note.

**REMIC:** A *"real estate mortgage investment conduit"* within the meaning of Section 860D of the Code.

REMIC Change of Law: Any proposed, temporary or final regulation, revenue ruling, revenue procedure or other official announcement or interpretation relating to REMICs and the REMIC Provisions issued after the Closing Date.

REMIC Provisions: Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at Sections 860A through 860G of Subchapter M of Chapter 1 of the Code, and related provisions,

and regulations promulgated thereunder, as the foregoing may be in effect
from
time to time as well as provisions of applicable state laws.

REO Property: A Mortgaged Property acquired by the Trust Fund through
foreclosure or deed-in-lieu of foreclosure in connection with a defaulted
Mortgage Loan.

**Request for Release:** The Request for Release submitted by the Master
Servicer to the Trustee, substantially in the form of Exhibits M and N to
this
Agreement, as appropriate.

Required Insurance Policy: With respect to any Mortgage Loan, any
insurance policy that is required to be maintained from time to time under
this Agreement.

Residual Certificates: As specified in the Preliminary Statement.

42

| EX-99.1 | 49th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 49th |
|---------|------------------|-----|-----|----------|------|---------|-----------|

Responsible Officer: When used with respect to the Trustee, any Vice
President, any Assistant Vice President, the Secretary, any Assistant
Secretary, any Trust Officer or any other officer of the Trustee customarily
performing functions similar to those performed by any of the above
designated
officers and also to whom, with respect to a particular matter, such matter
is
referred because of such officer's knowledge of and familiarity with the
particular subject.

**Restricted Classes:** As defined in Section 4.02(e).

Scheduled Payment: The scheduled monthly payment on a Mortgage Loan
due in the related Due Period allocable to principal and/or interest on such
Mortgage Loan which, unless otherwise specified in this Agreement, shall give
effect to any related Debt Service Reduction and any Deficient Valuation that
affects the amount of the monthly payment due on such Mortgage Loan.

Securities Act: The Securities Act of 1933, as amended.

**Seller:** Countrywide or Park Granada, as applicable.

Senior Certificate Group: As specified in the Preliminary Statement.

Senior Certificates: As specified in the Preliminary Statement.

Senior Credit Support Depletion Date: With respect to the Group I
Senior Certificates and the Group II Senior Certificates, as applicable, the
date on which the aggregate Class Certificate Balance of the Group I
Subordinated Certificates and Group II Subordinated Certificates,
respectively, has been reduced to zero.

Senior Percentage: As to any Senior Certificate Group and

Distribution Date, the percentage equivalent of a fraction the numerator of which is the aggregate Class Certificate Balance of each Class of Senior Certificates of such Senior Certificate Group (other than the Notional Amount Certificates) immediately prior to such Distribution Date and the denominator of which is the aggregate of the Stated Principal Balance of each Mortgage Loan in the related Loan Group as of the Due Date in the prior month (after giving effect to Principal Prepayments received in the Prepayment Period related to that prior Due Date); provided, however, that with respect to a Senior Certificate related to Aggregate Loan Group II, on any Distribution Date after a Senior Termination Date for that Aggregate Loan Group, the Senior Percentage for the Senior Certificates of the related remaining Senior Certificate Group is the percentage equivalent of a fraction, the numerator of which is the aggregate of the Class Certificate Balances of each such Class of Senior Certificates (other than the Notional Amount Certificates) immediately prior to such Distribution Date and the denominator of which is the aggregate of the Class Certificate Balances of the related Senior Certificates and the related Subordinated Certificates immediately prior to such Distribution Date.

Senior Prepayment Percentage: As to any Senior Certificate Group for any Distribution Date occurring during the ten years beginning on the first Distribution Date will be 100%. The related Senior Prepayment Percentage for any Distribution Date occurring on or after the tenth anniversary of the first Distribution Date will, except as provided in this Agreement, be as follows: for any Distribution Date in the first year thereafter, the related Senior Percentage plus

43

| EX-99.1 | 50th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 50th |

70% of the related Subordinated Percentage for such Distribution Date; for any Distribution Date in the second year thereafter, the related Senior Percentage plus 60% of the related Subordinated Percentage for such Distribution Date; for any Distribution Date in the third year thereafter, the related Senior Percentage plus 40% of the related Subordinated Percentage for such Distribution Date; for any Distribution Date in the fourth year thereafter, the related Senior Percentage plus 20% of the related Subordinated Percentage for such Distribution Date; and for any Distribution Date thereafter, the related Senior Percentage for such Distribution Date (unless on any Distribution Date the related Senior Percentage exceeds the Senior Percentage of such Senior Certificate Group as of the Closing Date, in which case the related Senior Prepayment Percentage for such Distribution Date will once again equal 100%). Notwithstanding the foregoing, no decrease in the related Senior Prepayment Percentage will occur unless both of the Senior Step Down Conditions are satisfied with respect to each of the Loan Groups in an Aggregate Loan Group . Notwithstanding the foregoing, if the Two Times Test is satisfied with respect to the Group I or Group II Certificates, as applicable,

on a Distribution Date, the Senior Prepayment Percentage for each Loan Group in the applicable Aggregate Loan Group will equal (x) if such Distribution Date is on or prior to the Distribution Date in January 2008, the related Senior Percentage for such Distribution Date plus 50% of the related Subordinated Percentage for the Distribution Date and (y) if such Distribution Date is after the Distribution Date in January 2008, the related Senior Percentage.

**Senior Principal Distribution Amount:** As to any Distribution Date and Senior Certificate Group, the sum of (i) the related Senior Percentage of the related Principal Payment Amount, (ii) the related Senior Prepayment Percentage of the Net Prepayments with respect to the related Loan Group for such Distribution Date; (iii) any Transfer Payments Received for that Loan Group and Distribution Date.

Senior Step Down Conditions: With respect to any Loan Group in an Aggregate Loan Group: (i) the outstanding principal balance of all Mortgage Loans in any Loan Group related to an Aggregate Loan Group delinquent 60 days or more (including Mortgage Loans in foreclosure, REO Property and Mortgage Loans the Mortgagors of which are in bankruptcy) (averaged over the preceding six month period), as a percentage of (a) if such date is on or prior to the first related Senior Termination Date, the Subordinated Percentage for such Loan Group of the aggregate Stated Principal Balances of the Mortgage Loans in that Loan Group, or (b) if such date is after the first related Senior Termination Date, the aggregate Class Certificate Balance of the related Subordinated Certificates for such Distribution Date does not equal or exceed 50%, and (ii) cumulative Realized Losses on all the Mortgage Loans in the related Aggregate Loan Group do not exceed: (a) with respect to the Distribution Date on the tenth anniversary of the first Distribution Date, 30% of the related Original Subordinate Principal Balance, (b) with respect to the Distribution Date on the eleventh anniversary of the first Distribution Date, 35% of the related Original Subordinate Principal Balance, (c) with respect to the Distribution Date on the twelfth anniversary of the first Distribution Date, 40% of the related Original Subordinate Principal Balance, (d) with respect to the Distribution Date on the thirteenth anniversary of the first Distribution Date, 45% of the related Original Subordinate Principal Balance and (e) with respect to the Distribution Date on the fourteenth anniversary of the first Distribution Date, 50% of the related Original Subordinate Principal Balance.

44

| EX-99.1 | 51st Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 51st |
|---------|------------------|-----|-----|----------|------|---------|-----------|

Senior Termination Date: For a Senior Certificate Group related to Aggregate Loan Group II, the Distribution Date on which the aggregate Class Certificate Balance of the related Classes of Senior Certificates have been reduced to zero. For Aggregate Loan Group I, not applicable.

Servicing Advances: All customary, reasonable and necessary *"out of pocket"* costs and expenses incurred in the performance by the Master Servicer of its servicing obligations, including, but not limited to, the cost of (i) the preservation, restoration and protection of a Mortgaged Property, (ii) any expenses reimbursable to the Master Servicer pursuant to Section 3.11 and any enforcement or judicial proceedings, including foreclosures, (iii) the management and liquidation of any REO Property and (iv) compliance with the obligations under Section 3.09.

Servicing Officer: Any officer of the Master Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name and facsimile signature appear on a list of servicing officers furnished to the Trustee by the Master Servicer on the Closing Date pursuant to this Agreement, as such list may from time to time be amended.

S&P: Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. If S&P is designated as a Rating Agency in the Preliminary Statement, for purposes of Section 10.05(b) the address for notices to S&P shall be Standard & Poor's Ratings Services, 55 Water Street, New York, New York 10041, Attention: Mortgage Surveillance Monitoring, or such other address as S&P may hereafter furnish to the Depositor and the Master Servicer.

**Startup Day:** The Closing Date.

Stated Principal Balance: As to any Mortgage Loan and Due Date, the unpaid principal balance of such Mortgage Loan as of such Due Date as specified in the amortization schedule at the time relating thereto (before any adjustment to such amortization schedule by reason of any moratorium or similar waiver or grace period) after giving effect to the sum of: (i) any previous partial Principal Prepayments and the payment of principal due on such Due Date, irrespective of any delinquency in payment by the related Mortgagor, (ii) Liquidation Proceeds allocable to principal (other than with respect to any Liquidated Mortgage Loan) received in the prior calendar month and Principal Prepayments received through the last day of the related Prepayment Period, in each case, with respect to that Mortgage Loan and (iii) any Deferred Interest added to the principal balance of that Mortgage Loan pursuant to the terms of the related Mortgage Note on or prior to that Due Date.

Streamlined Documentation Mortgage Loan: Any Mortgage Loan originated pursuant to Countrywide's Streamlined Loan Documentation Program then in effect. For the purposes of this Agreement, a Mortgagor is eligible for a mortgage pursuant to Countrywide's Streamlined Loan Documentation Program if that Mortgagor is refinancing an existing mortgage loan that was originated or acquired by Countrywide where, among other things, the mortgage loan has not been more than 30 days delinquent in payment during the previous twelve month period.

Subordinate Pass-Through Rate: For the Interest Accrual Period related to each Distribution Date and Aggregate Loan Group II, a per annum rate equal to (1) the sum of the

45

following for each Loan Group in the applicable Aggregate Loan Group: the product of (x) the Weighted Average Adjusted Net Mortgage Rate of the related Mortgage Loans and (y) the related Subordinated Portion immediately prior to that Distribution Date, divided by (2) the aggregate Class Certificate Balance of the related Subordinated Certificates immediately prior to that Distribution Date. For Aggregate Loan Group I, not applicable.

Subordinated Certificates: As specified in the Preliminary Statement.

Subordinated Percentage: As to any Distribution Date and Loan Group with respect to the Group I Senior Certificates and on or prior to a Senior Termination Date with respect to the Group II Senior Certificates, 100% minus the Senior Percentage for the Senior Certificate Group relating to such Loan Group for such Distribution Date. As to any Distribution Date after a Senior Termination Date, with respect to the Group II Senior Certificates, the difference between 100% and the related Senior Percentage for such Distribution Date.

**Subordinated Portion:** For any Distribution Date and a Loan Group in an Aggregate Loan Group II, an amount equal to the aggregate Stated Principal Balance of the Mortgage Loans in that Loan Group as of the Due Date (after giving effect to Principal Prepayments received in the Prepayment Period related to that prior Due Date) minus the sum of the Class Certificate Balances of the related Classes of Senior Certificates immediately prior to such Distribution Date.

Subordinated Prepayment Percentage: As to any Distribution Date and Loan Group, 100% minus the related Senior Prepayment Percentage for such Distribution Date.

Subordinated Principal Distribution Amount: With respect to any Distribution Date and the Group I Subordinated Certificates, the sum of the following amounts for each Loan Group in Aggregate Loan Group I: an amount equal to the excess of (A) the sum of (i) the Subordinated Percentage of all amounts described in clauses (a) through (d) of the definition of *"Principal Amount"* for that Loan Group and that Distribution Date, (ii) with respect to each Mortgage Loan in that Loan Group that became a Liquidated Mortgage Loan during the calendar month preceding the month of such Distribution Date, the Liquidation Proceeds allocated to principal received with respect thereto remaining after application thereof pursuant to clause (ii) of the definition of *"Senior Principal Distribution Amount"*, up to the related Subordinated Percentage for such Loan Group of the Stated Principal Balance of that Mortgage Loan as of the first day of the related Due Period, and (iii) the related Subordinated Prepayment Percentage for that Loan Group of all amounts described in clauses (e) and (g) of the definition of *"Principal Amount"* for such Loan Group and Distribution Date over (B) any Transfer Payments Made for such Loan Group.

With respect to any Distribution Date and the Group II Subordinated Certificates, the sum of the following amounts for each Loan Group in Aggregate Loan Group II, an amount equal to the excess of (A) the sum of (i) the Subordinated Percentage of all amounts described in clauses (a) through

(d) of the definition of *"Principal Amount"* for that Loan Group and that Distribution Date, (ii) with respect to each Mortgage Loan in that Loan Group that became a Liquidated Mortgage Loan during the calendar month preceding the
month of such Distribution Date, the Liquidation Proceeds allocated to principal received with respect thereto remaining

46

after application thereof pursuant to clause (ii) of the definition of *"Senior Principal Distribution Amount"*, up to the related Subordinated Percentage for such Loan Group of the Stated Principal Balance of that Mortgage Loan, and (iii) the related Subordinated Prepayment Percentage for that Loan Group of the Net Prepayments for such Loan Group and Distribution Date over (B) any Transfer Payments Made for such Loan Group; provided, however, that on any Distribution Date after the related first Senior Termination Date, the Subordinated Principal Distribution Amount will not be calculated by Loan Group but will equal the amount calculated pursuant to the formula set forth above based on the applicable Subordinated Percentage and Subordinated Prepayment Percentage, as applicable, for the Group II Subordinated Certificates for such Distribution Date with respect to all of the Mortgage Loans in Aggregate Loan Group II as opposed to the Mortgage Loans only in the related Loan Group.

Subsequent Recoveries: As to any Distribution Date, with respect to a Liquidated Mortgage Loan that resulted in a Realized Loss in a prior calendar month, unexpected amounts received by the Master Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 3.08) specifically related to such Liquidated Mortgage Loan.

Subservicer: Any person to whom the Master Servicer has contracted for the servicing of all or a portion of the Mortgage Loans pursuant to Section 3.02.

Substitute Mortgage Loan: A Mortgage Loan substituted by the applicable Seller for a Deleted Mortgage Loan which must, on the date of such substitution, as confirmed in a Request for Release, substantially in the form
of Exhibit M, (i) have a Stated Principal Balance, after deduction of the principal portion of the Scheduled Payment due in the month of substitution, not in excess of, and not more than 10% less than the Stated Principal Balance
of the Deleted Mortgage Loan; (ii) be accruing interest at a rate no lower than and not more than 1% per annum higher than, that of the Deleted Mortgage Loan; (iii) have a Loan-to-Value Ratio no higher than that of the Deleted Mortgage Loan; (iv) have a remaining term to maturity no greater than (and not
more than one year less than that of) the Deleted Mortgage Loan; (v) have a Maximum Mortgage Rate not more than 1% per annum higher than, that of the Deleted Mortgage Loan; (vi) have a Minimum Mortgage Rate specified in its related mortgage note not more than 1% per annum higher or lower than the Minimum Mortgage Rate of the Deleted Mortgage Loan; (vii) have the same Mortgage Index, Mortgage Index reset period and Periodic Rate Cap as the

Deleted Mortgage Loan and a Gross Margin not more than 1% per annum higher or lower than that of the Deleted Mortgage Loan; (viii) not be a Cooperative Loan unless the Deleted Mortgage Loan was a Cooperative Loan; (ix) have the same Maximum Negative Amortization, payment cap and recast provisions as the Deleted Mortgage Loan; and (x) comply with each representation and warranty set forth in Section 2.03.

**Substitution Adjustment Amount:** The meaning ascribed to such term pursuant to Section 2.03.

**Tax Matters Person:** The person designated as *"tax matters person"* in the manner provided under Treasury regulation ss. 1.860F-4(d) and temporary Treasury regulation ss. 301.6231(a)(7)1T. Initially, the Tax Matters Person shall be the Trustee.

47

| EX-99.1 | 54th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 54th |
|---------|------------------|-----|-----|----------|------|---------|-----------|

Tax Matters Person Certificate: The Class A-R Certificate with a Denomination of $0.01.

**Transfer:** Any direct or indirect transfer or sale of any Ownership Interest in a Residual Certificate.

**Transfer Payment:** Either or both of a Transfer Payment Made or a Transfer Payment Received.

**Transfer Payment Made:** As defined in Section 4.05.

**Transfer Payment Received:** As defined in Section 4.05.

Trust Fund: The corpus of the trust created under this Agreement consisting of (i) the Mortgage Loans and all interest and principal received on or with respect thereto after the Cut-off Date to the extent not applied in computing the Cut-off Date Principal Balance of the Mortgage Loans; (ii) the Certificate Account, the Distribution Account and the Carryover Shortfall Reserve Fund, and all amounts deposited therein pursuant to the applicable provisions of this Agreement; (iii) property that secured a Mortgage Loan and has been acquired by foreclosure, deed-in-lieu of foreclosure or otherwise; and (iv) all proceeds of the conversion, voluntary or involuntary, of any of the foregoing.

**Trustee:** The Bank of New York and its successors and, if a successor trustee is appointed under this Agreement, such successor.

Trustee Advance Rate: With respect to any Advance made by the Trustee pursuant to Section 4.01(b), a per annum rate of interest determined as of the date of such Advance equal to the Prime Rate in effect on such date plus 5.00%.

Trustee Fee: As to any Distribution Date, an amount equal to one-twelfth of the Trustee Fee Rate multiplied by the Pool Stated Principal

Balance of each Aggregate Loan Group with respect to such Distribution Date.

Trustee Fee Rate: With respect to each Mortgage Loan, the per annum rate agreed upon in writing on or prior to the Closing Date by the Trustee and
the Depositor.

Two Times Test: As to any Distribution Date and with respect to either the Group I Subordinated Certificates or the Group II Subordinated Certificates, if (x) on or before the Distribution Date in January 2008, the Aggregate Subordinated Percentage for the Group I Subordinated Certificates or
the Group II Subordinated Certificates, as applicable, is at least 200% of the
related Aggregate Subordinated Percentage as of the closing date, the applicable delinquency test set forth above is satisfied and cumulative Realized Losses on the Mortgage Loans in the related Aggregate Loan Group do not exceed 20% of the aggregate Class Certificate Balance of the related group
of Subordinated Certificates as of the Closing Date, the Senior Prepayment Percentage for each Loan Group in that Aggregate Loan Group will equal the related Senior Percentage for that Distribution Date plus 50% of the amount equal to 100% minus the related Senior Percentage and (y) after the Distribution Date in January 2008, the Aggregate Subordinated Percentage for the Group I Subordinated Certificates or the Group II Subordinated

48

| EX-99.1 | 55th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 55th |

Certificates, as applicable, is at least 200% of the related Aggregate Subordinated Percentage as of the Closing Date, the applicable delinquency test set forth above is satisfied and cumulative Realized Losses on the Mortgage Loans in the related Aggregate Loan Group do not exceed 30% of the aggregate Class Certificate Balance of the related group of Subordinated Certificates as of the Closing Date.

**Undercollateralized Group**: As defined in Section 4.05.

Underwriter's Exemption: Prohibited Transaction Exemption 2002-41, 67 Fed. Reg. 54487 (2002), as amended (or any successor thereto), or any substantially similar administrative exemption granted by the U.S. Department of Labor.

Underwriter: As specified in the Preliminary Statement.

Voting Rights: The portion of the voting rights of all of the Certificates which is allocated to any Certificate. As of any date of determination, (a) 1% of all Voting Rights shall be allocated to each Class of
Notional Amount Certificates, if any (such Voting Rights to be allocated among
the holders of Certificates of each such Class in accordance with their respective Percentage Interests), and (b) the remaining Voting Rights (or 100%
of the Voting Rights if there is no Class of Notional Amount Certificates)

shall be allocated among Holders of the remaining Classes of Certificates in proportion to the Certificate Balances of their respective Certificates on such date.

Weighted Average Adjusted Net Mortgage Rate: As to any Distribution Date and for each Loan Group, the average of the Adjusted Net Mortgage Rate of each Mortgage Loan in that Loan Group, weighted on the basis of its Stated Principal Balance as of the end of the Prepayment Period related to the immediately preceding Distribution Date.

49

| EX-99.1 | 56th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 56th |

### ARTICLE II
### CONVEYANCE OF MORTGAGE LOANS;
### REPRESENTATIONS AND WARRANTIES

#### SECTION 2.01. Conveyance of Mortgage Loans

(a) Each Seller concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Depositor, without recourse, all its respective right, title and interest in and to the related Mortgage Loans, including all interest and principal received or receivable by such Seller, on or with respect to the applicable Mortgage Loans after the Cut-off Date and all interest and principal payments on the related Mortgage Loans received prior to the Cut-off Date in respect of installments of interest and principal due thereafter, but not including payments of principal and interest due and payable on such Mortgage Loans on or before the Cut-off Date. On or prior to the Closing Date, Countrywide shall deliver to the Depositor or, at the Depositor's direction, to the Trustee or other designee of the Depositor, the Mortgage File for each Mortgage Loan listed in the Mortgage Loan Schedule (except that, in the case of the Delay Delivery Mortgage Loans (which may include both Countrywide Mortgage Loans and Park Granada Mortgage Loans), such delivery may take place within thirty (30) days following the Closing Date). Such delivery of the Mortgage Files shall be made against payment by the Depositor of the purchase price, previously agreed to by the Sellers and Depositor, for the Mortgage Loans. With respect to any Mortgage Loan that does not have a first payment date on or before the Due Date in the month of the first Distribution Date, Countrywide shall deposit into the Distribution Account on or before the Distribution Account Deposit Date relating to the first applicable Distribution Date, an amount equal to one month's interest at the related Adjusted Mortgage Rate on the Cut-off Date Principal Balance of such Mortgage Loan.

(b) Immediately upon the conveyance of the Mortgage Loans referred to in clause (a), the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders,

without recourse, all the right, title and interest of the Depositor in and to
the Trust Fund together with the Depositor's right to require each Seller to
cure any breach of a representation or warranty made herein by such Seller, or
to repurchase or substitute for any affected Mortgage Loan in accordance
herewith.

(c) In connection with the transfer and assignment set forth in
clause (b) above, the Depositor has delivered or caused to be delivered to the
Trustee (or, in the case of the Delay Delivery Mortgage Loans, will deliver or
cause to be delivered to the Trustee) within thirty (30) days following the
Closing Date for the benefit of the Certificateholders the following documents
or instruments with respect to each Mortgage Loan so assigned:

(i) (A) the original Mortgage Note endorsed by manual or
facsimile signature in blank in the following form: *"Pay to
the order of _____ without recourse,"* with all
intervening endorsements showing a complete chain of
endorsement from the originator to the Person endorsing the
Mortgage Note (each such endorsement being sufficient to
transfer all right, title and interest of the party so
endorsing, as noteholder or assignee thereof, in and to that
Mortgage Note); or

50

| EX-99.1 | 57th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 57th |

(B) with respect to any Lost Mortgage Note, a lost
note affidavit from Countrywide stating that the original
Mortgage Note was lost or destroyed, together with a copy of
such Mortgage Note;

(ii) except as provided below and for each Mortgage Loan
that is not a MERS Mortgage Loan, the original recorded
Mortgage or a copy of such Mortgage certified by Countrywide
as being a true and complete copy of the Mortgage (or, in the
case of a Mortgage for which the related Mortgaged Property is
located in the Commonwealth of Puerto Rico, a true copy of the
Mortgage certified as such by the applicable notary) and in
the case of each MERS Mortgage Loan, the original Mortgage,
noting the presence of the MIN of the Mortgage Loans and
either language indicating that the Mortgage Loan is a MOM
Loan if the Mortgage Loan is a MOM Loan or if the Mortgage
Loan was not a MOM Loan at origination, the original Mortgage
and the assignment thereof to MERS, with evidence of recording
indicated thereon, or a copy of the Mortgage certified by the
public recording office in which such Mortgage has been
recorded;

(iii) in the case of each Mortgage Loan that is not a MERS
Mortgage Loan, a duly executed assignment of the Mortgage

(which may be included in a blanket assignment or assignments), together with, except as provided below, all interim recorded assignments of such mortgage (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates); provided that, if the related Mortgage has not been returned from the applicable public recording office, such assignment of the Mortgage may exclude the information to be provided by the recording office; provided, further, that such assignment of Mortgage need not be delivered in the case of a Mortgage for which the related Mortgaged Property is located in the Commonwealth of Puerto Rico;

(iv) the original or copies of each assumption, modification, written assurance or substitution agreement, if any;

(v) except as provided below, the original or duplicate original lender's title policy or a printout of the electronic equivalent and all riders thereto; and

(vi) in the case of a Cooperative Loan, the originals of the following documents or instruments:

    (A) The Coop Shares, together with a stock power in blank;

    (B) The executed Security Agreement;

    (C) The executed Proprietary Lease;

    (D) The executed Recognition Agreement;

51

| EX-99.1 | 58th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 58th |

    (E) The executed UCC-1 financing statement with evidence of recording thereon which have been filed in all places required to perfect the applicable Seller's interest in the Coop Shares and the Proprietary Lease; and

    (F) The executed UCC-3 financing statements or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken line from the mortgagee to the Trustee with evidence of recording thereon (or in a form suitable for recordation).

In addition, in connection with the assignment of any MERS Mortgage Loan, each Seller agrees that it will cause, at the Trustee's expense, the MERS(R) System to indicate that the Mortgage Loans sold by such Seller to the

Depositor have been assigned by that Seller to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files the information required by the MERS(R) System to identify the series of the Certificates issued in connection with such Mortgage Loans. Each Seller further agrees that it will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the information referenced in this paragraph with respect to any Mortgage Loan sold by such Seller to the Depositor during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

In the event that in connection with any Mortgage Loan that is not a MERS Mortgage Loan the Depositor cannot deliver (a) the original recorded Mortgage, (b) all interim recorded assignments or (c) the lender's title policy (together with all riders thereto) satisfying the requirements of clause (ii), (iii) or (v) above, respectively, concurrently with the execution and delivery hereof because such document or documents have not been returned from the applicable public recording office in the case of clause (ii) or (iii) above, or because the title policy has not been delivered to either the Master Servicer or the Depositor by the applicable title insurer in the case of clause (v) above, the Depositor shall promptly deliver to the Trustee, in the case of clause (ii) or (iii) above, such original Mortgage or such interim assignment, as the case may be, with evidence of recording indicated thereon upon receipt thereof from the public recording office, or a copy thereof, certified, if appropriate, by the relevant recording office, but in no event shall any such delivery of the original Mortgage and each such interim assignment or a copy thereof, certified, if appropriate, by the relevant recording office, be made later than one year following the Closing Date, or, in the case of clause (v) above, no later than 120 days following the Closing Date; provided, however, in the event the Depositor is unable to deliver by such date each Mortgage and each such interim assignment by reason of the fact that any such documents have not been returned by the appropriate recording office, or, in the case of each such interim assignment, because the related Mortgage has not been returned by the appropriate recording office, the Depositor shall deliver such documents to the Trustee as promptly as possible upon receipt thereof and, in any event, within 720 days following the Closing Date. The Depositor shall forward or cause to be forwarded to the Trustee (a) from time to time additional original documents evidencing an assumption or modification of a Mortgage Loan and (b) any other documents required to be delivered by the Depositor or the Master Servicer to the Trustee. In the event that the original Mortgage is not delivered and in connection with the payment in full of the related Mortgage Loan and the public recording office requires the presentation of a "lost

52

instruments affidavit and indemnity" or any equivalent document, because only
a copy of the Mortgage can be delivered with the instrument of satisfaction
or
reconveyance, the Master Servicer shall execute and deliver or cause to be
executed and delivered such a document to the public recording office. In the
case where a public recording office retains the original recorded Mortgage
or
in the case where a Mortgage is lost after recordation in a public recording
office, Countrywide shall deliver to the Trustee a copy of such Mortgage
certified by such public recording office to be a true and complete copy of
the original recorded Mortgage.

As promptly as practicable subsequent to such transfer and
assignment, and in any event, within thirty (30) days thereafter, the Trustee
shall (i) as the assignee thereof, affix the following language to each
assignment of Mortgage: *CWMBS Series 2005-7, The Bank of New York, as
trustee*, (ii) cause such assignment to be in proper form for recording in
the
appropriate public office for real property records and (iii) cause to be
delivered for recording in the appropriate public office for real property
records the assignments of the Mortgages to the Trustee, except that, with
respect to any assignments of Mortgage as to which the Trustee has not
received the information required to prepare such assignment in recordable
form, the Trustee's obligation to do so and to deliver the same for such
recording shall be as soon as practicable after receipt of such information
and in any event within thirty (30) days after receipt thereof and that the
Trustee need not cause to be recorded any assignment which relates to a
Mortgage Loan (a) the Mortgaged Property and Mortgage File relating to which
are located in California or (b) in any other jurisdiction (including Puerto
Rico) under the laws of which in the opinion of counsel the recordation of
such assignment is not necessary to protect the Trustee's and the
Certificateholders' interest in the related Mortgage Loan.

In the case of Mortgage Loans that have been prepaid in full as of
the Closing Date, the Depositor, in lieu of delivering the above documents to
the Trustee, will deposit in the Certificate Account the portion of such
payment that is required to be deposited in the Certificate Account pursuant
to Section 3.05.

Notwithstanding anything to the contrary in this Agreement, within
thirty (30) days after the Closing Date with respect to the Mortgage Loans,
Countrywide (on its own behalf and on behalf of Park Granada) shall either
(i)
deliver to the Depositor, or at the Depositor's direction, to the Trustee or
other designee of the Depositor the Mortgage File as required pursuant to
this
Section 2.01 for each Delay Delivery Mortgage Loan or (ii) either (A)
substitute a Substitute Mortgage Loan for the Delay Delivery Mortgage Loan or
(B) repurchase the Delay Delivery Mortgage Loan, which substitution or
repurchase shall be accomplished in the manner and subject to the conditions
set forth in Section 2.03 (treating each Delay Delivery Mortgage Loan as a
Deleted Mortgage Loan for purposes of such Section 2.03); provided, however,
that if Countrywide fails to deliver a Mortgage File for any Delay Delivery
Mortgage Loan within the thirty (30) day period provided in the prior
sentence, Countrywide (on its own behalf and on behalf of Park Granada) shall
use its best reasonable efforts to effect a substitution, rather than a

repurchase of, such Deleted Mortgage Loan and provided further that the cure
period provided for in Section 2.02 or in Section 2.03 shall not apply to the
initial delivery of the Mortgage File for such Delay Delivery Mortgage Loan,
but rather Countrywide (on its own behalf and on behalf of Park Granada)
shall
have five (5) Business Days to cure such failure to deliver. At the end of
such thirty (30) day period the Trustee shall send a Delay Delivery
Certification for the

53

| EX-99.1 | 60th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 60th |

Delay Delivery Mortgage Loans delivered during such thirty (30) day period in
accordance with the provisions of Section 2.02.

(d) Neither the Depositor nor the Trust will acquire or hold any
Mortgage Loan that would violate the representations made by Countrywide set
forth in clauses (48), (49) and (57) of Schedule III-A hereto.

**SECTION 2.02. Acceptance by Trustee of the Mortgage Loans.**

(a) The Trustee acknowledges receipt of the documents identified in
the Initial Certification in the form annexed hereto as Exhibit F (an
"*Initial
Certification*") and declares that it holds and will hold such documents and
the other documents delivered to it constituting the Mortgage Files, and that
it holds or will hold such other assets as are included in the Trust Fund, in
trust for the exclusive use and benefit of all present and future
Certificateholders. The Trustee acknowledges that it will maintain possession
of the Mortgage Notes in the State of California, unless otherwise permitted
by the Rating Agencies.

The Trustee agrees to execute and deliver on the Closing Date to the
Depositor, the Master Servicer and Countrywide (on its own behalf and on
behalf of Park Granada) an Initial Certification in the form annexed hereto
as
Exhibit F. Based on its review and examination, and only as to the documents
identified in such Initial Certification, the Trustee acknowledges that such
documents appear regular on their face and relate to the Mortgage Loans. The
Trustee shall be under no duty or obligation to inspect, review or examine
said documents, instruments, certificates or other papers to determine that
the same are genuine, enforceable or appropriate for the represented purpose
or that they have actually been recorded in the real estate records or that
they are other than what they purport to be on their face.

On or about the thirtieth (30th) day after the Closing Date, the
Trustee shall deliver to the Depositor, the Master Servicer and Countrywide
(on its own behalf and on behalf of Park Granada) a Delay Delivery
Certification with respect to the Mortgage Loans in the form annexed hereto
as
Exhibit G (a "*Delay Delivery Certification*"), with any applicable exceptions
noted thereon.

Not later than 90 days after the Closing Date, the Trustee shall
deliver to the Depositor, the Master Servicer and Countrywide (on its own

behalf and on behalf of Park Granada) a Final Certification with respect to
the Mortgage Loans in the form annexed hereto as Exhibit H (a *"Final
Certification"*), with any applicable exceptions noted thereon.

If, in the course of such review, the Trustee finds any document
constituting a part of a Mortgage File that does not meet the requirements of
Section 2.01, the Trustee shall list such as an exception in the Final
Certification; provided, however that the Trustee shall not make any
determination as to whether (i) any endorsement is sufficient to transfer all
right, title and interest of the party so endorsing, as noteholder or
assignee
thereof, in and to that Mortgage Note or (ii) any assignment is in recordable
form or is sufficient to effect the assignment of and transfer to the
assignee
thereof under the mortgage to which the assignment relates. Countrywide (on
its own behalf and on behalf of Park Granada) shall promptly correct or cure
such defect within 90 days from the date it was so notified of such defect
and, if Countrywide does not correct or cure

54

| EX-99.1 | 61st Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 61st |

such defect within such period, Countrywide (on its own behalf and on behalf
of Park Granada) shall either (a) substitute for the related Mortgage Loan a
Substitute Mortgage Loan, which substitution shall be accomplished in the
manner and subject to the conditions set forth in Section 2.03, or (b)
purchase such Mortgage Loan from the Trustee within 90 days from the date
Countrywide (on its own behalf and on behalf of Park Granada) was notified of
such defect in writing at the Purchase Price of such Mortgage Loan; provided,
however, that in no event shall such substitution or purchase occur more than
540 days from the Closing Date, except that if the substitution or purchase
of
a Mortgage Loan pursuant to this provision is required by reason of a delay
in
delivery of any documents by the appropriate recording office, and there is a
dispute between either the Master Servicer or Countrywide (on its own behalf
and on behalf of Park Granada) and the Trustee over the location or status of
the recorded document, then such substitution or purchase shall occur within
720 days from the Closing Date. The Trustee shall deliver written notice to
each Rating Agency within 270 days from the Closing Date indicating each
Mortgage Loan (a) that has not been returned by the appropriate recording
office or (b) as to which there is a dispute as to location or status of such
Mortgage Loan. Such notice shall be delivered every 90 days thereafter until
the related Mortgage Loan is returned to the Trustee. Any such substitution
pursuant to (a) above or purchase pursuant to (b) above shall not be effected
prior to the delivery to the Trustee of the Opinion of Counsel required by
Section 2.05, if any, and any substitution pursuant to (a) above shall not be
effected prior to the additional delivery to the Trustee of a Request for
Release substantially in the form of Exhibit N. No substitution is permitted
to be made in any calendar month after the Determination Date for such month.
The Purchase Price for any such Mortgage Loan shall be deposited by
Countrywide (on its own behalf and on behalf of Park Granada) in the
Certificate Account on or prior to the Distribution Account Deposit Date for
the Distribution Date in the month following the month of repurchase and,
upon

receipt of such deposit and certification with respect thereto in the form of
Exhibit N hereto, the Trustee shall release the related Mortgage File to
Countrywide (on its own behalf and on behalf of Park Granada) and shall
execute and deliver at Countrywide's (on its own behalf and on behalf of Park
Granada) request such instruments of transfer or assignment prepared by
Countrywide, in each case without recourse, as shall be necessary to vest in
Countrywide (on its own behalf and on behalf of Park Granada), or its
designee, the Trustee's interest in any Mortgage Loan released pursuant
hereto. If pursuant to the foregoing provisions Countrywide (on its own
behalf
and on behalf of Park Granada) repurchases a Mortgage Loan that is a MERS
Mortgage Loan, the Master Servicer shall either (i) cause MERS to execute and
deliver an assignment of the Mortgage in recordable form to transfer the
Mortgage from MERS to Countrywide (on its own behalf and on behalf of Park
Granada) or its designee and shall cause such Mortgage to be removed from
registration on the MERS(R) System in accordance with MERS' rules and
regulations or (ii) cause MERS to designate on the MERS(R) System Countrywide
(on its own behalf and on behalf of Park Granada) or its designee as the
beneficial holder of such Mortgage Loan.

(b) [Reserved].

(c) [Reserved].

(d) The Trustee shall retain possession and custody of each Mortgage
File in accordance with and subject to the terms and conditions set forth in
this Agreement. The Master Servicer shall promptly deliver to the Trustee,
upon the execution or receipt thereof, the originals of such other

55

| EX-99.1 | 62nd Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 62nd |

documents or instruments constituting the Mortgage File as come into the
possession of the Master Servicer from time to time.

(e) It is understood and agreed that the respective obligations of
each Seller to substitute for or to purchase any Mortgage Loan sold to the
Depositor by it that does not meet the requirements of Section 2.01 above
shall constitute the sole remedy respecting such defect available to the
Trustee, the Depositor and any Certificateholder against that Seller.

### SECTION 2.03. Representations, Warranties and Covenants of the Sellers and Master Servicer.

(a) Countrywide hereby makes the representations and warranties set
forth in (i) Schedule II-A and Schedule II-B hereto, and by this reference
incorporated herein, to the Depositor, the Master Servicer and the Trustee,
as
of the Closing Date, (ii) Schedule III-A hereto, and by this reference
incorporated herein, to the Depositor, the Master Servicer and the Trustee,
as
of the Closing Date, or if so specified therein, as of the Cut-off Date, with
respect to the Mortgage Loans, and (iii) Schedule III-B hereto, and by this
reference incorporated herein, to the Depositor, the Master Servicer and the

Trustee, as of the Closing Date, or if so specified therein, as of the Cut-off
Date, with respect to the Mortgage Loans that are Countrywide Mortgage Loans.
Park Granada hereby makes the representations and warranties set forth in (i)
Schedule II-B hereto, and by this reference incorporated herein, to the
Depositor, the Master Servicer and the Trustee, as of the Closing Date and
(ii) Schedule III-C hereto, and by this reference incorporated herein, to the
Depositor, the Master Servicer and the Trustee, as of the Closing Date, or if
so specified therein, as of the Cut-off Date, with respect to the Mortgage
Loans that are Park Granada Mortgage Loans.

(b) The Master Servicer hereby makes the representations and
warranties set forth in Schedule IV hereto, and by this reference
incorporated
herein, to the Depositor and the Trustee, as of the Closing Date.

(c) Upon discovery by any of the parties hereto of a breach of a
representation or warranty with respect to a Mortgage Loan made pursuant to
Section 2.03(a) that materially and adversely affects the interests of the
Certificateholders in that Mortgage Loan, the party discovering such breach
shall give prompt notice thereof to the other parties. Each Seller hereby
covenants that within 90 days of the earlier of its discovery or its receipt
of written notice from any party of a breach of any representation or
warranty
with respect to a Mortgage Loan sold by it pursuant to Section 2.03(a) that
materially and adversely affects the interests of the Certificateholders in
that Mortgage Loan, it shall cure such breach in all material respects, and
if
such breach is not so cured, shall, (i) if such 90-day period expires prior
to
the second anniversary of the Closing Date, remove such Mortgage Loan (a
"*Deleted Mortgage Loan*") from the Trust Fund and substitute in its place a
Substitute Mortgage Loan, in the manner and subject to the conditions set
forth in this Section; or (ii) repurchase the affected Mortgage Loan or
Mortgage Loans from the Trustee at the Purchase Price in the manner set forth
below; provided, however, that any such substitution pursuant to (i) above
shall not be effected prior to the delivery to the Trustee of the Opinion of
Counsel required by Section 2.05 hereof, if any, and any such substitution
pursuant to (i) above shall not be effected prior to the additional delivery
to the Trustee of a Request for Release substantially in the form of Exhibit
N
and the Mortgage File

56

for any such Substitute Mortgage Loan. The Seller repurchasing a Mortgage
Loan
pursuant to this Section 2.03(c) shall promptly reimburse the Master Servicer
and the Trustee for any expenses reasonably incurred by the Master Servicer
or
the Trustee in respect of enforcing the remedies for such breach. With
respect
to the representations and warranties described in this Section which are
made

to the best of a Seller's knowledge, if it is discovered by either the Depositor, a Seller or the Trustee that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan or the interests of the Certificateholders therein, notwithstanding that Seller's lack of knowledge with respect to the substance of such representation or warranty, such inaccuracy shall be deemed a breach of the applicable representation or warranty.

With respect to any Substitute Mortgage Loan or Loans sold to the Depositor by a Seller, Countrywide (on its own behalf and on behalf of Park Granada) shall deliver to the Trustee for the benefit of the Certificateholders the Mortgage Note, the Mortgage, the related assignment of the Mortgage, and such other documents and agreements as are required by Section 2.01, with the Mortgage Note endorsed and the Mortgage assigned as required by Section 2.01. No substitution is permitted to be made in any calendar month after the Determination Date for such month. Scheduled Payments
due with respect to Substitute Mortgage Loans in the month of substitution shall not be part of the Trust Fund and will be retained by the related Seller
on the next succeeding Distribution Date. For the month of substitution, distributions to Certificateholders will include the monthly payment due on any Deleted Mortgage Loan for such month and thereafter that Seller shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan. The Master Servicer shall amend the Mortgage Loan Schedule for the benefit of the Certificateholders to reflect the removal of such Deleted Mortgage Loan and the substitution of the Substitute Mortgage Loan or Loans and the Master Servicer shall deliver the amended Mortgage Loan Schedule to the Trustee. Upon such substitution, the Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement in all respects, and the related Seller shall be deemed to have made with respect to such Substitute Mortgage Loan or Loans, as of the date of substitution, the representations and warranties made pursuant to Section 2.03(a) with respect to such Mortgage Loan. Upon any such substitution and the deposit to the Certificate Account of
the amount required to be deposited therein in connection with such substitution as described in the following paragraph, the Trustee shall release the Mortgage File held for the benefit of the Certificateholders relating to such Deleted Mortgage Loan to the related Seller and shall execute
and deliver at such Seller's direction such instruments of transfer and assignment prepared by Countrywide (on its own behalf and on behalf of Park Granada), in each case without recourse, as shall be necessary to vest title in that Seller, or its designee, the Trustee's interest in any Deleted Mortgage Loan substituted for pursuant to this Section 2.03.

For any month in which a Seller substitutes one or more Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Master Servicer will determine the amount (if any) by which the aggregate Stated Principal Balance of all Substitute Mortgage Loans sold to the Depositor by that Seller as of the date of substitution is less than the aggregate Stated Principal Balance of all Deleted Mortgage Loans repurchased by that Seller (after application of the scheduled principal portion of the monthly payments due in the month of substitution). The amount of such shortage (the *"Substitution Adjustment Amount"*) plus an amount equal to the aggregate of any unreimbursed

Advances with respect to such Deleted Mortgage Loans shall be deposited in the
Certificate Account by Countrywide (on its own behalf and on behalf of Park

57

Granada) on or before the Distribution Account Deposit Date for the Distribution Date in the month succeeding the calendar month during which the related Mortgage Loan became required to be purchased or replaced hereunder.

In the event that a Seller shall have repurchased a Mortgage Loan, the Purchase Price therefor shall be deposited in the Certificate Account pursuant to Section 3.05 on or before the Distribution Account Deposit Date for the Distribution Date in the month following the month during which that Seller became obligated hereunder to repurchase or replace such Mortgage Loan and upon such deposit of the Purchase Price, the delivery of the Opinion of Counsel required by Section 2.05 and receipt of a Request for Release in the form of Exhibit N hereto, the Trustee shall release the related Mortgage File held for the benefit of the Certificateholders to such Person, and the Trustee shall execute and deliver at such Person's direction such instruments of transfer or assignment prepared by such Person, in each case without recourse, as shall be necessary to transfer title from the Trustee. It is understood and agreed that the obligation under this Agreement of any Person to cure, repurchase or replace any Mortgage Loan as to which a breach has occurred and is continuing shall constitute the sole remedy against such Persons respecting such breach available to Certificateholders, the Depositor or the Trustee on their behalf.

The representations and warranties made pursuant to this Section 2.03 shall survive delivery of the respective Mortgage Files to the Trustee for the benefit of the Certificateholders.

**SECTION 2.04. Representations and Warranties of the Depositor as to the Mortgage Loans.**

The Depositor hereby represents and warrants to the Trustee with respect to each Mortgage Loan as of the date of this Agreement or such other date set forth in this Agreement that as of the Closing Date, and following the transfer of the Mortgage Loans to it by each Seller, the Depositor had good title to the Mortgage Loans and the Mortgage Notes were subject to no offsets, defenses or counterclaims.

The Depositor hereby assigns, transfers and conveys to the Trustee all of its rights with respect to the Mortgage Loans including, without limitation, the representations and warranties of each Seller made pursuant to Section 2.03(a) hereof, together with all rights of the Depositor to require a Seller to cure any breach thereof or to repurchase or substitute for any

affected Mortgage Loan in accordance with this Agreement.

It is understood and agreed that the representations and warranties set forth in this Section 2.04 shall survive delivery of the Mortgage Files to the Trustee. Upon discovery by the Depositor or the Trustee of a breach of any of the foregoing representations and warranties set forth in this Section 2.04 (referred to herein as a *"breach"*), which breach materially and adversely affects the interest of the Certificateholders, the party discovering such breach shall give prompt written notice to the others and to each Rating Agency.

### SECTION 2.05. Delivery of Opinion of Counsel in Connection with Substitutions.

(a) Notwithstanding any contrary provision of this Agreement, no substitution pursuant to Section 2.02 or Section 2.03 shall be made more than 90 days after the Closing Date unless

58

| EX-99.1 | 65th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 65th |
|---------|------------------|-----|-----|----------|------|---------|-----------|

Countrywide delivers to the Trustee an Opinion of Counsel, which Opinion of Counsel shall not be at the expense of either the Trustee or the Trust Fund, addressed to the Trustee, to the effect that such substitution will not (i) result in the imposition of the tax on *"prohibited transactions"* on the Trust Fund or contributions after the Startup Date, as defined in Sections 860F(a)(2) and 860G(d) of the Code, respectively, or (ii) cause any REMIC created under this Agreement to fail to qualify as a REMIC at any time that any Certificates are outstanding.

(b) Upon discovery by the Depositor, a Seller, the Master Servicer, or the Trustee that any Mortgage Loan does not constitute a *"qualified mortgage"* within the meaning of Section 860G(a)(3) of the Code, the party discovering such fact shall promptly (and in any event within five (5) Business Days of discovery) give written notice thereof to the other parties. In connection therewith, the Trustee shall require Countrywide (on its own behalf and on behalf of Park Granada) at its option, to either (i) substitute, if the conditions in Section 2.03(c) with respect to substitutions are satisfied, a Substitute Mortgage Loan for the affected Mortgage Loan, or (ii) repurchase the affected Mortgage Loan within 90 days of such discovery in the same manner as it would a Mortgage Loan for a breach of representation or warranty made pursuant to Section 2.03. The Trustee shall reconvey to Countrywide the Mortgage Loan to be released pursuant to this Section in the same manner, and on the same terms and conditions, as it would a Mortgage Loan repurchased for breach of a representation or warranty contained in Section 2.03.

### SECTION 2.06. Execution and Delivery of Certificates.

The Trustee acknowledges the transfer and assignment to it of the

Trust Fund and, concurrently with such transfer and assignment, has executed and delivered to or upon the order of the Depositor, the Certificates in authorized denominations evidencing directly or indirectly the entire ownership of the Trust Fund. The Trustee agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of all present and future Holders of the Certificates and to perform the duties set forth in this
Agreement to the best of its ability, to the end that the interests of the Holders of the Certificates may be adequately and effectively protected.

### SECTION 2.07. REMIC Matters.

The Preliminary Statement sets forth the designations and "*latest possible maturity date*" for federal income tax purposes of all interests created hereby. The "*Startup Day*" for purposes of the REMIC Provisions shall be the Closing Date. The "*tax matters person*" with respect to each REMIC hereunder shall be the Trustee and the Trustee shall hold the Tax Matters Person Certificate. Each REMIC's fiscal year shall be the calendar year.

### SECTION 2.08. Covenants of the Master Servicer.

The Master Servicer hereby covenants to the Depositor and the Trustee as follows:

(a) the Master Servicer shall comply in the performance of its obligations under this Agreement with all reasonable rules and requirements of
the insurer under each Required Insurance Policy; and

(b) no written information, certificate of an officer, statement furnished in writing or written report delivered to the Depositor, any affiliate of the Depositor or the Trustee and

59

prepared by the Master Servicer pursuant to this Agreement will contain any untrue statement of a material fact or omit to state a material fact necessary
to make such information, certificate, statement or report not misleading.

60

### ARTICLE III
### ADMINISTRATION AND SERVICING
### OF MORTGAGE LOANS

### SECTION 3.01. Master Servicer to Service Mortgage Loans.

For and on behalf of the Certificateholders, the Master Servicer shall service and administer the Mortgage Loans in accordance with the terms of this Agreement and customary and usual standards of practice of prudent

mortgage loan servicers. In connection with such servicing and
administration,
the Master Servicer shall have full power and authority, acting alone and/or
through Subservicers as provided in Section 3.02, subject to the terms of
this
Agreement (i) to execute and deliver, on behalf of the Certificateholders and
the Trustee, customary consents or waivers and other instruments and
documents, (ii) to consent to transfers of any Mortgaged Property and
assumptions of the Mortgage Notes and related Mortgages (but only in the
manner provided in this Agreement), (iii) to collect any Insurance Proceeds
and other Liquidation Proceeds (which for the purpose of this Section 3.01
includes any Subsequent Recoveries), and (iv) to effectuate foreclosure or
other conversion of the ownership of the Mortgaged Property securing any
Mortgage Loan; provided that the Master Servicer shall not take any action
that is inconsistent with or prejudices the interests of the Trust Fund or
the
Certificateholders in any Mortgage Loan or the rights and interests of the
Depositor, the Trustee and the Certificateholders under this Agreement. The
Master Servicer shall represent and protect the interests of the Trust Fund
in
the same manner as it protects its own interests in mortgage loans in its own
portfolio in any claim, proceeding or litigation regarding a Mortgage Loan,
and shall not make or permit any modification, waiver or amendment of any
Mortgage Loan which would cause any REMIC created under this Agreement to
fail
to qualify as a REMIC or result in the imposition of any tax under Section
860F(a) or Section 860G(d) of the Code. Without limiting the generality of
the
foregoing, the Master Servicer, in its own name or in the name of the
Depositor and the Trustee, is hereby authorized and empowered by the
Depositor
and the Trustee, when the Master Servicer believes it appropriate in its
reasonable judgment, to execute and deliver, on behalf of the Trustee, the
Depositor, the Certificateholders or any of them, any and all instruments of
satisfaction or cancellation, or of partial or full release or discharge and
all other comparable instruments, with respect to the Mortgage Loans, and
with
respect to the Mortgaged Properties held for the benefit of the
Certificateholders. The Master Servicer shall prepare and deliver to the
Depositor and/or the Trustee such documents requiring execution and delivery
by either or both of them as are necessary or appropriate to enable the
Master
Servicer to service and administer the Mortgage Loans to the extent that the
Master Servicer is not permitted to execute and deliver such documents
pursuant to the preceding sentence. Upon receipt of such documents, the
Depositor and/or the Trustee shall execute such documents and deliver them to
the Master Servicer. The Master Servicer further is authorized and empowered
by the Trustee, on behalf of the Certificateholders and the Trustee, in its
own name or in the name of the Subservicer, when the Master Servicer or the
Subservicer, as the case may be, believes it appropriate in its best judgment
to register any Mortgage Loan on the MERS(R) System, or cause the removal
from
the registration of any Mortgage Loan on the MERS(R) System, to execute and
deliver, on behalf of the Trustee and the Certificateholders or any of them,
any and all instruments of assignment and other comparable instruments with
respect to such assignment or re-recording of a Mortgage in the name of MERS,
solely as nominee for the Trustee and its successors and assigns.

| EX-99.1 | 68th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 68th |

In accordance with the standards of the preceding paragraph, the Master Servicer shall advance or cause to be advanced funds as necessary for the purpose of effecting the payment of taxes and assessments on the Mortgaged Properties, which advances shall be reimbursable in the first instance from related collections from the Mortgagors pursuant to Section 3.06, and further as provided in Section 3.08. The costs incurred by the Master Servicer, if any, in effecting the timely payments of taxes and assessments on the Mortgaged Properties and related insurance premiums shall not, for the purpose of calculating monthly distributions to the Certificateholders, be added to the Stated Principal Balances of the related Mortgage Loans, notwithstanding that the terms of such Mortgage Loans so permit.

SECTION 3.02. Subservicing; Enforcement of the Obligations of Subservicers.

(a) The Master Servicer may arrange for the subservicing of any Mortgage Loan by a Subservicer pursuant to a subservicing agreement; provided, however, that such subservicing arrangement and the terms of the related subservicing agreement must provide for the servicing of such Mortgage Loans in a manner consistent with the servicing arrangements contemplated under this Agreement. Unless the context otherwise requires, references in this Agreement to actions taken or to be taken by the Master Servicer in servicing the Mortgage Loans include actions taken or to be taken by a Subservicer on behalf of the Master Servicer. Notwithstanding the provisions of any subservicing agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Master Servicer and a Subservicer or reference to actions taken through a Subservicer or otherwise, the Master Servicer shall remain obligated and liable to the Depositor, the Trustee and the Certificateholders for the servicing and administration of the Mortgage Loans in accordance with the provisions of this Agreement without diminution of such obligation or liability by virtue of such subservicing agreements or arrangements or by virtue of indemnification from the Subservicer and to the same extent and under the same terms and conditions as if the Master Servicer alone were servicing and administering the Mortgage Loans. All actions of each Subservicer performed pursuant to the related subservicing agreement shall be performed as an agent of the Master Servicer with the same force and effect as if performed directly by the Master Servicer.

(b) For purposes of this Agreement, the Master Servicer shall be deemed to have received any collections, recoveries or payments with respect to the Mortgage Loans that are received by a Subservicer regardless of whether

SECTION 3.05. Collection of Mortgage Loan Payments; Certificate
Account; Distribution Account; Carryover Reserve Fund; Corridor Contract
Reserve Fund.

(a) The Master Servicer shall make reasonable efforts in accordance
with the customary and usual standards of practice of prudent mortgage
servicers to collect all payments called for under the terms and provisions
of
the Mortgage Loans to the extent such procedures shall be consistent with
this
Agreement and the terms and provisions of any related Required Insurance
Policy. Consistent with the foregoing, the Master Servicer may in its
discretion (i) waive any late payment charge or any prepayment charge or
penalty interest in connection with the prepayment of a Mortgage Loan and
(ii)
extend the due dates for payments due on a Mortgage Note for a period not
greater than 180 days; provided, however, that the Master Servicer cannot
extend the maturity of any such Mortgage Loan past the date on which the
final
payment is due on the latest maturing Mortgage Loan as of the Cut-off Date.
In
the event of any such arrangement, the Master Servicer shall make Advances on
the related Mortgage Loan in accordance with the provisions of Section 4.01
during the scheduled period in accordance with the amortization schedule of
such Mortgage Loan without modification thereof by reason of such
arrangements. The Master Servicer shall not be required to institute or join
in litigation with respect to collection of any payment (whether under a
Mortgage, Mortgage Note or otherwise or against any public or governmental
authority with respect to a taking or condemnation) if it

63

| EX-99.1 | 70th Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 70th |

reasonably believes that enforcing the provision of the Mortgage or other
instrument pursuant to which such payment is required is prohibited by
applicable law.

(b) The Master Servicer shall establish and maintain a Certificate
Account into which the Master Servicer shall deposit or cause to be deposited
no later than two Business Days after receipt (or, if the current long-term
credit rating of Countrywide is reduced below "A-" by S&P or Fitch or "A3" by
Moody's, the Master Servicer shall deposit or cause to be deposited on a
daily
basis within one Business Day of receipt), except as otherwise specifically
provided in this Agreement, the following payments and collections remitted
by
Subservicers or received by it in respect of Mortgage Loans subsequent to the
Cut-off Date (other than in respect of principal and interest due on the
Mortgage Loans on or before the Cut-off Date) and the following amounts
required to be deposited under this Agreement:

(i) all payments on account of principal on the Mortgage
Loans, including Principal Prepayments;

(ii) all payments on account of interest on the Mortgage

Loans, net of the related Master Servicing Fee and any lender paid mortgage insurance premiums;

(iii) all Insurance Proceeds, Subsequent Recoveries and Liquidation Proceeds, other than proceeds to be applied to the restoration or repair of a Mortgaged Property or released to the Mortgagor in accordance with the Master Servicer's normal servicing procedures;

(iv) any amount required to be deposited by the Master Servicer or the Depositor pursuant to Section 3.05(e) in connection with any losses on Permitted Investments for which it is responsible;

(v) any amounts required to be deposited by the Master Servicer pursuant to Section 3.09(c) and in respect of net monthly rental income from REO Property pursuant to Section 3.11;

(vi) all Substitution Adjustment Amounts;

(vii) all Advances made by the Master Servicer pursuant to Section 4.01; and

(viii) any other amounts required to be deposited under this Agreement.

In addition, with respect to any Mortgage Loan that is subject to a buydown agreement, on each Due Date for such Mortgage Loan, in addition to the monthly payment remitted by the Mortgagor, the Master Servicer shall cause funds to be deposited into the Certificate Account in an amount required to cause an amount of interest to be paid with respect to such Mortgage Loan equal to the amount of interest that has accrued on such Mortgage Loan from the preceding Due Date at the Mortgage Rate net of the related Master Servicing Fee.

The foregoing requirements for remittance by the Master Servicer shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments in the nature of prepayment penalties, late payment charges or assumption fees, if collected, need

64

not be remitted by the Master Servicer. In the event that the Master Servicer shall remit any amount not required to be remitted, it may at any time withdraw or direct the institution maintaining the Certificate Account to withdraw such amount from the Certificate Account, any provision in this Agreement to the contrary notwithstanding. Such withdrawal or direction may be accomplished by delivering written notice thereof to the Trustee or such other institution maintaining the Certificate Account which describes the amounts deposited in error in the Certificate Account. The Master Servicer shall

maintain adequate records with respect to all withdrawals made pursuant to
this Section. All funds deposited in the Certificate Account shall be held in
trust for the Certificateholders until withdrawn in accordance with Section
3.08.

(c) [Reserved].

(d) The Trustee shall establish and maintain, on behalf of the
Certificateholders, the Distribution Account. The Trustee shall, promptly
upon
receipt, deposit in the Distribution Account and retain in the Distribution
Account the following:

(i) the aggregate amount remitted by the Master Servicer to the
Trustee pursuant to Section 3.08(a)(ix);

(ii) any amount deposited by the Master Servicer pursuant to
Section 3.05(e) in connection with any losses on Permitted
Investments; and

(iii) any other amounts deposited hereunder which are required
to be deposited in the Distribution Account.

In the event that the Master Servicer shall remit any amount not
required to be remitted, it may at any time direct the Trustee to withdraw
such amount from the Distribution Account, any provision in this Agreement to
the contrary notwithstanding. Such direction may be accomplished by
delivering
an Officer's Certificate to the Trustee which describes the amounts deposited
in error in the Distribution Account. All funds deposited in the Distribution
Account shall be held by the Trustee in trust for the Certificateholders
until
disbursed in accordance with this Agreement or withdrawn in accordance with
Section 3.08. In no event shall the Trustee incur liability for withdrawals
from the Distribution Account at the direction of the Master Servicer.

(e) Each institution at which the Certificate Account or the
Distribution Account is maintained shall invest the funds therein as directed
in writing by the Master Servicer in Permitted Investments, which shall
mature
not later than (i) in the case of the Certificate Account, the second
Business
Day next preceding the related Distribution Account Deposit Date (except that
if such Permitted Investment is an obligation of the institution that
maintains such account, then such Permitted Investment shall mature not later
than the Business Day next preceding such Distribution Account Deposit Date)
and (ii) in the case of the Distribution Account, the Business Day next
preceding the Distribution Date (except that if such Permitted Investment is
an obligation of the institution that maintains such fund or account, then
such Permitted Investment shall mature not later than such Distribution Date)
and, in each case, shall not be sold or disposed of prior to its maturity.
All
such Permitted Investments shall be made in the name of the Trustee, for the
benefit of the Certificateholders. All income and gain net of any

65

| EX-99.1 | 72nd Page of 226 | TOC | 1st | Previous | Next | ↓Bottom | Just 72nd |

losses realized from any such investment of funds on deposit in the Certificate Account or the Distribution Account shall be for the benefit of the Master Servicer as servicing compensation and shall be remitted to it monthly as provided in this Agreement. The amount of any realized losses in the Certificate Account or Distribution Account incurred in any such account in respect of any such investments shall promptly be deposited by the Master Servicer in the Certificate Account or paid to the Trustee for deposit into the Distribution Account, as applicable. The Trustee in its fiduciary capacity shall not be liable for the amount of any loss incurred in respect of any investment or lack of investment of funds held in the Certificate Account or the Distribution Account and made in accordance with this Section 3.05.

(f) The Master Servicer shall give notice to the Trustee, each Seller, each Rating Agency and the Depositor of any proposed change of the location of the Certificate Account prior to any change thereof. The Trustee shall give notice to the Master Servicer, each Seller, each Rating Agency and the Depositor of any proposed change of the location of the Distribution Account or the Carryover Shortfall Reserve Fund prior to any change thereof.

(g) On the Closing Date, the Trustee shall establish and maintain in its name, in trust for the benefit of the Holders of the LIBOR Certificates, the Carryover Shortfall Reserve Fund and shall deposit $1,000 therein upon receipt from or on behalf of the Underwriter of such amount. All funds on deposit in the Carryover Shortfall Reserve Fund shall (x) be held separate and apart from, and shall not be commingled with, any other moneys, including without limitation, other moneys held by the Trustee pursuant to this Agreement, and (y) remain uninvested.

On each Distribution Date, the Trustee shall deposit all amounts distributable as interest to the Class 1-X Certificates and the Class 2-X IO and Class II-X IO Components on such Distribution Date into the Carryover Shortfall Reserve Fund. The Trustee shall make withdrawals from the Carryover Shortfall Reserve Fund to make distributions pursuant to Section 4.02(a)(8) exclusively (other than as expressly provided for in Section 3.08).

(h) On the Closing Date, the Trustee shall establish and maintain in its name, in trust for the benefit of the Holders of the Class 2-A-1, Class 2-A-2, Class II-M-1, Class II-B-1 and Class II-B-2 Certificates, the Corridor Contract Reserve Fund, and shall deposit $1,000 therein upon receipt from or on behalf of the Depositor of such amount. All funds on deposit in the Corridor Contract Reserve Fund shall be held separate and apart from, and shall not be commingled with, any other moneys, including without limitation, other moneys held by the Trustee pursuant to this Agreement.

On each Distribution Date, the Trustee shall deposit into the Corridor Contract Reserve Fund all amounts received in respect of the Corridor Contracts for the related Interest Accrual Period. The Trustee shall make withdrawals from the Corridor Contract Reserve Fund to make distributions pursuant to Section 4.09 exclusively (other than as expressly provided for in Section 3.08).